IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: **3:24-cv-177** |
| NOTRE DAME FEDERAL CREDIT UNION, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff New York Marine and General Insurance Company ("New York Marine"), by and through its undersigned counsel, for its Complaint against Defendant Notre Dame Federal Credit Union (the "Credit Union") for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202, regarding certain policies of insurance issued by New York Marine to the Credit Union, states as follows:

**I.    PARTIES**

1. New York Marine is a corporation domiciled under the laws of the State of New York, with its principal place of business in Morristown, New Jersey. New York Marine is duly qualified and authorized to transact its business within the State of Indiana.

2. Upon information and belief, the Credit Union is a federally chartered financial cooperative regularly engaged in the business of providing retail banking services to its members. The Credit Union's principal place of business is 1828 Moreau Drive, Notre Dame, IN 46556.

## II.     JURISDICTION AND VENUE

3. This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The dispute between New York Marine and the Credit Union, discussed below, creates an actual controversy for this Court to adjudicate.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(1), because the Credit Union is located in this judicial district.

## III.     FACTUAL ALLEGATIONS

### A.     Summary of the Underlying Litigation

6. This declaratory judgment action concerns whether, under two insurance policies issued by New York Marine to the Credit Union, New York Marine has any duty to defend or indemnify the Credit Union with respect to a counterclaim asserted against the Credit Union ("Dilley's Counterclaim") in a lawsuit commenced by the Credit Union.

### B.     New York Marine's Management and Security Liability Policy 2020–23

7. New York Marine issued Management and Security Liability Policy No. PL202000003200 (the "2020–23 Policy") to the Credit Union.

8. A true and correct copy of the 2020–23 Policy is attached as Exhibit A.

9. The 2020–23 Policy is a "claims-made" policy.

10. The Declarations page of the 2020–23 Policy states in all-capitalized, bolded, and italicized text: "***THIS IS A CLAIMS-MADE POLICY***." (ML DS 21 0213, page 1 of 3.)

2

11. Insuring Agreement C of the 2020–23 Policy states:

> If Entity Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insured organization** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured organization**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

(ML 00 01 0213, page 1 of 42.)

12. Insuring Agreement K of the 2020–23 Policy states:

> If Lender Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a:
>
> 1. **Borrower** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act** or a **wrongful vicarious lending liability act**; or
>
> 2. Lien holder, other than the **insured organization**, first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, based solely on the status of the **insured organization** as a lien holder or secured party.

(ML 00 01 0213, page 8 of 42.)

13. The 2020–23 Policy defines "**claim**" as follows:

> **Claim** means any of the following, for any **wrongful act**, including any appeal therefrom:
> a. A written demand to any **insured** for monetary damages or legal or equitable non-monetary relief;
> b. A civil proceeding brought against any **insured** commenced by the service of a complaint or similar pleading;
>
> . . .
>
> e. A written request to participate in an arbitration, mediation or other alternative dispute resolution proceeding if an **insured** is obligated to participate in such proceeding or if an insured agrees to participate in such proceeding, with the **insurance organization's** written consent; . . . .

(ML 00 01 0213, page 36 of 42.)

3

14. With respect to when a "**claim**" is first made, the 2020–23 Policy provides:

> For the purposes of this Policy, all **claims**, including any **claims** made during an Extended Reporting Period, arising out of the same **wrongful act** and all **interrelated wrongful acts** of the **insureds** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them, regardless of whether such date is before or during the **policy period**.

(ML 00 01 0213, page 31 of 42.)

15. With respect to reporting of a "**claim**," the 2020–23 Policy provides:

> As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

(Claims Reporting Endorsement, page 1 of 1.)

16. The "**policy period**" of the 2020–23 Policy is from April 17, 2020, to April 17, 2023. (ML 00 01 0213, page 39 of 42; see also ML DS 21 0213, page 1 of 3.)

17. The Credit Union did not elect the Extended Reporting Period under the 2020–23 Policy.

18. New York Marine is the "**insurance organization**" under the 2020–23 Policy. (ML 00 01 0213, page 37 of 42; see also ML DS 21 0213, page 1 of 3.)

19. The Credit Union is the "**insured organization**" and an "**insured**" under the 2020–23 Policy. (ML 00 01 0213, page 38 of 42; ML 00 01 0213, page 37 of 42; see also ML DS 21 0213, page 1 of 3.)

20. The 2020–23 Policy defines "**Loss**" as:

> **Loss** does not mean or include any of the following:
> a. Civil or criminal fines, penalties, sanctions, injunctive relief, orders of forfeiture, or restitution and disgorgement, except:
>    1) To the extent included in paragraphs c., d. or i. above; or

4

    2) For the 5% penalty under Section 502(i) and the 20% penalty under section 502(l) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended; or . . . .

Only for the purpose of determining applicable law regarding whether such liquidated, punitive, exemplary or multiplied damages are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a. Those damages were awarded or imposed;
b. Any **wrongful act** occurred for which such damages were awarded or imposed;
c. The **insured** resides, is incorporated or has its principal place of business; or
d. The **insurance organization** is incorporated or has its principal place of business.

(ML 00 01 0213, page 39 of 42.)

    21.    Under the Defense and Settlement Condition, as modified by the Credit Union Advantage Endorsement-Select, in the 2020–2023 Policy:

1. The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this Policy without the **insurance organization's** written consent, which shall not be unreasonably withheld. The **insurance organization** shall not be liable for any **loss** based upon settlement, **defense costs**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to that it has not consented.

2. The **insurance organization** shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conduct its investigation or to reach a settlement of the **claim**. The **insureds** agree that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery.

. . .

5

> 7. The **insurance organization** shall have the right and duty to select defense counsel and defend any **claim** covered under this Policy. The **insurance organization's** duty to defend **claims** shall apply even if any of the allegations are groundless, false or fraudulent, but shall only obligate the **insurance organization** to pay **defense costs**.

(ML 00 14 0213, page 4 of 4.)

22. Additional terms, conditions, definitions, and exclusions are set forth in the 2020–23 Policy.

23. New York Marine issued Policy Change No. 1, effective March 8, 2021, to the 2020–23 Policy.

24. A true and correct copy of Policy Change No. 1 to the 2020–23 Policy is attached as Exhibit B.

**C.    New York Marine's Management and Security Liability Policy 2023–2026**

25. New York Marine issued Management and Security Liability Policy No. PL202300003200 (the "2023–26 Policy") to the Credit Union.

26. A true and correct copy of the 2023–26 Policy is attached as Exhibit C.

27. The 2023–26 Policy is a "claims-made" policy.

28. The Declarations page of the 2023–26 Policy states in all-capitalized, bolded, and italicized text: "***THIS IS A CLAIMS-MADE POLICY***." (ML DS 21 0213, page 1 of 4).

29. Insuring Agreement C of the 2023–26 Policy states:

> If Entity Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insurance organization** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured organization**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

(ML 00 01 0213, page 1 of 42).

30. Insuring Agreement K of the 2023–26 Policy states:

    If Lender Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a:

    1. **Borrower** first made during the **policy period** against the insured, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act** or a **wrongful vicarious lending liability act**; or

    2. Lien holder, other than the **insured organization**, first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, based solely on the status of the **insured organization** as a lien holder or secured party.

(ML 00 01 0213, page 8 of 42.)

31. The 2023–26 Policy defines "**claim**" as follows:

    **Claim** means any of the following, for any **wrongful act**, including any appeal therefrom:
    a. A written demand to any **insured** for monetary damages or legal or equitable non-monetary relief;
    b. A civil proceeding brought against any **insured** commenced by the service of a complaint or similar pleading;
    . . .
    e. A written request to participate in an arbitration, mediation or other alternative dispute resolution proceeding if an **insured** is obligated to participate in such a proceeding or if an **insured** agrees to participate in such proceeding, with the **insurance organization's** written consent; . . . .

(ML 00 01 0213, page 36 of 42.)

32. With respect to when a "claim" is first made, the 2023–26 Policy provides:

    For the purposes of this Policy, all **claims**, including any **claims** made during an Extended Reporting Period, arising out of the same **wrongful act** and all **interrelated wrongful acts** of the **insureds** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them, regardless of whether such date is before or during the **policy period**.

(ML 00 01 0213, page 31 of 42.)

7

33. The "**policy period**" of the 2023–26 Policy is from April 17, 2023, to April 17, 2026. (ML 00 01 0213, page 39 of 42; see also ML DS 21 0213, page 1 of 4.)

34. New York Marine is the "**insurance organization**" under the 2023–26 Policy. (ML 00 01 0213, page 37 of 42; see also ML DS 21 0213, page 1 of 4.)

35. The Credit Union is the "**insured organization**" and an "**insured**" under the 2023–26 Policy. (ML 00 01 0213, page 38 of 42; ML 00 01 0213, page 37 of 42; see also ML DS 21 0213, page 1 of 4.)

36. Additional terms, conditions, definitions, and exclusions are set forth in the 2023–26 Policy.

   **D.    Credit Union Commences Lawsuit Against David Dilley**

37. On September 10, 2021, the Credit Union commenced an action against David Dilley ("Dilley") for defaulting on a contract, in Indiana State Superior Court, Kosciusko County, Case No. 43D04-2109-CC-000568 (the "Lawsuit").

38. In the Credit Union's Complaint, the Credit Union sought, among other forms of relief, a judgment in the amount of $7,992.49, plus contractual interest from the last date of payment, reasonable attorney fees, and cost of the proceedings.

   **E.    David Dilley Asserts Counterclaim against Credit Union for Alleged UCC Violations**

39. On October 22, 2021, Dilley filed an Answer and Counterclaim in the Lawsuit.

40. A true and correct copy of the Answer and Counterclaim is attached as Exhibit D.

41. In Count I of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related to a 2015 Jeep Grand Cherokee.

42. In Count II of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related a 2016 KZ Recreational Vehicle.

43. In Count III of the Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-601 through 26-1-9.1-628, regarding a consumer note related to a 2012 Polaris ATV.

44. In the Answer and Counterclaim, Dilley sought statutory relief under the UCC, interest, declaratory relief, injunctive relief, and attorney fees.

45. On or about October 22, 2021, the Credit Union did not report Dilley's Counterclaim to New York Marine.

F.  **The Credit Union Answered Dilley's Counterclaim**

46. On November 11, 2021, the Credit Union answered, through counsel, Dilley's Counterclaim denying the allegations.

47. The Credit Union's counsel that filed the Answer to the Counterclaim was Krisor & Associates.

48. The Credit Union did not report Dilley's Counterclaim to New York Marine and did not seek New York Marine's approval for Krisor & Associates to represent the Credit Union with respect to Dilley's Counterclaim.

G.  **Dilley Amended the Counterclaim to Assert a Class Action against the Credit Union**

49. On February 14, 2022, Dilley filed a Motion for Leave to Amend Original Answer and Counterclaim.

50. In the Motion for Leave to Amend, Dilley asserted that he was seeking leave to amend to add class-action allegations based on the Credit Union's alleged standard practice of using presale notices and post-sale notices that violate IC § 26-1-9.1-601 *et seq*.

51. On or about February 14, 2022, the Credit Union did not report to New York Marine that Dilley was seeking to add class action allegations to Dilley's Counterclaim or that a counterclaim had been filed against the Credit Union.

52. On March 17, 2022, the Credit Union, through counsel, filed a Motion for Enlargement of Time to Respond to Motion for Leave to Amend Original Answer and Counterclaim.

53. In the motion for enlargement of time, the Credit Union stated that it had just retained attorneys from Kreig DeVault, LLP, who needed time to familiarize themselves with the case.

54. The Credit Union did not seek approval from New York Marine for Kreig DeVault, LLP to represent the Credit Union in connection with Dilley's Counterclaim.

55. Furthermore, despite retaining additional counsel to defend against Dilley's Counterclaim as a potential class action, the Credit Union did not report Dilley's Counterclaim to New York Marine.

56. Since approximately March 17, 2022, the Credit Union has been represented in the Lawsuit by Kreig DeVault, LLP and Krisor & Associates.

57. The Credit Union never sought approval from New York Marine for Kreig DeVault, LLP or Krisor & Associates to represent the Credit Union in the Lawsuit.

58. On March 17, 2022, the Superior Court granted the Credit Union's motion for enlargement of time to respond to Dilley's motion for leave to amend.

59. On September 19, 2022, the Superior Court granted Dilley's motion for leave to amend and denied the Credit Union's opposition.

60. On September 20, 2022, Dilley filed a First Amended Answer and Counterclaim.

10

61. A true and correct copy of the First Amended Answer and Counterclaim is attached as Exhibit E.

62. In the First Amended Answer and Counterclaim, Dilley asserted a class action to redress the Credit Union's alleged unlawful repossession practices and procedures.

63. In Count I of the First Amended Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-611 through 26-9.1-614.

64. In Count II of the First Amended Answer and Counterclaim, Dilley asserted UCC violations under IC § 26-1-9.1-616.

65. In the First Amended Answer and Counterclaim, Dilley sought statutory relief under the UCC, interest, attorney fees, injunctive relief, and declaratory relief.

66. On or about September 20, 2022, the Credit Union did not report Dilley's Counterclaim to New York Marine.

**H.   Dilley Amends Dilley's Counterclaim a Second Time**

67. On November 16, 2022, the Credit Union filed, through counsel, an Answer and Affirmative Defenses to Amended Counterclaim.

68. On May 8, 2023, the Indiana Superior Court in the Lawsuit granted the Credit Union leave to amend its answer to Dilley's Counterclaim.

69. On May 18, 2023, the Credit Union filed, through counsel, an Amended Answer and Affirmative Defenses to Amended Counterclaim.

70. On May 23, 2023, Dilley filed a Second Amended Answer and Counterclaim.

71. A true and correct copy of the Second Amended Answer and Counterclaim is attached as Exhibit F.

72. In Count I of the Second Amended Answer and Counterclaim, Dilley asserted UCC violations under IC §§ 26-1-9.1-611 through 26-9.1-614.

73. In Count II of the Second Amended Answer and Counterclaim, Dilley asserted UCC violations under IC § 26-1-9.1-616.

74. On or about May 23, 2023, the Credit Union did not report Dilley's Counterclaim to New York Marine.

75. On June 2, 2023, the Credit Union, through counsel, filed a Motion for Enlargement of Time to Respond to Discovery Requests.

76. On June 5, 2023, the Indiana Superior Court granted the Credit Union an extension to respond to discovery by July 5, 2023.

77. On June 12, 2023, the Credit Union filed, through counsel, an Answer and Affirmative Defenses to Second Amended Counterclaim.

78. On June 30, 2023, the Credit Union filed, through counsel, a Motion for Indefinite Enlargement of Time to Respond to Discovery Requests.

79. In its Motion for Indefinite Enlargement of Time to Respond to Discovery Requests, the Credit Union asserted that the Credit Union and Dilley were currently engaged in settlement discussions to resolve the matter.

80. On July 3, 2023, the Superior Court granted the Credit Union's Motion for Indefinite Enlargement of Time to Respond to Discovery Requests.

I. **The Credit Union Reports the Lawsuit to New York Marine**

81. On October 10, 2023, almost two years after Dilley's Counterclaim was filed, the Credit Union notified Allied Solutions ("Allied") via email of Dilley's Counterclaim for the first time.

82. On October 11, 2023, New York Marine received the first notice of Dilley's Counterclaim via email from Allied.

83. A true and correct copy of the Credit Union's and Allied's October 10–11, 2023, emails are attached as Exhibit G.

84. On October 13, 2023, New York Marine, via email, acknowledged receipt of the Credit Union's first notice of Dilley's Counterclaim.

85. A true and correct copy of New York Marine's October 13, 2023, email is attached as Exhibit H.

86. In the October 13, 2023, email, New York Marine stated that no prior notice of Dilley's Counterclaim had been made prior to October 11, 2023.

87. In the October 13, 2023, email, New York Marine's claims representative wrote:

> We are currently reviewing the late notice issue and will advise further. The policy requires as a condition precedent that notice must be received as soon as practicable, but no later than 60 days after expiration of the policy period. The Counterclaim was filed during the 4-17-2020 to 4-17-2023 policy period. If you have information indicating prior notice was sent to Coaction, formerly known as Prosight Specialty, prior to October 11, 2023, please provide such information for immediate review. New York Marine expressly reserves all rights and defenses as provided by the Liability Policy, as well as by law and in equity.

88. The Credit Union did not supply any information or documents showing it notified New York Marine of Dilley's Counterclaim before October 11, 2023.

89. On November 13, 2023, New York Marine sent a coverage determination letter to the Credit Union.

90. A true and correct copy of the November 13, 2023, coverage determination letter is attached as Exhibit I.

91. In the November 13, 2023, coverage determination letter, New York Marine stated that the claim had not been "provided to New York Marine for almost two years from the date of filing of the Counterclaim and more than 60 days after expiration of the **policy period**. Notice of

the **claim** [was] untimely. Consequently [New York Marine] must respectfully decline coverage for this matter."

92. On November 29, 2023, the Credit Union, through counsel, sent correspondence to New York Marine, disputing New York Marine's coverage position.

93. In the Credit Union's November 29, 2023, letter, the Credit Union did not deny that it failed to timely report Dilley's Counterclaim under the 2020–23 Policy.

94. On January 17, 2024, counsel for New York Marine responded to the Credit Union through written correspondence.

95. On February 1, 2024, the Credit Union for the first time notified New York Marine that the Credit Union and Dilley previously attended mediation that was unsuccessful and at which the Credit Union made settlement offers.

96. Not having ever been informed of the mediation, New York Marine had no opportunity for involvement in or consent to the settlement discussions.

## COUNT I – DECLARATORY JUDGMENT (2020‑23 POLICY)

97. New York Marine hereby incorporates by reference the allegations contained in Paragraphs 1–96 of this Complaint as if set forth fully herein.

98. To trigger potential coverage under the 2020–23 Policy, there must be a loss resulting from a "**claim** first made during the **policy period**."

99. Under the 2020–23 Policy, Dilley's Counterclaim is a "**claim**."

100. Under the 2020–23 Policy, Dilley's Counterclaim is a "**claim**" first made no later than when Dilley filed his Answer and Counterclaim on October 22, 2021.

101. Under the 2020–23 Policy, it is a "condition precedent" to coverage that the "**insureds** . . . give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period**."

14

102. The "**policy period**" of the 2020–23 Policy is April 17, 2020, to April 17, 2023.

103. Sixty days after the expiration of the "**policy period**" of the 2020–23 Policy is June 16, 2023.

104. The Credit Union first notified New York Marine of the "**claim**" on or about October 11, 2023.

105. The Credit Union did not notify New York Marine of the "**claim**" within 60 days after the 2020–23 Policy expired on April 17, 2023.

106. The Credit Union did not notify New York Marine of the "**claim**" "as soon as practicable" after the Credit Union became aware of the "**claim**."

107. The Credit Union did not satisfy the 2020–23 Policy's condition precedent to trigger potential coverage.

108. Because the Credit Union failed to timely report the "**claim**," New York Marine has no duty to defend the Credit Union against Dilley's Counterclaim under Insuring Agreement C of the 2020–23 Policy.

109. Because the Credit Union failed to timely report the "**claim**," New York Marine has no duty to defend the Credit Union against Dilley's Counterclaim under Insuring Agreement K of the 2020–23 Policy.

110. New York Marine is entitled to a declaration from this Court that the 2020–23 Policy does not provide coverage for any "**loss**," including "**defense costs**," incurred by the Credit Union because the Credit Union failed to timely report the "**claim**."

111. Under the 2020–23 Policy, the Credit Union "agree[d] not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligations . . . without the **insurance organization's** written consent, which shall not be unreasonably withheld."

112. The Credit Union offered to settle the "**claim**" and incurred "**defense costs**" without seeking or obtaining New York Marine's consent.

113. New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-quoted condition of the 2020–23 Policy, thereby barring coverage.

114. Under the 2020–23 Policy, the Credit Union "agree[d] that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery."

115. The Credit Union's conduct of the Lawsuit and defense of Dilley's Counterclaim without New York Marine's knowledge or involvement has prejudiced New York Marine or its potential or actual rights of recovery.

116. New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-quoted condition of the 2020–23 Policy, thereby barring coverage.

117. Under the 2020–23 Policy, New York Marine had "the right and duty to select defense counsel and defend any **claim** covered under this Policy."

118. The Credit Union has defended Dilley's Counterclaim using defense counsel not selected by New York Marine.

119. New York Marine is entitled to a declaration from this Court that the Credit Union violated the above-quoted condition of the 2020–23 Policy, thereby barring coverage.

120. To the extent any coverage is afforded to the Credit Union, New York Marine is entitled to a declaration from this Court that the 2020-23 Policy does not cover "[c]ivil or criminal fines, penalties, sanctions, injunctive relief, orders of forfeiture, or restitution and disgorgement," which is the relief Dilley's Counterclaim seeks.

121. Additional coverage limitations, definitions, conditions, and exclusions may exclude or limit coverage for the Credit Union with regard to Dilley's Counterclaim. New York

16

Marine continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the 2020–23 Policy in relation to Dilley's Counterclaim.

### COUNT II – DECLARATORY JUDGMENT (2023‑26 POLICY)

122. New York Marine hereby incorporates by reference the allegations contained in Paragraphs 1–121 of this Complaint as if set forth fully herein.

123. To trigger potential coverage under the 2023–26 Policy, there must be a loss resulting from a "**claim** first made during the **policy period**."

124. Under the 2023–26 Policy, Dilley's Counterclaim is a "**claim**."

125. Under the 2023–26 Policy, Dilley's Counterclaim is a "**claim**" first made no later than when Dilley filed his Answer and Counterclaim on October 22, 2021.

126. The "**policy period**" of the 2023–26 Policy is April 17, 2023, to April 17, 2026.

127. Dilley's Counterclaim is a "**claim**" that was first made before the 2023–26 Policy's "**policy period**" began.

128. Because Dilley's Counterclaim is a "**claim**" that was first made before the "**policy period**" of the 2023–26 Policy, New York Marine is entitled to a declaration from this Court that the 2023–26 Policy does not provide coverage to the Credit Union for Dilley's Counterclaim.

WHEREFORE, New York Marine respectfully requests the following relief:

1. For an Order declaring that New York Marine has no obligation to the Credit Union with regard to Dilley's Counterclaim under the 2020–23 Policy;

2. For an Order declaring that New York Marine has no obligation to the Credit Union with regard to Dilley's Counterclaim under the 2023–26 Policy;

3. For an Order declaring that New York Marine has no obligation to the Credit Union, under the 2020–23 Policy, the 2023–26 Policy, or otherwise, with regard to any amounts consisting

of civil or criminal fines, penalties, sanctions, injunctive relief, orders of forfeiture, or restitution and disgorgement;

    4.    For an Order awarding New York Marine its costs and disbursements herein; and

    5.    For such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

New York Marine demands a trial by jury on all issues so triable.

    Respectfully Submitted,

    KOPKA PINKUS DOLIN

    By:  */s/ Minh C. Wai*
           Minh C. Wai, Esq.
           9801 Connecticut Drive
           Crown Point, IN 46307
           Phone: (219) 794-1888

           In Association With:
           Joshua A. Dorothy, Esq. (*pro hac vice* pending)
           Nicholas J. Sideras, Esq. (*pro hac vice* pending)
           Gregerson, Rosow, Johnson & Nilan, Ltd.
           100 Washington Avenue South, Suite 1550
           Minneapolis, MN 55401
           Phone: (612) 338-0755

           **ATTORNEYS FOR NEW YORK MARINE AND GENERAL INSURANCE COMPANY**

## VERIFICATION

I, Judy Edwards, declare as follows:

1. I am a Senior Claims Examiner for Coaction Specialty Insurance Group, Inc. and am authorized to verify the Complaint in *New York Marine and General Insurance Company v. Notre Dame Federal Credit Union*.

2. I have personal knowledge of all the facts contained in the Complaint. The information in the Complaint has been collected and made available to me as an employee for Coaction Specialty Insurance Group, Inc., the parent company for New York Marine and General Insurance Company. This Complaint is based on information and material known at this time and New York Marine and General Insurance Company reserves the right to amend its Complaint.

3. I verify and declare under penalty of perjury that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

This Verification was executed in Franklin, Wisconsin on February 23, 2024.

*/s/ Judy Edwards*
Judy Edwards