**Exhibit A**

**New York Marine and General Insurance Company**
**Policy No.: PL202000003200**
**Policy Period: From 04/17/2020 to 04/17/2023**





# REPORT A CLAIM

## QUICK. CONVENIENT. FOCUSED.

TELL US WHAT HAPPENED AND WE'LL IMMEDIATELY BEGIN TO DELIVER THE AWESOME SERVICE THAT IS THE HALLMARK OF PROSIGHT.

We'll focus first on assuring your well-being. Then, we'll tend to every detail of your claim with care.

 **EMAIL**   claims@prosightspecialty.com

 **FAX**   1-855-657-3534

 **MAIL**   ProSight Specialty Insurance Claims Department
412 Mt. Kemble Avenue Suite 300C
Morristown, NJ 07960

 **PHONE**   1-800-774-2755
Press '1' to Report a Claim / Anytime - days, nights & weekends
*For inquiries on previously reported claims:*
Press '2' Workers' Compensation Claims
Press '3' All Other Claims

**ONLINE**   customer.prosightspecialty.com



PN 04 99 37    11/17

As used herein, "ProSight" refers to the insurers of ProSight Specialty Insurance Group underwriting insurance policies or bonds, which include New York Marine and General Insurance Company, Gotham Insurance Company and Southwest Marine and General Insurance Company. Actual coverage is specified by the policies or bonds issued. ProSight Specialty, 412 Mt Kemble Ave, Morristown, NJ 07960.



**New York Marine and General Insurance Company**
59 Maiden Lane, 27th Floor
New York, NY 10038-4647
A Stock Company

## MANAGEMENT AND SECURITY LIABILITY POLICY

## DECLARATIONS

*THIS IS A CLAIMS-MADE POLICY. DEFENSE COSTS ARE INCLUDED WITHIN THE ANNUAL AGGREGATE LIMIT OF LIABILITY. ANY DEDUCTIBLES SHALL APPLY TO DEFENSE COSTS. READ THIS POLICY CAREFULLY.*

Effective Date: **04-17-2020** 12:01 a.m.  for the Insuring Agreements, Annual Aggregate Limit(s) of Liability and Deductible(s) shown below.
These Declarations supersede any previous Declarations.

Reason for new Declarations:

**ITEM 1. INSURED ORGANIZATION**                Policy No: PL202000003200

    Notre Dame Federal Credit Union
    1828 Moreau Dr,
    Notre Dame,IN,46556.

**ITEM 2.** Effective Date: **04-17-2020** 12:01 a.m.
    Expiration Date: **04-17-2023** 12:01 a.m.

## Item 3. Coverages

| If "no coverage" is shown opposite any coverage below, that coverage is not provided and is deleted from this Policy. | (A) Coverage Annual Aggregate Limit of Liability | (B) Per Claim Deductible | (C) Coverage is Part of Policy Annual Aggregate Limit of Liability |
|---|---|---|---|
| **Management Liability** | | | |
| A. Individual | $10,000,000 | $0 | Yes |
| B. Reimbursement | $10,000,000 | $25,000 | Yes |
| C. Entity | $10,000,000 | $25,000 | Yes |
| D. Investigative Costs | $100,000 | $0 | Yes |
| E. Outside Director Liability | $10,000,000 | $0 | Yes |
| F. Director and Officer Umbrella | No Coverage | No Coverage | No Coverage |
| G. Director and Officer ID Theft $7,500 Limit per Director or Officer | No Coverage | No Coverage | No Coverage |
| H. Employment Practices Liability | $1,000,000 | $10,000 | Yes |
| I. Fair Labor Standards Act | $200,000 | $10,000 | Yes |
| J. Fiduciary Liability | $2,000,000 | $1,000 | Yes |
| **Professional Liability** | | | |
| K. Lender Liability | $2,000,000 | $10,000 | Yes |
| L. Lending Service Organization Liability | $0 | $10,000 | Yes |
| M. Credit Union Professional Liability | $1,000,000 | $10,000 | Yes |
| N. Financial Services Professional Liability | No Coverage | No Coverage | No Coverage |
| **Information Security Protection** | | | |
| O. Website Publishing Liability | $2,000,000 | $25,000 | Yes |
| P. Security Breach Liability | $2,000,000 | $25,000 | Yes |
| Q. Programming Errors and Omissions Liability | $2,000,000 | $25,000 | Yes |
| R. Replacement or Restoration of Electronic Data | No Coverage | No Coverage | No Coverage |
| S. Extortion Threats | No Coverage | No Coverage | No Coverage |
| T. Business Income and Extra Expense | No Coverage | No Coverage | No Coverage |
| U. Public Relations Expense | $250,000 | $20,000 | Yes |
| V. Security Breach Expense | $1,000,000 | $20,000 | Yes |

ML DS 21 0213      © ProSight Specialty Insurance Group, Inc.      Page 2 of 3

## Item 4.  Policy Annual Aggregate Limit of Liability  $22,000,000

**Item 5.  Extended Reporting Period**

Additional Annual Premium:          150%

Additional Period:          12 Months

## Item 6.  Additional Insureds

| | (A) Insureds Are Included In This Policy | (B) Subject to Annual Aggregate Sub-Limit of Liability | (C) Annual Aggregate Sub-Limit of Liability |
|---|---|---|---|
| Management Liability | | | |
| Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Employment Practices Liability | | | |
| Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Independent Contractors | Yes | Yes | REFER TO ITEM 4 |
| Fiduciary Liability | | | |
| Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Professional Liability | | | |
| Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Information Security Protection | | | |
| Website Publishing Liability | Yes | Yes | REFER TO ITEM 4 |
| Security Breach Liability | Yes | Yes | REFER TO ITEM 4 |
| Programming Errors and Omissions Liability | Yes | Yes | REFER TO ITEM 4 |
| Replacement or Restoration of Electronic Data | Yes | Yes | REFER TO ITEM 4 |
| Extortion Threats | Yes | Yes | REFER TO ITEM 4 |
| Business Income and Extra Expense | Yes | Yes | REFER TO ITEM 4 |
| Public Relations Expense | Yes | Yes | REFER TO ITEM 4 |
| Security Breach Expense | Yes | Yes | REFER TO ITEM 4 |

## Item 7.  Prior and Pending Litigation

| | Date |
|---|---|
| Management Liability | |
| Individual | 04-17-2020 |
| Reimbursement | 04-17-2020 |
| Entity | 04-17-2020 |
| Investigative Costs | 04-17-2020 |
| Outside Director Liability | 04-17-2020 |
| Director and Officer Umbrella | No Coverage |
| Director and Officer ID Theft | No Coverage |
| Employment Practices Liability | 04-17-2020 |
| Fair Labor Standards Act | 04-17-2020 |
| Fiduciary Liability | 04-17-2020 |
| Professional Liability | |
| Lender Liability | 04-17-2020 |
| Lending Service Organization Liability | 04-17-2020 |
| Credit Union Professional Liability | 04-17-2020 |
| Financial Services Professional Liability | No Coverage |
| Information Security Protection | |
| Website Publishing Liability | 04-17-2020 |
| Security Breach Liability | 04-17-2020 |
| Programming Errors and Omissions Liability | 04-17-2020 |
| Replacement or Restoration of Electronic Data | No Coverage |
| Extortion Threats | No Coverage |
| Business Income and Extra Expense | No Coverage |
| Public Relations Expense | 04-17-2020 |
| Security Breach Expense | 04-17-2020 |

Total Annual Premium $ 66807

The following forms along with these Declarations complete this Management Protection Package.

SIGNATURE PAGE

**In witness whereof**, New York Marine and General Insurance Company has caused this policy to be signed by its president and secretary.

Larry Hannon
President

Frank D. Papalia
Secretary

Named Insured: Notre Dame Federal Credit Union
Policy #: PL202000003200
Policy Period: 04-17-2020 to 04-17-2023

IL 0001 (0519)

POLICY NO: PL202000003200

# SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED | EFFECTIVE DATE | POLICY NUMBER |
|---|---|---|
| Notre Dame Federal Credit Union | 04-17-2020 | PL202000003200 |

| | |
|---|---|
| IF THIS ENDORSEMENT IS LISTED IN THE POLICY DECLARATIONS, IT IS IN EFFECT FROM THE TIME COVERAGE UNDER THIS POLICY COMMENCES. OTHERWISE, THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AS SHOWN ABOVE AT THE SAME TIME OR HOUR OF THE DAY AS THE POLICY BECAME EFFECTIVE. | COUNTERSIGNED BY: <br><br> _____ <br> AUTHORIZED REPRESENTATIVE |

**FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY**

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| MLDS21 | 0213 | MANAGEMENT AND SECURITY LIABILITY DECLARATIONS |
| IL0001 | 0519 | SIGNATURE PAGE |
| IL0012 | 0711 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| ML0001 | 0213 | MANAGEMENT AND SECURITY LIABILITY COVERAGE FORM |
| ML0004 | 0213 | MULTI-YEAR PREMIUM ENDORSEMENT |
| ML0006 | 0213 | ALLOCATION ENDORSEMENT |
| ML0014 | 0213 | CREDIT UNION ADVANTAGE ENDORSEMENT - SELECT |
| ML0028 | 0213 | WRONGFUL THIRD PARTY ACT ENDORSEMENT |
| ML0045 | 0218 | LENDER LIABILITY DISCRIMINATION ENDORSEMENT |
| ML0103 | 0213 | INDIANA AMENDATORY ENDORSEMENT |
| ML0137 | 0514 | CYBER AMENDATORY ENDORSEMENT |
| ML4500 | 0213 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT |
| ML4501 | 0213 | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |
| ML Manuscript 1 | | DEFENSE AND SETTLEMENTS ENDORSEMENT |
| ML Manuscript 2 | | CLAIM REPORTING ENDORSEMENT |
| ML Manuscript 3 | | LOSS DEFINITION AMENDMENT – DAMAGES ENDORSEMENT |
| ML Manuscript 4 | | WRONGFUL EMPLOYMENT PRACTICES LIABILITY ACT ENDORSEMENT |
| ML Manuscript 5 | | LENDER SERVICE ORGANIZATION LIABILITY - CUSTOMER AND BORROWER DEFINTION AMENDMENT ENDORSEMENT |

IL 0012 0711

**THIS IS A CLAIMS-MADE POLICY. DEFENSE COSTS ARE INCLUDED WITHIN THE ANNUAL AGGREGATE LIMIT OF LIABILITY. ANY DEDUCTIBLES SHALL APPLY TO DEFENSE COSTS. READ THIS POLICY CAREFULLY.**

*Some provisions restrict coverage. Do not rely on the titles or captions used in this Policy. Read this entire Policy carefully to determine rights, duties and what is or is not covered. Words and phrases appearing in **bolded text** in this Policy are defined in the Definitions section of this Policy.*

*All insuring agreements in this Policy are subject to the Declarations, Terms, Conditions and Other Provisions, except as modified in any insuring agreement or endorsement.*

*Insuring Agreements in this Policy are only provided if, and to the extent that, insuring agreement is indicated on the Declarations.*

## Management Liability Insuring Agreements

### A. Individual

If Individual Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by the **insured organization**, as a result of any **claim** first made during the **policy period** against the **insured person**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### B. Reimbursement

If Reimbursement Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is indemnified by the **insured organization**, as a result of any **claim** first made during the **policy period** against the **insured person**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### C. Entity

If Entity Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insured organization** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured organization**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### D. Investigative Costs

If Investigative Costs Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of the **insured organization** reasonable costs, charges, fees (including attorneys' fees, consultants' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of an **insured person**) incurred by the **insured organization**, including its board of directors, board of managers, or any committee thereof, and incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**, in connection with the **insured organization's** investigation or evaluation of any written demand first made during the **policy period** against the board of directors or board of managers of such **insured organization** or, if exercised, the Extended Reporting Period.

Provided, however, Investigative Costs Insuring Agreement shall only apply to a written demand:

1. Brought by any natural person made without the instigation, solicitation, assistance or active participation of any **insured person**; and

2. That is a civil proceeding in a court of law against any **insured person** for a covered **wrongful management liability act**.

**E.  Director and Officer Umbrella**

If Director and Officer Umbrella Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by the **insured organization** as a result of any **claim** first made during the **policy period** against them, individually or otherwise, or, if exercised, the Extended Reporting Period, for a **wrongful management liability act** occurring before or during the **policy period**.

The Director and Officer Umbrella Annual Aggregate Limit of Liability shall be in addition to each insuring agreement Annual Aggregate Limit of Liability for any Management Liability Insuring Agreement as shown in Item 3. (A) on the Declarations, and no deductible shall apply to this insuring agreement.  Director and Officer Umbrella Insuring Agreement shall apply only if any other valid and collectable insurance is not available to the **insured person**, whether the insurance is provided in this Policy or provided in any other policy.

For purposes of Director and Officer Umbrella Insuring Agreement, the following are deleted from the Terms, Conditions and Other Provisions:

1.  Insured Versus Insured Exclusion; and

2.  Pollution or Nuclear Exclusion.

For purposes of Director and Officer Umbrella Insuring Agreement, the following are deleted from the Management Liability Insuring Agreement:

1.  Other Wrongful Acts Exclusion;

2.  Personal Injury, Bodily Injury or Property Damage Exclusion;

3.  Professional Services Exclusion;

4.  Greenmail Exclusion; and

5.  Intellectual Property Exclusion.

The Director and Officer Umbrella Insuring Agreement is non-rescindable.

For purposes of the Director and Officer Umbrella Insuring Agreement, the Presumptive Indemnification Condition does not apply.

**F.  Outside Director Liability**

If Outside Director Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by any entity or that no other insurance coverage exists, as a result of any **claim** first made during the **policy period** against the **insured person**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful outside director liability act**.

For purposes of Outside Director Liability Insuring Agreement, the Outside Entity Exclusion in the Terms, Conditions and Other Provisions is deleted.

**G.  Director and Officer ID Theft**

If Director and Officer ID Theft Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay up to $7,500 for **identity theft expenses** on behalf of each present **director or officer** who experiences **identity theft**, incurred as the direct result of any **identity theft** first discovered and reported during the **policy period**.

## Additional Definitions for Insuring Agreements A - G

**Identity Theft:**

**Identity theft** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **director or officer** (or spouse or **domestic partner** thereof) with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**Identity Theft Expenses:**

**Identity theft expenses** means:

a. Costs for notarizing affidavits or similar documents attesting to fraud required by credit agencies, financial institutions or similar credit grantors;

b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

c. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

d. Costs for long distance telephone calls to law enforcement agencies, credit agencies, financial institutions or similar credit grantors, merchants or other credit grantors to report or discuss any covered **identity theft**;

e. Lost wages, up to a maximum payment of $750 per week for a maximum period of six weeks, as a result of absence from employment:

    1) To communicate with law enforcement agencies, credit agencies, financial institutions or similar credit grantors, merchants or other credit grantors or legal counsel;

    2) To complete fraud affidavits or similar documents; or

    3) Due to wrongful incarceration arising from someone having committed a crime in the name of a **director or officer**, provided the **director or officer** is acquitted or charges are dismissed related to the acts that caused the incarceration; and

    4) Costs for daycare and eldercare incurred solely as a result of any **identity theft** discovered during the **policy period**,

    incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

## Additional Exclusions for Insuring Agreements A - G

The **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed. Provided, however, this exclusion shall not apply to the portion of **loss**, including **defense costs**, related to liability the **insured** would have in the absence of the contract or agreement. Provided, however, this exclusion shall only apply to Entity Insuring agreement.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws.

3. For the portion of **loss** related to the actual or proposed payment by the **insured organization** of allegedly inadequate consideration in connection with the **insured organization's** purchase of securities issued by any organization or ownership interest in any organization. Provided, however, this exclusion shall not apply to **defense costs**. Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark. Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

5. For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

6. For the portion of **loss** related to:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

d.  Libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

e.  Violation of a person's right of privacy;

f.  Physical harm, sickness, disease, disability, death, mental anguish, emotional distress, mental injury or humiliation of any person; or

g.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

7.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Director and Officer Umbrella Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Director and Officer Umbrella Insuring Agreement.

8.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Entity Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Entity Insuring Agreement.

9.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Individual Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Individual Insuring Agreement.

10.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item. 7 on the Declarations for Reimbursement Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Reimbursement Insuring Agreement.

11.  For the portion of **loss** related to any service for a fee and pursuant to a written agreement provided by the **insured organization** or an **outside entity**.

Provided, however, this exclusion shall not apply to any **claim** against an **insured** to the extent such **claim** is for a **wrongful management liability act** in connection with the management or supervision of any division or **subsidiary** of the **insured organization** offering any of the aforementioned services.

12.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

a.  The actual or alleged violation of any federal, state, municipal, agency or common law or any rules or regulations promulgated thereunder relating to securities (including any unit of a capital account); or

b.  Any actual or alleged purchase, sale or distribution of or offer, representation or agreement relating to securities (including any unit of a capital account).

13.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

a.  Unauthorized access of **personal information**; or

b.  Violation of a person's right to privacy.

Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

**Employment Practices Liability Insuring Agreements**

## H. Employment Practices Liability

If Employment Practices Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful employment practices liability act** or a **wrongful third party act**.

## I. Fair Labor Standards Act

If Fair Labor Standards Act Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **defense costs** as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful FLSA act** that is solely a **claim** seeking pay for overtime or unpaid minimum wages or alleges misclassification of **employees**.

---

### Additional Exclusions for Insuring Agreements H and I

The **insurance organization** shall not be liable to make any payment:

1. For the portion of **loss** related to costs required to accommodate a disabled person, including but not limited to modifying any building or property to be more accessible.

2. For the portion of **loss** related to:

   a. Benefits, or the payment of benefits, in connection with an employee benefit plan; or

   b. Any other payment for the benefit of an **employee**, **director or officer** or **leased employee**,

   arising out of the employment relationship.

   Provided, however, this exclusion shall not apply to **defense costs** or salary, wages or commissions.

3. For the portion of **loss** related to any actual or alleged breach of any express contract or agreement between the **insured organization** and any **independent contractor**.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged assumption by an **insured** of another's liability by written, oral or implied contract or agreement.

   Provided, however, this exclusion shall not apply to:

   a. Liability that the **insured** would have in absence of such contract or agreement; or

   b. The extent the **insured organization** has agreed to indemnify a **leased employee** or **independent contractor** for such **loss**, but only to the extent coverage is granted for **leased employees** or **independent contractors** in this Policy.

5. For the portion of **loss** related to any actual or alleged breach of any written employment contract.

   Provided, however, this exclusion shall not apply to **loss**:

   a. To the extent that the **insured** would have been liable for such **loss** in absence of the written contract; or

   b. That constitutes **defense costs**;

   c. That constitutes severance pay owed pursuant to a settlement agreement.

6. For the portion of **loss** related to any actual or alleged violation of the responsibilities, obligations or duties imposed by:

   a. Employee Retirement Income Security Act of 1974 (29 U.S.C.A. §1 et seq.);

   b. Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.);

   c. Workers' compensation laws;

   d. Workers Adjustment and Retraining Notification Act (WARN) (29 U.S.C. §2101, et seq.) (Regulations 20 C.F.R. Part 639);

e.  Fair Labor Standards Act (FLSA) (29 U.S.C. §201 et seq.) (except Equal Pay Act provisions), except when covered in the Fair Labor Standards Act Insuring Agreement;

f.  National Labor Relations Act (NLRA) (29 U.S.C. §§151-169);

g.  Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (29 U.S.C. §1161 et seq. and 42 U.S.C. §300bb-1 et seq.);

h.  Occupational Safety and Health Act (OSHA) (2 U.S.C. §1341);

i.  Unemployment compensation laws;

j.  Tax laws; or

k.  Federal, state, local or common law provisions similar to paragraphs a. through j. above, including amendments to or regulations promulgated pursuant to the above laws.

Provided, however, this exclusion shall not apply to any **claim** for retaliation against a claimant related to a claimant's exercise of rights pursuant to any of the above laws, rules or regulations.

7.  For the portion of **loss** related to a **wrongful fiduciary liability act**.

8.  For the portion of **loss** related to:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

d.  Physical harm, sickness, disease, disability or death; or

e.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

9.  For the portion of **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administration or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Employment Practices Liability, or any actual or alleged **interrelated wrongful act** at issue in the aforementioned actions, with respect to Employment Practices Liability Insuring Agreement.

Provided, however, this exclusion shall not apply:

a.  To a **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any prior or pending administrative proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local government body; and

b.  When any General Counsel and Human Resource Manager of the **insured organization**, or equivalent, or any **director or officer** had no knowledge of such action described in paragraph a. above prior to the date shown in Item 7. on the Declarations for Employment Practices Liability Insuring Agreement.

## Fiduciary Liability Insuring Agreement

### J.  Fiduciary Liability

If Fiduciary Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful fiduciary liability act**.

If Fiduciary Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured** up to $100,000 for fees, penalties or sanctions (other than the cost of corrections) incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization** for which:

1.  Notice of participation was first provided or offered to the **insured organization** by the Department of Labor under a **voluntary compliance program** for a **wrongful fiduciary liability act** involving the actual or alleged noncompliance of an **insured plan**; and

2.  The insured is legally obligated to pay,

during the **policy period** or, if exercised, during the Extended Reporting Period.  The $100,000 for fees, penalties or sanctions (other than the cost of corrections) shall be a part of and not in addition to the Annual Aggregate Limit of Liability provided for Fiduciary Insuring Agreement and no deductible shall apply.

## Additional Exclusions for Insuring Agreement J

The **insurance organization** shall not be liable to make any payment:

1.  For the portion of **loss** related to:

    a.  Benefits due or to become due under any **insured plan**;

    b.  Benefits that would be due under any **insured plan** if such **insured plan** complied with all applicable law; or

    c.  Amounts an **insured** is legally obligated to pay to fund an **insured plan**.

    Provided, however, this exclusion shall not apply to **defense costs** or any actual or alleged:

    a.  Negligent act, error or omission by an **insured** based on any of the following with respect to an **insured plan**:

        1)  Interpreting or applying;

        2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**; or

        3)  Handling of records in effecting enrollment, calculating, terminating or canceling; or

    b.  Negligent act, error or omission by an **insured** in:

        1)  Interpreting or applying; or

        2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**,

        concerning workers' compensation, unemployment insurance, Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.).

2.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual or alleged violation of the responsibilities, obligations or duties imposed by:

    a.  Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.);

    b.  Workers' compensation laws;

    c.  Workers Adjustment and Retraining Notification Act (WARN) (29 U.S.C. §2101, et seq.) (Regulations 20 C.F.R. Part 639);

    d.  Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.);

    e.  National Labor Relations Act (NLRA) (29 U.S.C. §§151-169);

    f.  Occupational Safety and Health Act (OSHA) (2 U.S.C. §1341);

    g.  Unemployment compensation laws;

    h.  Tax laws; or

    i.  Federal, state, local or common law provisions similar to paragraphs a. through h. above, including amendments to or regulations promulgated pursuant to the above laws.

3.  For the portion of **loss** related to a **wrongful employment practices liability act**.

4.  For the portion of **loss** related to:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d.  Libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e.  Violation of a person's right of privacy;

    f.  Physical harm, sickness, disease, disability, death, mental anguish, emotional distress, mental injury or humiliation of any person; or

    g.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Fiduciary Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Fiduciary Liability Insuring Agreement.

## Professional Liability Insuring Agreements

### K.  Lender Liability

If Lender Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a:

1.  **Borrower** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act** or a **wrongful vicarious lending liability act**; or

2.  Lien holder, other than the **insured organization**, first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, based solely on the status of the **insured organization** as a lien holder or secured party.

## Additional Definitions for Insuring Agreement K

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend, or refuses to extend a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity with an account at the **insured organization** or any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a.  Record keeping;

b.  Billing;

c.  Disbursements of principal and interest for a loan;

d.  Credit reporting or statements of a **borrower's** creditworthiness; or

e.  Receipt or payment of insurance premiums and taxes.

**Non-Lending Services:**

**Non-lending services** means only those services any **insured** performs or is required to perform for the benefit of a **customer** of the **insured organization**:

a.  In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b.  Free of charge, in connection with a service for a fee, commission, or other compensation described in paragraph a. above;

c.  Related to any activities as a notary public; or

d.  Related to services provided under a signature validation program.

Provided, however, **non-lending services** shall not include **loan servicing**.

**Wrongful Lending Liability Act:**

**Wrongful lending liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **insured** relating to:

a. The rendering or failure to render **loan servicing**;

b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d. The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e. The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

f. The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

**Wrongful Vicarious Lending Liability Act:**

**Wrongful vicarious lending liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a party that is not an **insured** under this Policy, in connection with:

a. The rendering or failure to render **loan servicing**;

b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d. The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e. The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

f. The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above,

for which an insured is actually or allegedly vicariously liable.

## Additional Exclusions for Insuring Agreement K

The **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433),

3. Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

5. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the diminution in value of money, securities, property or any other item of value.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm, insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such organizations.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

8. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any extension of credit that when made was in excess of 105% of the applicable legal lending limit of the **insured organization**.

9. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from **non-lending services**.

10. For the portion of **loss** related to a **wrongful fiduciary liability act**, or a **wrongful employment practices liability act**.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the purchase or participation in any loan or any transaction whereby the **insured organization** acquires an ownership interest in an extension of credit:

    a. That was not originated by the **insured organization**; and

    b. Where the **insured organization** is not the **borrower's** creditor for the full amount of the extension of credit.

    Provided, however, this exclusion shall not apply to a **wrongful lending liability act** or a **wrongful vicarious lending liability act** as a result of the **insured organization's loan servicing**.

12. For the portion of **loss** related to:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d. Discrimination, libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e. Violation of a person's right of privacy;

    f. Physical harm, sickness, disease, disability or death; or

    g. Damage to or destruction of any tangible property or data, including loss of use of the property or data.

13. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Lender Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned events.

14. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **insured organization**, or any other ownership interest, when such **claim** is based upon, arises out of or pertains to any interest in said security.

    Provided, however, this exclusion shall not apply where:

    a. The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **borrower**; and

    b. Such **claim** is brought without the instigation, solicitation, assistance or participation of any other **insured**.

**L.  Lender Service Organization Liability**

If Lending Service Organization Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a **borrower** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act**.

---

## Additional Definitions for Insuring Agreement L

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** facilitates or assists with a loan, lease or extension of credit on behalf of a **customer** that is not the **insured organization**, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity, other than a **borrower**, that has received, is receiving or seeks to receive any service from the **insured organization**.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a.  Record keeping;

b.  Billing;

c.  Disbursements of principal and interest for a loan;

d.  Credit reporting or statements of a **borrower's** creditworthiness; or

e.  Receipt or payment of insurance premium and taxes.

**Non-Lending Services:**

**Non-lending services** means only those services any **insured** performs or is required to perform for the benefit of a **customer** of the **insured organization**;

a.  In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b.  Free of charge, in connection with a service for a fee, commission, or other compensation described in paragraph a. above;

c.  Related to any activities as a notary public; or

d.  Related to services provided under a signature validation program.

Provided, however, **non-lending services** shall not include the following services performed by an **insured**:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit; or

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit.

**Wrongful Lending Liability Act:**

**Wrongful lending liability act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by an **insured** relating to:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit;

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d.  The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

   e.  The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

   f.  The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

## Additional Exclusions for Insuring Agreement L

The **insurance organization** shall not be liable to make any payment:

1.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

2.  For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or in directly, or in the consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including common law.

3.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

4.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the diminution in value of money, securities, property or any other item of value.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm, insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such organizations.

6.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

7.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any extension of credit that when made was in excess of 105% of the applicable legal lending limit of the **insured organization**.

8.  For the portion of **loss** related to any actual or alleged duty or obligation to repurchase a loan.

9.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from **non-lending services**.

10.  For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

11.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the purchase or participation in any loan or any transaction whereby the **insured organization** acquires an ownership interest in an extension of credit:

   a.  That was not originated by the **insured organization**; and

   b.  Where the **insured organization** is not the **borrower's** creditor for the full amount of the extension of credit.

Provided, however, this exclusion shall not apply to a **wrongful lending liability act** or a **wrongful vicarious lending liability act** as a result of the **insured organization's loan servicing**.

12. For the portion of **loss** related to:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d. Discrimination, libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e. Violation of a person's right of privacy;

    f. Physical harm, sickness, disease, disability or death; or

    g. Damage to or destruction of any tangible property or data, including loss of use of the property or data.

13. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Lending Service Organization Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned events.

14. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **insured organization**, or any other ownership interest, when such **claim** is based upon, arises out of or pertains to any interest in said security.

    Provided, however, this exclusion shall not apply where:

    a. The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **borrower**; and

    b. Such **claim** is brought without the instigation, solicitation, assistance or participation of any other **insured**.

## M. Credit Union Professional Liability

If Credit Union Professional Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful credit union services liability act**.

## Additional Definitions for Insuring Agreement M

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity with an account at the **insured organization** or any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Debt Cancellation Program:**

**Debt cancellation program** means any written agreement, formed at the time of the initial loan, lease or extension of credit, between the **insured organization** and a **customer**, wherein the **insured organization**, for a fee paid by the **customer**, agrees that upon the occurrence of certain events specified in the written agreement, the **insured organization** will cancel or defer principal, or forgive interest, on a loan, lease or other extension of credit granted by the **insured organization** to such **customer**.

**IRA/Keogh Act:**

**IRA/Keogh Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured**, for a **customer** and in the **insured's** capacity as a trustee of any:

    a. Individual Retirement Account (IRA);

b.   Keogh Account (HR 10 Plan);

c.   Deferred compensation plan that meets the requirements of the Internal Revenue Code of 1986 (IRC) (26 U.S.C.A. §1 et seq.); or

d.   Other plan under Section (3) of Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.),

provided such trustee activity is allowed under the limited trust authority granted by such accounts or plans.

**Loan Protection Products:**

**Loan protection products** means insurance products sold to a **borrower** in connection with a loan, including but not limited to credit insurance, guaranteed asset protection (GAP) insurance or mechanical repair insurance.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a.   Record keeping;

b.   Billing;

c.   Disbursements of principal and interest for a loan;

d.   Credit reporting or statements of a **borrower's** creditworthiness; or

e.   Receipt or payment of insurance premiums and taxes.

**Member:**

**Member** means any natural person or an entity that has or has had a share account at the **insured organization**.

**Payment Of Deposit Act:**

**Payment of deposit act** means any unintentional error or omission in payment of shares or deposits or in the application of funds received from a **member**.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

**Professional Services:**

**Professional services** means only those services the **insured organization** performs or is required to perform for a **customer** of the **insured organization**:

a.   In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b.   Free of charge, in connection with a service for a fee, commission or other compensation described in paragraph a. above;

c.   Pursuant to a membership or account agreement with a **member**;

d.   Related to any activities as a notary public; or

e.   Related to services provided under a signature or validation program.

Provided, however, that **professional services** shall not include:

a.   Services performed by any entity that an **insured** acquires ownership or control as security for a loan, lease or extension of credit;

b.   Medical or health care services;

c.   The practice of law or the rendering of legal services;

d.   Architectural, engineering or construction management services;

e.   Services provided, to a **customer**, as an enrolled actuary as that term is used in or in connection with Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended;

f.   The rental of a safe deposit box;

g.   The designing, building or maintenance of any website or the content of any website;

h. Real estate appraisal services; or

i. **Trust services**.

**Shared Branching Facility:**

**Shared branching facility** means a staffed office location that provides members of any credit union, other than the **insured organization**, the ability to interact with an **insured person** to transact business on behalf of the member with their respective credit union, pursuant to a written contract that at a minimum includes share deposit and share withdrawal transactions.

**Trade Practices Act:**

**Trade practices act** means any unintentional violation of any unfair or deceptive trade practices act, statute or regulation.

**Trust Services:**

**Trust services** means those services provided by an **insured** on behalf of the **insured organization** in their capacity as:

a. Executor, administrator or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

b. Custodian, depository or managing agent for securities or real property, manager of personal property, attorney-in-fact, escrow agent, transfer or dividend disbursing agent, registrar, fiscal paying agent, tax withholding agent, exchange agent, redemption or subscription agent, warrant or scrip agent, trustee under bond indenture or sinking fund agent;

c. Trustee or co-trustee, fiduciary or co-fiduciary under a pension, profit sharing, health and welfare or other similar employee benefit plan or trust; or

d. Trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Credit Union Services Liability Act:**

**Wrongful credit union services liability act** means:

a. **IRA/Keogh Act**;

b. **Trade practices act**;

c. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed while functioning as a **shared branching facility**;

d. **Payment of deposit act**, but only if such **claim** is brought by a **member**; or

e. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by or on behalf of an **insured** in the rendering or failure to render **professional services**.

## Additional Exclusions for Insuring Agreement M

The insurance organization shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the control of any entity or property that an **insured** acquired as security or collateral for any loan, lease or extension of credit.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed.

Provided, however, this exclusion shall not apply to:

a.  The extent that the **insured** would have been liable in the absence of the contract or agreement;

b.  The extent that the **insured organization**, pursuant to an agreement of indemnification, agreed, prior to the **claim**, to assume the liability of an **insured person**; or

c.  Any **claim** against the **insured** by a **customer**, if and to the extent that such **claim** alleges:

1)  A breach of contractual obligations in the rendering of, or failure to render, **professional services**; or

2)  A breach of a membership agreement or an account agreement.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

6.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any dispute involving fees or charges of the **insured organization**.

7.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from fraudulent:

a.  Instruction through e-mail, telefacsimile or telephonic means; or

b.  ACH debit from a **customer's** account.

8.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged written or verbal representations, promises or guarantees regarding the past performance or future value of any investment product.

9.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

10. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any decrease or lack of increase in the value of any investments, including securities, commodities, currencies, options or futures.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d.  The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e.  The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

f.  The unintentional violation of any federal or state unfair or deceptive practices act, statute, regulation or other law relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

Provided, however, this exclusion shall not apply to any **professional services** related to **loan protection products** or a **debt cancellation program** or for activities as a notary public.

12. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual loss of money, securities, property or other items of value in the custody or control of any **insured**, its agent or while in transit.

13. For the portion of **loss** related to a **wrongful fiduciary liability act** (except for an **IRA/Keogh Act**) or a **wrongful employment practices liability act**.

14. For the portion of **loss** related to:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d. Discrimination;

    e. Violation of a person's right of privacy;

    f. Physical harm, sickness, disease, disability or death;

    g. Damage to or destruction of any tangible property or data, including loss of use of the property or data; or

    h. Mental anguish, emotional distress, mental injury or humiliation of any person.

15. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Credit Union Professional Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions.

16. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the **insured organization** providing safe deposit box or vault facilities, lock box, single key safe deposit box, self-service safe deposit box, lobby lock box or any other property storage lock box.

17. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

    a. Unauthorized access of **personal information**; or

    b. Violation of a person's right to privacy.

18. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from having guaranteed in writing or witnessed any signature upon any transfer, enrollment form, change in beneficiary, securities transfer, assignment, bill of sale, power of attorney, evidence of debt, endorsement or any other such items.

19. Provided, however, this exclusion shall not apply to any activities as a notary public or services provided under a signature validation program.

20. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the failure to comply with any notice of any **customer** or any authorized representative of such **customer** to stop payment on any check or draft made or drawn by such **customer** or the wrongful dishonor of any check or draft made or drawn by the **customer** or any authorized representative of such **customer**.

## N. Financial Services Professional Liability

If Financial Services Professional Liability Insuring Agreement is granted as shown in Item 3. (A) of the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful financial services liability act**.

---

### Additional Definitions for Insuring Agreement N

**Borrower:**

    **Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

    **Customer** means any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Debt Cancellation Program:**

**Debt cancellation program** means any written agreement, formed at the time of the initial loan, lease or extension of credit, between the **insured organization** and a **customer**, wherein the **insured organization**, for a fee paid by the **customer**, agrees that upon the occurrence of certain events specified in the written agreement, the **insured organization** will cancel or defer principal, or forgive interest, on a loan, lease, or other extension of credit granted by the **insured organization** to such **customer**.

**Loan Protection Products:**

**Loan protection products** means insurance products sold to a borrower in connection with a loan, including but not limited to credit insurance, guaranteed asset protection (GAP) insurance or mechanical repair insurance.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a. Record keeping;

b. Billing;

c. Disbursements of principal and interest for a loan;

d. Credit reporting or statements of a **borrower's** creditworthiness; or

e. Receipt or payment of insurance premiums and taxes.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

**Professional Services:**

**Professional services** means only those services the **insured organization** performs or is required to perform for a **customer** of the **insured organization**:

a. In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b. Free of charge, in connection with a service for a fee, commission or other compensation described in paragraph a. above;

c. Related to any activities as a notary public; or

d. Related to services provided under a signature validation program.

Provided, however, that **professional services** shall not include:

a. Services performed by any entity that an **insured** acquires ownership or control as security for a loan, lease or extension of credit;

b. Medical or health care services;

c. The practice of law or the rendering of legal services;

d. Architectural, engineering or construction management services;

e. Services provided, to a **customer**, as an enrolled actuary as that term is used in or in connection with Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.). as amended;

f. The rental of a safe deposit box;

g. The designing, building or maintenance of any website or the content of any website;

h. Real estate appraisal services; or

i. **Trust services**.

**Trust Services:**

**Trust services** means those services provided by an **insured** on behalf of the **insured organization** in their capacity as:

a. Executor, administrator, or personal representatives of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

b. Custodian, depository or managing agent for securities or real property, manager of personal property, attorney-in-fact, escrow agent, transfer or dividend disbursing agent, registrar, fiscal paying agent, tax withholding agent, exchange agent, redemption or subscription agent, warrant or scrip agent, trustee under bond indenture or sinking fund agent;

c. Trustee or co-trustee, fiduciary or co-fiduciary under a pension, profit sharing, health and welfare or other similar employee benefit plan or trust; or

d. Trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Financial Services Liability Act:**

**Wrongful financial services liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by or on behalf of an **insured** in the rendering or failure to render **professional services**.

## Additional Exclusions for Insuring Agreement N

The **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the control of any entity or property that an **insured** acquired as security or collateral for any loan, lease or extension of credit.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown, or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly from, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed.

   Provided, however, this exclusion shall not apply to the extent that the **insured** would have been liable in the absence of the contract or agreement.

5. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly from any dispute involving fees or charges of the **insured organization**.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from fraudulent:

   a. Instruction through e-mail, telefacsimile or telephonic means; or

   b. ACH debit from a **customer's** account.

8. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged written or verbal representations, promises or guarantees regarding the past performance or future value of any investment product.

9. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

10. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any decrease or lack of increase in the value of any investments, including securities, commodities, currencies, options or futures.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

   a. The rendering or failure to render **loan servicing**;

   b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit;

   c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

   d. The violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

   e. The violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

   f. The violation of any federal or state unfair or deceptive practices act, statute, regulation or other law relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

   Provided, however, this exclusion shall not apply to any **professional services** related to **loan protection products** or a **debt cancellation program** or for activities as a notary public.

12. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual loss of money, securities, property or other items of value in the custody or control of any **insured**, its agent or while in transit.

13. For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

14. For the portion of **loss** related to:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

   d. Discrimination;

   e. Violation of a person's right of privacy;

   f. Physical harm, sickness, disease, disability or death;

   g. Damage to or destruction of any tangible property or data, including loss of use of the property or data; or

   h. Mental anguish, emotional distress, mental injury or humiliation of any person.

15. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Financial Services Professional Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions.

16. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the **insured organization** providing safe deposit box or vault facilities, lock box, single key safe deposit box, self-service safe deposit box, lobby lock box or any other property storage lock box.

17. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

   a. Unauthorized access of **personal information**; or

   b. Violation of a person's right of privacy.

18. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of

the **insured organization**, or any other ownership interest, when such **claim** is based upon, arises out of or pertains to any interest in said security.

Provided, however, this exclusion shall not apply where:

a.  The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **customer**; and

b.  Such **claim** is brought without the solicitation, assistance or participation of any other **insured**.

19.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from having guaranteed in writing or witnessed any signature upon any transfer, enrollment form, change in beneficiary, securities transfer, assignment, bill of sale, power of attorney, evidence of debt, endorsement or any other such items.

Provided, however, this exclusion shall not apply to any activities as a notary public or services provided under a signature validation program.

20.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the failure to comply with any notice of any **customer** or any authorized representative of such **customer** to stop payment on any check or draft made or drawn by such **customer** or the wrongful dishonor of any check or draft made or drawn by the **customer** or any authorized representative of such **customer**.

## Information Security Insuring Agreements

### O.  Website Publishing Liability

If Website Publishing Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay, as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **wrongful web site publishing liability act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### P.  Security Breach Liability

If Security Breach Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **security breach liability wrongful act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### Q.  Programming Errors and Omissions Liability

If Programming Errors and Omissions Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the insured is legally obligated to pay as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **programming errors and omissions liability wrongful act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### R.  Replacement or Restoration of Electronic Data

If Replacement or Restoration of Electronic Data Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** of **electronic data** or **computer programs** stored within the **computer system** resulting directly from an **e-commerce incident** sustained during the **policy period**.

### S.  Extortion Threats

If Extortion Threats Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **Insured**, **loss** resulting directly from an **extortion threat** communicated to you during the **policy period**.

However, the **insurance organization** will not pay for **extortion expenses** or **ransom payments** which are part of a series of related threats that began prior to the policy period.

**T. Business Income and Extra Expense**

If Business Income and Extra Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured, loss** due to an **interruption** resulting directly from an **e-commerce incident** sustained during the **policy period** or an **extortion threat** communicated to you during the **policy period**.

**U. Public Relations Expense**

If Public Relations Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** due to **negative publicity** resulting directly from an **e-commerce incident** or a **security breach** sustained during the **policy period**.

**V. Security Breach Expense**

If Security Breach Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** resulting directly from a **security breach** sustained during the **policy period**.

---

**Additional Definitions for Insuring Agreements O - V**

---

**Business Income:**

    **Business income** means the:

    a.  Net income (net profit or loss before income taxes) that would have been earned or incurred; and

    b.  Continuing normal operating expenses incurred, including payroll.

**Claim:**

    **Claim** means:

    a.  A written demand for monetary damages; or

    b.  A civil proceeding commenced by the service of a complaint or similar proceeding,

    against any **insured** for a **wrongful act**, including any appeal there from.

**Computer Program:**

    **Computer program** means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enables the computer or devices to receive, process, store or send **electronic data**.

**Computer System:**

    **Computer system** means the following, and is limited to **computer systems** which are owned by you or which are licensed or leased to you by a Service Provider shown in the Declarations:

    a.  Computers, including Personal Digital Assistants (PDA's) and other transportable or hand-held devices, electronic storage devices and related peripheral components;

    b.  Systems and applications software; and

    c.  Related communications networks,

    by which **electronic data** is collected, transmitted, processed, stored or retrieved.

**E-Commerce Activities:**

    **E-commerce activities** means those activities conducted by you in the normal conduct of your business via your website and your e-mail system.

**E-Commerce Incident:**

    **E-commerce incident** means a:

    a.  **Virus**;

    b.  Malicious code; or

    c.  Denial of service attack,

introduced into or enacted upon the **computer system** (including **electronic data**) or a network to which it is connected, that is designed to damage, destroy, delete, corrupt or prevent the use of or access to any part of the **computer system** or otherwise disrupt its normal operation.

Recurrence of the same **virus** after the **computer system** has been restored shall constitute a separate **e-commerce** incident.

**Electronic Data:**

**Electronic data** means digital information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on electronic storage devices including, but not limited to, hard or floppy disks, CD-ROMs, tapes, drives, cels, data processing devises or any other media which are used with electronically-controlled equipment. **Electronic data** is not tangible property.

**Electronic data** does not include your **electronic data** that is licensed, leased, rented or loaned to others.

**Extortion Expenses:**

**Extortion expenses** means:

a.  Fees and costs of:

1)  A security firm; or

2)  A person or entity hired with our consent to determine the validity and severity of an **extortion threat** made against you. Such consent will not be unreasonably withheld.

b.  Interest costs paid by you for any loan from a financial institution taken by you to pay a ransom demand;

c.  Reward money paid by you to an **informant** which leads to the arrest and conviction of parties responsible for **loss**; and

d.  Any other reasonable expenses incurred by you with our written consent, including:

a.  Fees and costs of independent negotiators; and

b.  Fees and costs of a company hired by you, upon the recommendation of the security firm, to protect your **electronic data** from further threats made by the same person(s).

**Extortion Threat:**

**Extortion threat** means a threat or series of related threats:

a.  To perpetrate an **e-commerce incident**;

b.  To disseminate, divulge or utilize:

1)  Your proprietary information; or

2)  Weaknesses in the source code,

within the **computer system** by gaining unauthorized access to such **computer system**.

c.  To destroy, corrupt or prevent normal access to the **computer system** by gaining unauthorized access to such **computer system**;

d.  To inflict **ransomware** on the **computer system** or a network to which it is connected; or

e.  To publish your client's **personal information**.

**Extra Expense:**

**Extra expense** means necessary expenses you incur:

a.  During an **interruption** that you would not have incurred if there had been no **interruption**; or

b.  To avoid or minimize the suspension of your **e-commerce activities**.

**Extra expense** does not include any costs or expenses associated with upgrading, maintaining, improving, repairing or remediating any **computer system**.

**Informant:**

**Informant** means a person, other than an **employee**, providing information not otherwise obtainable, solely in return for a reward offered by you.

**Interruption:**

**Interruption** means:

a. With respect to an **e-commerce incident**:

    1) An unanticipated cessation or slowdown of your **e-commerce activities**; or

    2) Your suspension of your **e-commerce activities** for the purpose of avoiding or mitigating the possibility of transmitting a **virus** or malicious code to another,

    and, with regard to Paragraphs **1.a.** and **1.b.**, is deemed to begin when your **e-commerce activities** are interrupted and ends at the earliest of:

      a) 90 days after the **interruption** begins;

      b) The time when your **e-commerce activities** are resumed; or

      c) The time when service is restored to you.

b. With respect to an **extortion threat**, your voluntary suspension of your **e-commerce activities**:

    1) Based upon clear evidence of a credible threat; or

    2) Based upon the recommendation of a security firm, if any,

    and, with regard to Paragraphs **2.a.** and **2.b.**, is deemed to begin when your **e-commerce activities** are interrupted and ends at the earliest of:

      a) 14 days after the **interruption** begins;

      b) The time when your **e-commerce activities** are resumed; or

      c) The time when service is restored to you.

**Loss:**

**Loss** means:

a. With respect to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

**Loss** does not include:

    1) Civil or criminal fines or penalties imposed by law;

    2) Punitive or exemplary damages;

    3) The multiplied portion of multiplied damages;

    4) Taxes;

    5) Royalties;

    6) Nonmonetary or injunctive relief;

    7) The amount of any disgorged profits; or

    8) Matters that are uninsurable pursuant to applicable law.

b. With respect to Insuring Agreement: Replacement or Restoration of Electronic Data:

The cost to replace or restore **electronic data** or **computer programs**, as well as the cost of data entry, reprogramming and computer consultation services.

**Loss** does not include the cost to duplicate research that led to the development of your **electronic data** or **computer programs**. To the extent that any **electronic data** cannot be replaced or restored, we will pay the cost to replace the media on which the **electronic data** was stored with blank media of substantially identical type.

c. With respect to Insuring Agreement: Extortion Threats:

**Extortion expenses** and **ransom payments**.

d. With respect to Insuring Agreement: Business Income and Extra Expense:

The actual loss of **business income** you sustain and/or **extra expense** you incur.

e. With respect to Insuring Agreement: Public Relations Expense:

**Public relations expenses**.

f.    With respect to Insuring Agreement: Security Breach Expense:

**Security breach expenses**.

**Negative Publicity:**

**Negative publicity** means information which has been made public that has caused, or is reasonable likely to cause, a decline or deterioration in the reputation of the **Insured Organization** or of one or more of its products or services.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business that is required by law to be protected from public disclosure.

**Public Relations Expenses:**

**Public relations expenses** means:

a.    Fees and costs of a public relations firm; and

b.    Any other reasonable expenses incurred by you with our written consent,

to protect or restore your reputation solely in response to **negative publicity**.

**Ransom Payment:**

**Ransom payment** means a payment made in the form of cash.

**Ransomware:**

**Ransomware** means any software that encrypts **electronic data** held within the **computer system** and demands a **ransom payment** in order to decrypt and restore such **electronic data**.

**Security Breach:**

**Security breach** means:

1.    The acquisition of **personal information** held within the **computer system** or otherwise by a person who is not authorized to have access to such information; or

2.    The acquisition of **personal information** held within the **computer system** or otherwise by a person authorized to have access to such information but which results in the unauthorized disclosure of such information.

**Security Breach Expenses:**

**Security breach expenses** means:

a.    Costs to notify all parties affected by a **security breach**;

b.    Overtime salaries paid to **employees** assigned to handle inquiries from parties affected by a **security breach**;

c.    Fees and costs of a company hired by you for the purpose of operating a call center to handle inquiries from parties affected by a **security breach**;

d.    Post event credit monitoring costs for victims of a **security breach** for up to one year from the date of the **security breach**; and

e.    Any other reasonable expenses incurred by you with our written consent.

**Security breach expenses** do not include any costs or expenses associated with upgrading, maintaining, improving, repairing or remediating any **computer system** as a result of a **security breach**.

**Suit:**

**Suit** means a civil proceeding in which damages to which this policy applies are claimed against the **insured**.  **Suit** includes:

a.    An arbitration proceeding in which such damages are claimed and to which the **insured** submits with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent.

**Suit** does not include a civil proceeding seeking recognition and/or enforcement of a foreign money judgment.

**Virus:**

**Virus** means any kind of malicious code designed to damage or destroy any part of the **computer system** (including **electronic data**) or disrupt its normal functioning.

**Wrongful Act:**

**Wrongful act** means:

a. With respect to Insuring Agreement: Website Publishing Liability:

Any actual or alleged error, misstatement or misleading statement posted or published by an **insured** on its website that results in:

1) An infringement of another's copyright, trademark, trade dress or service mark;

2) Any form of defamation against a person or institution; or

3) A violation of a person's right of privacy.

b. With respect to Insuring Agreement: Security Breach Liability:

Any actual or alleged neglect, breach of duty or omission by an **insured** that results in:

1) A **security breach**; or

2) A **computer system** transmitting, by e-mail or other means, a **virus** to a third party.

c. With respect to Insuring Agreement: Programming Errors and Omissions Liability:

Any actual or alleged programming error or omission that results in the disclosure of your client's **personal information** held within the **computer system**.

## Additional Exclusions for Insuring Agreements O - V

We will not be liable for **loss** or **defense costs**:

1. Based upon, attributable to or arising out of lightning, earthquake, hail, volcanic action or any other act of nature.

2. Based upon, attributable to or arising out of:

a. War, including undeclared or civil war or civil unrest;

b. Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

3. Based upon, attributable to or arising out of bodily injury or physical damage to or destruction of tangible property, including loss of use thereof.

Bodily injury includes bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. Based upon, attributable to or arising out of an unexplained or indeterminable failure, malfunction or slowdown of the **computer system**, including **electronic data** and the inability to access or properly manipulate the **electronic data**.

5. Based upon, attributable to or arising out of an **interruption** in normal computer function or network service or function due to insufficient capacity to process transactions or due to an overload of activity on the **computer system** or network.  However, this exclusion does not apply if such **interruption** is caused by an **e-commerce incident**.

6. Based upon, attributable to or arising out of a complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause.

7. Based upon, attributable to or arising out of the failure, reduction in or surge of power.

8. Based upon, attributable to or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and its amendments, or similar provisions of any federal, state or local statutory or common law.

9. Based upon, attributable to or arising out of the malfunction or failure of any satellite.

10. Based upon, attributable to or arising out of an injury caused by an **insured** or at an **insured's** direction with the knowledge that the act would violate the rights of another.

11. Based upon, attributable to or arising out of an oral or written publication of material, if done by an **insured** or at an **insured's** direction with knowledge of its falsity.

12. Based upon, attributable to or arising out of an **insured's** assumption of liability by contract or agreement, whether oral or written. However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of such contract or agreement.

13. Based upon, attributable to or arising out of any actual or alleged patent or trade secret violation, including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996 or the Uniform Trade Secrets Act and their amendments.

14. Based upon, attributable to or arising out of costs, fees or other expenses you incur in establishing either the existence or the amount of **loss** covered under this policy.

15. Based upon, attributable to or arising out of any action by a governmental authority, including the seizure or destruction of property by order of governmental authority. However, this exclusion shall not apply to actions brought by governmental authority acting solely in its capacity as a customer of the **insured organization** or one of its **subsidiaries**.

16. Based upon, attributable to or arising out of any action by a governmental or quasi-governmental authority or agency, including, but not limited to, regulatory actions brought against you on behalf of the Federal Trade Commission, Federal Communications Commission or other regulatory agency. However, this exclusion shall not apply to action brought by governmental authority acting solely in its capacity as a customer of the **insured organization** or one of its **subsidiaries**.

17. Based upon, attributable to or arising out of costs associated with upgrading or improving the **computer system** regardless of the reason for the upgrade.

18. Based upon, attributable to or arising out of **claims** brought or alleged by one **insured** against another.

19. Based upon, attributable to or arising out of unintentional errors or omissions in the entry of **electronic data** into the **computer system**.

## Additional Conditions for Insuring Agreements O – V

**Deductibles and Limits of Liability**

1. Under Insuring Agreement: Replacement or Restoration of Electronic Data, Extortion Threats, Public Relations Expense and Security Breach Expense:

   Definition of **loss** does not include defense costs.

2. Under Insuring Agreement: Business Income and Extra Expense

   The **Insurance Organization** will pay only the amount of **loss** which exceeds the greater of:

   a. The Deductible Amount shown in the Declarations; or

   b. The amount of **loss** incurred during the Waiting Period shown in the Declarations.

3. In the event a **loss** is covered under more than one Insuring Agreement only the highest Deductible Amount applicable to the **loss** shall be applied.

**Defense and Settlements**

The provisions contained within this section apply only to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability.

### Estates and Legal Representatives

In the event an **insured person** is deceased, incompetent, insolvent or bankrupt, **insured person** shall also include estates, heirs, legal representatives or assigns of an **insured person**.

### Extended Reporting Period

If the **insured organization** or the **insurance organization** terminates, cancels or does not renew this Policy for any reason, other than for nonpayment of premium, the **insured organization** shall have the right, upon payment of the additional premium shown in Item 5. on the Declarations, to extend coverage granted by this Policy for an amount of time shown in Item 5. on the Declarations following the effective date of termination, cancellation or nonrenewal. However, the extended coverage provided shall only apply to **wrongful acts** occurring prior to the effective date of termination, cancellation or nonrenewal. The right to purchase the Extended Reporting Period shall cease unless written notice to elect this extension of coverage along with the additional premium due is received by the **insurance organization** within 30 days following the effective date of termination, cancellation or nonrenewal. Any **claim** first made during the Extended Reporting Period shall be deemed to have been made during the **policy period** immediately preceding the effective date of termination, cancellation or nonrenewal.

If the Extended Reporting Period is elected, all premium shall be deemed fully earned at the effective date of termination, cancellation or nonrenewal.

### Spouse and Domestic Partner Liability

The **insurance organization** shall pay for **loss** that a present or former spouse or **domestic partner** of an **insured person** is legally obligated to pay as a result of any **claim** first made during the **policy period** against such spouse or **domestic partner** that is:

a. Based upon an alleged **wrongful act** by the **insured person** for which coverage is provided to the **insured person** under this Policy; and

b. Based solely upon their status as a spouse or **domestic partner**.

The Spouse and Domestic Partner Liability Coverage Extension does not apply to the extent that the **claim** alleges any **wrongful act** committed or attempted by the **insured person's** spouse or **domestic partner**.

## Exclusions

With respect to any insuring agreement provided in this Policy, the **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any deliberate dishonest, fraudulent, intentional or willful misconduct or act, or any willful or intentional violation of any law, statute or regulation, by an **insured**, if a final judgment, order, decree or other determination establishes that such misconduct, act or violation was committed by the **insured**.

2. For **loss** related to any **claim** brought or maintained by or on behalf of any **insured** in any capacity, except a **claim**:

a. That is a derivative action brought or maintained on behalf of the **insured organization** by one or more persons who are not **insured persons** and who bring and maintain such **claim** without the instigation, solicitation, assistance or active participation of any **insured person**;

b. Brought or maintained by any natural person who was a **director or officer**, but who has not served as a **director or officer** for at least 4 years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the instigation, solicitation, assistance or active participation of any **director or officer** who is serving as a **director or officer** or was serving as a **director or officer** within such 4-year period;

c. Brought or maintained by or on behalf of any **insured person** for any **wrongful employment practices liability act** or **wrongful FLSA act**;

d. Brought or maintained by any **insured person** for contribution or indemnity for a **wrongful act**;

e. Brought or maintained by or on behalf of any **insured person** for a **wrongful fiduciary liability act**;

f. Brought or maintained by or on behalf of any **insured person** solely in his or her capacity as a customer or borrower of the **insured organization** for a **wrongful professional liability act**, provided that such **claim** is totally without the instigation, solicitation, assistance, involvement or participation of any other **insured person**;

g. Brought by a bankruptcy trustee or examiner of the **insured organization**, or any assignee of such bankruptcy trustee, examiner, receiver, conservator, rehabilitator, or liquidator or comparable authority of the **insured organization**; or

h. Brought by an **employee** pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any act, error, omission, neglect or breach of duty by an **insured person** while serving as an employee, director or volunteer of, or in any other capacity for, any entity other than the **insured organization** regardless of whether such service was undertaken, or such act, error, omission, neglect or breach of duty was committed, at the request or direction of the **insured organization** or any other person or entity.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual, threatened or alleged:

   a. **Pollution or contamination** of any **environment** by **pollutants** or seepage of **pollutants** that are introduced at anytime, anywhere, in any way;

   b. Discharge, dispersal, release or escape of **pollutants**;

   c. Costs or other **loss** or damage arising out of **pollution or contamination** or seepage, including but not limited to cleaning up, remedying, testing, monitoring, containing, treating, detoxifying and neutralizing such **pollution or contamination**, seepage or **pollutants**, whether occasioned by governmental direction, request, demand or order, or otherwise;

   d. Nuclear reaction, radiation or radioactive contamination; or

   e. Costs or other **loss** or damages arising from the investigation or defense of any lawsuit, administrative or criminal proceedings, or other action or proceedings related to any of the above.

   Provided, however, this exclusion shall not apply to:

   a. Individual Insuring Agreement in the Management Liability Insuring Agreement for a **wrongful management liability act**; or

   b. Employment Practices Insuring Agreement for a **wrongful employment practices liability act** based upon retaliation against the claimant for an actual or alleged refusal to violate any federal, state or local statutory law or common law,

   related to paragraphs a., b., c. or d. above.

5. For the portion of **loss** related to amounts for which an **insured** is entitled to any coverage under any insurance policy for which this Policy is a direct or indirect renewal or replacement.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the assertion of subrogation or recovery rights by or on behalf of any fidelity bonding company or fidelity insurer.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any **insured** gaining in fact any profit, unjust enrichment, remuneration or advantage that such **insured** was not legally entitled.

## Conditions

1. **Allocation**

   If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

   If there is an agreement on an allocation of **defense costs**, the **insurance organization** shall pay on behalf of the **insureds**, the covered portion of **defense costs** that the **insureds** have incurred in connection with such **claim** and that are allocated to covered **loss**.

   If there is no agreement on an allocation of such **defense costs**, the **insurance organization** shall advance **defense costs** that the **insurance organization** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined.  Any advancement of **defense costs** shall be subject to, and

conditioned upon, receipt by the **insurance organization** of a written agreement by the **insureds** that such advanced amounts shall be repaid to the **insurance organization** by the **insureds**, severally for **insured persons** according to their respective interests, and jointly for the **insured organization**, including uncollectible amounts from **insured persons**, if and to the extent that such **defense costs** are not covered under this Policy.

Any negotiated, arbitrated or judicially determined allocation of **defense costs** incurred in connection with a **claim** shall be applied retroactively to all **defense costs** incurred in connection with such **claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **defense costs** incurred in connection with a **claim** shall not apply to or create any presumption with respect to the allocation of other **loss** as a result of such **claim** or any other **claim**.

If **loss** arising from a single **claim** is incurred and covered under more than one insuring agreement made part of this Policy, such **loss** shall be allocated to each applicable insuring agreement based upon the relative legal and financial exposures of the parties to covered and uncovered matters. To the extent such allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable insuring agreement in the following order:

a. Employment Practices Liability Insuring Agreement;

b. Any Professional Liability Insuring Agreement;

c. Entity Insuring Agreement in the Management Liability Insuring Agreement;

d. Reimbursement Insuring Agreement in the Management Liability Insuring Agreement;

e. Individual Insuring Agreement in the Management Liability Insuring Agreement;

f. Fiduciary Liability Insuring Agreement; then

g. Any other insuring agreements under this Policy.

## 2. Changes in Exposure

a. Acquisition or Creation of Another Organization

If before or during the **policy period** the **insured organization** acquires an interest in another organization:

1) Or creates another organization, that as a result of such acquisition or creation becomes a **subsidiary**; or

2) By merger or consolidation, such that the **insured organization** is the surviving entity,

then such other organization, including their equivalent **insured persons** and **insured plans**, shall become an **insured** under this Policy, but only with respect to **wrongful acts** occurring subsequent to such acquisition, creation, merger or consolidation.

If the total assets of any such acquired, created, merged or consolidated **subsidiary** or its total benefit plans exceed 35% of the total assets of the **insured organization** or its **insured plans**, respectively (as reflected in each of the most recent annual consolidated financial statements or similar written confirmation of total assets), the **insured organization** shall give written notice of such acquisition, creation, merger or consolidation to the **insurance organization**, and any additional information requested by the **insurance organization**, as soon as practicable, but in no event later than 60 days after the date of such acquisition, creation, merger or consolidation. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request for such additional premium. If the **insured organization** fails to provide written notice to the **insurance organization** of such acquisition, creation, merger or consolidation of or into such organization, or any additional information requested by the **insurance organization**, or fails to pay the required additional premium, then coverage for such organizations shall cease as of the date of such acquisition, creation, merger or consolidation.

b. Acquisition of Insured Organization by Another Organization

If during the **policy period**:

1) The **insured organization** merges into, consolidates with, or is acquired by another organization so that the **insured organization** is not the surviving entity; or

2) Another organization, group of organizations, person or persons acting collectively acquires, directly or indirectly, in any combination:

a) More than 50% of the outstanding voting securities representing the present right to vote for election of directors of the **insured organization**;

b) And only if the **insured organization** is a non-profit entity, the right to elect or otherwise appoint more than 50% of the **insured organization's** directors or trustees; or

c) Any only if the **insured organization** is a limited liability company, the right to elect or otherwise appoint or designate more than 50% of the **insured organization's** managers; or

3) The **insured organization** ceases to actively engage in its primary business,

then coverage shall continue until the end of the **policy period**, but only with respect to **claims** for **wrongful acts** occurring before any transaction or event described in paragraphs a., b. or c. above. The premium shall be deemed fully earned at inception upon completion of any transaction or event described in paragraphs a., b. or c. above.

c. Cessation of a Subsidiary

If before or during the **policy period** an organization ceases to be a **subsidiary**, then coverage with respect to such **subsidiary**, including their equivalent **insured persons** and **insured plans**, shall continue until the end of the **policy period**, but only in connection with **claims** for **wrongful acts** occurring while such organization was a **subsidiary**.

d. Change in Insured Organization

If the **insured organization** is a non-profit entity and, if during the **policy period** the **insured organization** experiences a change in taxation status, by losing its federal income tax exempt status under 26 U.S.C.A §501(c) of the Internal Revenue Code of 1986 (IRC), for any reason, the **insured organization** shall give written notice of such change in taxation status to the **insurance organization** as soon as practicable, but in no event later than 30 days after the date of such change in taxation status. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request for such additional premium. If the **insured organization** fails to provide written notice to the **insurance organization** of such change in taxation status, or fails to pay the required additional premium, then coverage shall continue for the **insureds** until the end of the **policy period**, but only with respect to **wrongful acts** occurring prior to such change in taxation status.

If the **insured organization** is a financial institution and is chartered with any state, local or federal body, and if during the **policy period** the **insured organization** converts or loses its charter for any reason, the **insured organization** shall give written notice of such change in charter to the **insurance organization** as soon as practicable, but in no event later than 30 days after the date of such change in charter. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request. If the **insured organization** fails to provide written notice to the **insurance organization** of such change in charter, or fails to pay the required additional premium, then coverage shall continue for the **insureds** until the end of the **policy period**, but only with respect to **wrongful acts** occurring prior to such change in charter.

Except where further bankruptcy relief may require, the bankruptcy or insolvency of any of the **insureds** shall not relieve the **insurance organization** of any obligation under this Policy.

## 3. Claims Reporting

For the purposes of this Policy, all **claims**, including any **claims** made during an Extended Reporting Period, arising out of the same **wrongful act** and all **interrelated wrongful acts** of the **insureds** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them, regardless of whether such date is before or during the **policy period**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of **claim**:

a. The name of the claimant;

b. The names of the **insureds** whose **wrongful acts** are involved in the **claim**;

c. The date of the alleged **wrongful acts**; and

d. A copy of any written demand, summons, complaint, lawsuit or legal notice comprising or giving notice of the **claim**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide to the **insurance organization** such other information and cooperation as the **insurance organization** may reasonably request.

If during the **policy period** or, if elected, the Extended Reporting Period, the **insureds** become aware of circumstances that could give rise to a **claim** for a **wrongful act** taking place before or during the **policy period** and give written notice of such circumstances and other information as reasonably requested by the **insurance organization**, then any **claims** subsequently arising from such circumstances shall be considered to have been made during the **policy period** or, if elected, the Extended Reporting Period in which such notice of such circumstances and such other information was first provided to the **insurance organization**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of circumstance:

a.  A description, including the date, of the alleged **wrongful act**;

b.  The nature of the potential **loss**; and

c.  The names of the potential claimants and **insureds** involved.


All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.  Notice to the **insurance organization** of any **claim** or circumstance shall be submitted to:

ProSight Specialty Insurance Company
Attention: Claims Department
412 Mt. Kemble Avenue
Morristown, NJ  07960
-Or-
By email:  claims@prosightspecialty.com

**4.  Conformity with Laws**

If any term of this Policy, as written or applied, is found to be invalid under the law of any jurisdiction, then:

a.  If permitted under such law, that term will be considered amended only to the extent necessary to conform with such law;

b.  Such invalidity will not affect the validity of that term in any other jurisdiction; and

c.  Such invalidity will not affect the validity of any other term of this Policy in that or any other jurisdiction.


**5.  Deductibles and Limits of Liability**

a.  Deductibles

The **insurance organization's** liability with respect to **loss** arising from each **claim** shall apply only to that part of **loss** that is excess of the applicable deductible shown in Item 3. (B) on the Declarations.

If **loss** arising from a single **claim** is subject to more than one deductible, the applicable deductible shall be applied separately to each part of such **loss**, but the largest applicable deductible shall be the maximum deductible applicable to all **loss** arising from such single **claim**.  If a single deductible applies to multiple **insureds**, the deductible shall be pro-rated among such **insureds**.

b.  Limits of Liability

For all insuring agreements included in this Policy as shown in Item 3. (A) on the Declarations that are made part of the Policy Annual Aggregate Limit of Liability shown in Item 3. (C) on the Declarations, the Policy Annual Aggregate Limit of Liability shown in Item 4. on the Declarations is the maximum amount the **insurance organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period.

For each coverage included in this Policy as shown in Item 3. (A) on the Declarations, the coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations is the maximum amount the **insurance organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, under each applicable coverage.

For all selected Management Liability Coverage, the maximum amount the **insurance organization** shall be liable to pay is the amount provided in the Management Liability Coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, under all Management Liability Coverage.

For each selected Additional Insured included in this Policy, as shown in Item 6. (A) on the Declarations, that is subject to an Annual Aggregate Sub-Limit of Liability shown in Item 6. (B) on the Declarations, the Annual Aggregate Sub-Limit of Liability shown in Item 6. (C) on the Declarations is the maximum amount the **insurance**

**organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, for **claims** made against the applicable Additional Insured.  Any Annual Aggregate Sub-Limit of Liability for any Additional Insureds is part of and not in addition to the respective Coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations.

**Defense costs** shall be part of, and not in addition to, any limit of liability shown on the Declarations, and **defense costs** shall reduce and may exhaust such limit of liability.

If **loss** arising from a single **claim** is covered under more than one coverage or enhanced coverage made part of this Policy, the applicable limit of liability shall apply separately to each part of such **loss**.

The **insurance organization's** obligations for all **claims** first made during the **policy period** against the **insureds**, under each coverage or enhanced coverage made part of this Policy, shall cease once the applicable limit of liability has been exhausted by payment of **loss**.

Any limit of liability for the Extended Reporting Period, if elected, shall be part of, and not in addition to, the applicable limit of liability for the **policy period** immediately preceding the elected Extended Reporting Period. The purchase of the Extended Reporting Period shall not increase or reinstate any applicable limit of liability for the **policy period** immediately preceding the Extended Reporting Period.

All limits of liability made part of this Policy apply separately to each consecutive annual period during the **policy period** and to any remaining period of less than 12 months, starting with the beginning of the **policy period**, unless the **policy period** is extended after the first day of the **policy period** for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the applicable limits.

**6.  Defense and Settlements**

a.  The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this Policy without the **insurance organization's** written consent, which shall not be unreasonably withheld.  The **insurance organization** shall not be liable for any **loss** based upon settlement, **defense costs**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to that it has not consented.

b.  The **insurance organization** shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conduct its investigation or to reach a settlement of the **claim**. The **insureds** agree that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery.

c.  The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable.  If the **insured organization** withholds consent to such settlement, the **insurance organization** liability for all **loss** arising from such **claim** shall not exceed the total of:

1)  The amount for which the **insurance organization** could have settled such **claim**; plus

2)  **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

3)  70% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

4)  70% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

5)  Any applicable deductible.

d.  Any amounts paid by the **insurance organization** under paragraphs a., b. or c. above shall be part of and not in addition to the applicable limits of liability shown on the Declarations. The **insurance organization** and the **insureds** shall not unreasonably withhold any consent referenced in this Defense and Settlements Condition.

e.  The **insurance organization** shall have the right to appeal any judgment with respect to any **claim** covered, in whole or in part, by this Policy, and the expense of appealing such judgment shall be part of **defense costs**.

f.  The **insurance organization** shall have the right and duty to select defense counsel and defend any **claim** covered under this Policy.  The **insurance organization's** duty to defend **claims** shall apply even if any of the allegations are groundless, false or fraudulent, but shall only obligate the **insurance organization** to pay **defense costs**.

**7. Insured Organization Rights and Obligations**

The **insured organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **insured** with respect to:

a. The payment of premiums and the receiving of any return premiums that become due under this Policy;

b. The negotiation, agreement to and acceptance of endorsements made part of this Policy;

c. The giving or receiving of any notice provided for in this Policy;

d. The adjustment of **loss** amounts; and

e. The receipt or enforcement of payment of **loss** (and the **insured organization** further agrees that it shall be responsible for application of any such payment as provided in the Policy).

Each **insured** agrees that the **insured organization** shall act on its behalf with respect to such matters.

**8. Legal Action Against Insurance Organization**

a. Legal action against the **insurance organization** under this Policy may not be brought by any person or entity unless:

    1) There has been full compliance with all the terms of this Policy; and

    2) The **insureds'** obligation to pay has finally been determined:

        a) By final judgment; or

        b) In a written agreement executed by the **insureds**, the claimant and the **insurance organization**.

b. A person or entity does not have the right under this Policy to join the **insurance organization** as a party to any action or proceeding that a **claim** against the **insureds** is being asserted.

**9. Modification of Policy Terms**

This Policy contains all of the agreements between the **insurance organization** and the **insureds** concerning the coverage provided.  The Policy terms can be modified only by written endorsement issued by the **insurance organization** and made a part of this Policy.

**10. Non-Assignment**

Neither this Policy nor any rights under this Policy can be assigned without the written consent of the **insurance organization**.

**11. Other Insurance**

The coverage provided under this Policy is excess over any other valid and collectible insurance or bond coverage that applies or would have applied in the absence of this Policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the coverage provided in this Policy.

Any payment by an **insured** of a deductible (or retention) under such other insurance shall reduce, if such loss would otherwise be covered **loss** under this Policy, by the amount of such payment, the applicable deductible under the coverage.

**12. Presumptive Indemnification**

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insured organization** agrees to indemnify all **insured persons** for all **loss** to the fullest extent permitted by law.  The **insured organization** shall also take all steps necessary or allowable to provide such indemnification.

**13. Priority of Payments**

a. If payment is due and owed under this Policy for **loss**, and such **loss** together with any prior payments of **loss**, exceeds the applicable limit of liability, the **insurance organization** shall be liable to pay such **loss** subject to the remaining applicable limit of liability in the following priority:

    1) First, the **insurance organization** shall pay on behalf of any **insured person** for **loss** as a result of a **claim**; and

    2) Second, only if and to the extent the payment under paragraph a. above does not exhaust the applicable limit of liability, the **insurance organization** shall pay any other **loss** covered by this Policy.

b.  The parties agree that any other **insured**, including any bankruptcy trustee, debtor-in-possession or any other successor of the **insured organization**, shall have no interest in or claim for any payments under this Policy until all **claims** against all **insured persons** have been fully and finally resolved and all payments for such **loss** covered under the Policy have been made.

## 14. Rights to Recover from Others

If the **insureds** have rights to recover all or part of any **loss** for which the **insurance organization** has made payment under this Policy, those rights are transferred to the **insurance organization**. The **insureds** must do everything necessary to secure and protect those rights. The **insureds** must not do anything to impair those rights. At the **insurance organization's** request, the **insureds** shall bring suit or transfer those rights to **insurance organization** and cooperate with the **insurance organization** in the enforcement of those rights.

## 15. Severability of Application

In providing coverage under this Policy, the **insurance organization** has relied upon the statements and representations included in the **application**, and all such statements and representations are material to the acceptance of risk. The **insureds** represent that all such statements and representations are true. This Policy is issued in reliance upon the **application**.

If any such statements and representations are untrue, this Policy shall not afford any coverage with respect to any of the following **insureds**:

a.  Any **insured person** who knew the facts that were not truthfully disclosed in the **application**;

b.  Under the Reimbursement Coverage in the Management Liability Coverage, the **insured organization** to the extent that it indemnifies an **insured person** referenced in paragraph a. above;

c.  The **insured organization**, if the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Council, Risk Manager, Human Resource Manager, or any equivalent position knew the facts that were not truthfully disclosed in the **application**; or

d.  The **insured plan**, under the Fiduciary Liability Coverage, if the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Counsel, Risk Manager, Human Resource Manager, or any equivalent position knew the facts that were not truthfully disclosed in the **application**,

whether such **insured person** knew of any untruthful statements or misrepresentations in the **application**.

## 16. Severability of Exclusions

No fact pertaining to or knowledge possessed by any **insured person** shall be imputed to any other **insured person** for purposes of applying all exclusions made part of this Policy. Only facts pertaining to or knowledge possessed by the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Counsel, Risk Manager, Human Resource Manager, or any equivalent position, shall be imputed to the **insured organization** or **insured plan** for purposes of applying any exclusion made part of this Policy.

## 17. Territory

Coverage under this Policy applies in all parts of the world.

## 18. Valuation and Foreign Currency

All premiums, limits, deductibles, **loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or any element of **loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or any part of the **loss** is due.

## 19. Nonrenewal

If the **insurance organization** does not renew this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of nonrenewal stating the effective date and the reason for nonrenewal. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**. If this notice is mailed, proof of mailing shall be sufficient proof of notice. Nonrenewal is effective 60 days after the **insurance organization** mails or delivers notice of nonrenewal.

## 20. Termination and Cancellation

a.  This Policy terminates in its entirety upon the expiration of the **policy period**.

b.  The **insured organization** may cancel this Policy during the **policy period** by mailing or delivering written notice of cancellation to the **insurance organization**.  The unearned premium shall be refunded less than pro rata if this Policy is canceled as provided in this paragraph.

c.  The **insurance organization** may cancel this Policy during the **policy period** for nonpayment of premium.  If the **insurance organization** cancels this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of cancellation stating the effective date and the reason for cancellation.  The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**.  If the notice is mailed, proof of mailing shall be sufficient proof of notice.  Cancellation is effective 10 days after the **insurance organization** mails or delivers notice of cancellation.

## Definitions

**Application:**

**Application** means all materials submitted for this Policy or for any policy that this is a renewal or replacement.  **Application** also includes any financial statements, annual reports, proxies, bylaws or any description of corporate governance and business practices that are made available by the **insured organization** or publicly available through any regulatory body or the **insured organization's** website, prior to the start of the **policy period**.  All such materials are deemed attached to and incorporated into this Policy.

**Claim:**

**Claim** means any of the following, for any **wrongful act**, including any appeal therefrom:

a.  A written demand to any **insured** for monetary damages or legal or equitable non-monetary relief;

b.  A civil proceeding brought against any **insured** commenced by the service of a complaint or similar pleading;

c.  A criminal proceeding against any **insured person** commenced by the return of an indictment or information;

d.  A formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, including proceedings before the Equal Employment Opportunity Commission or similar state or federal agency against any **insured**;

e.  A written request to participate in an arbitration, mediation or other alternative dispute resolution proceeding if an **insured** is obligated to participate in such proceeding or if an **insured** agrees to participate in such proceeding, with the **insurance organization's** written consent;

f.  A written request to any **insured** to toll or waive a statute of limitations.

g.  Solely with respect to a **wrongful fiduciary liability act**, any fact-finding investigation of any **insured** by the United States Department of Labor or the United States Pension Benefit Guaranty Corporation; or

h.  Solely with respect to a **wrongful employment practices liability act**, a written demand for reinstatement, re-employment or re-engagement.

**Defense Costs:**

**Defense costs** means reasonable attorneys' fees, experts' fees, arbitrators' fees or mediators' fees and expenses, to which the **insurance organization** has consented and that are incurred after notice is provided in compliance with the Claims Reporting Condition and, as a direct result of defending a **claim**, including any appeals and the premium for any attachment, appeal or other similar bonds.

Provided, however, **defense costs** does not include:

a.  Wage, salary, benefit or overhead expenses of an **insured**;

b.  Any attorneys' fees, disbursements, costs or expenses incurred in connection with an affirmative claim by or on behalf of an **insured** including counterclaims, cross-claims or third-party claims, except for claims for contribution or indemnity asserted with the **insurance organization's** consent against persons or parties not insured under this Policy; or

c.  Amounts that are incurred in connection with providing any collateral that may be required for obtaining any appeal bond, or other similar bond or any obligation to provide such collateral.

**Director Or Officer:**

**Director or officer** means:

a. Any natural person who was, is now or becomes in the future a duly elected or appointed officer, director, member of the board of managers, or management committee of the **insured organization**;

b. With respect to a **subsidiary** incorporated or chartered outside the United States of America, any natural person who was, is now or becomes in the future in a position that is the functional equivalent of any duly elected or appointed officer or director of that **subsidiary**;

c. With respect to any **insured organization** that is a non-profit entity, any natural person who was, is now or becomes in the future a duly elected or appointed officer, director, member of the audit committee, member of the supervisory committee or trustee;

d. Only with respect to Fiduciary Liability Coverage made part of this Policy, any natural person who was, is now or becomes in the future a duly elected or appointed trustee, officer or director of any **insured plan**.

**Domestic Partner:**

**Domestic partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal written program established by the **insured organization**.

**Employee:**

**Employee** means any natural person, other than a **director or officer**, **leased employee**, **volunteer** or **independent contractor**, whether their employment status is full-time, part-time, temporary or seasonal, who:

a. Has provided, is providing, or seeks to provide in the future labor or service within the scope of the performance of their assigned duties at the direction of the **insured organization** in the conduct of its business; and

b. Has been, is being, or seeks to be paid a regular wage or salary by the **insured organization** or by an employment service or sponsor who provides such persons to the **insured organization**.

**Environment:**

**Environment** means any:

a. Person;

b. Man-made object or feature;

c. Animals, crops or vegetation; or

d. Land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated and whether or not owned, controlled or occupied by an **insured**.

**Independent Contractor:**

**Independent contractor** means any natural person, other than an **employee**, **director or officer**, **leased employee** or **volunteer** who renders service to the **insured organization** in the course of independent employment pursuant to a contract for specified services; provided that any:

a. Coverage afforded under this Policy for such natural person only applies to the extent that the **insured organization** agrees to indemnify such natural person; and

b. Such coverage shall be specifically excess of any other indemnity and insurance otherwise available to such natural person or any entity that such natural person is affiliated.

**Insurance Organization:**

**Insurance organization** means insurance company named on the declarations.

**Insured:**

**Insured** means:

a. The **insured organization**;

b. **Insured persons**;

c. Only with respect to Fiduciary Liability Coverage provided in this Policy, **insured plan**; or

d.  Other **insured** if listed as an **insured** in an endorsement to this Policy.

**Insured Organization**

**Insured organization** means any entity shown in Item 1. on the Declarations and its **subsidiaries**.

**Insured Persons:**

**Insured persons** means:

a.  A **director or officer**;

b.  **Volunteer**; and

c.  Only to the extent coverage is granted for the Additional Insureds as shown in Item 6. (A) on the Declarations, **employees**, **leased employees** and **independent contractors**.

**Insured Plan**

**Insured plan** means any:

a.  Employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended that is operated solely by the **insured organization**, or jointly by the **insured organization** and a labor organization, starting before the **policy period**, for the benefit of the **employees**, **directors or officers**, **leased employees** or **volunteers** of the **insured organization**;

b.  Other employee benefit plan, or group insurance program, including a Health Savings Account (HAS) program, not subject to Title I of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended, sponsored solely by the **insured organization** for the benefit of the **employees**, **directors or officers**, **leased employees** or **volunteers** of the **insured organization**, or in the case of a HSA, those offered by the **insured organization**, if such plan existed prior to the **policy period**;

c.  Other employee benefit plan if listed as an **insured plan** in an endorsement to this Policy; or

d.  Government-mandated benefit program for workers' compensation, unemployment, social security or disability benefits for **employees**, **directors or officers**, **leased employees** or **volunteers**.

Unless otherwise listed as an **insured plan** in an endorsement to this Policy, **insured plan** does not include a multi-employer plan, as defined by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended or an employee stock ownership plan.

**Interrelated Wrongful Acts**

**Interrelated wrongful acts** means all **wrongful acts** that have a common fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

**Leased Employee**

**Leased employee** means any natural person, other than an **employee**, **director or officer**, **volunteer** or **independent contractor**, who is leased to the **insured organization** to perform work and for whom the **insured organization** directs or guides the work performed; provided that any:

a.  Coverage afforded under this Policy for such **leased employee** only applies to the extent that the **insured organization** agrees to indemnify such **leased employee**; and

b.  Such coverage shall be specifically excess of any other indemnity and insurance otherwise available to the **leased employee** from or provided by the entity that such **leased employee** is leased.

**Loss**

**Loss** means **defense costs** and the following amounts that the **insureds** are legally obligated to pay as the result of a **claim**:

a.  Compensatory damages awarded in judgments;

b.  Amounts paid in settlements entered into with the consent of the **insurance organization**;

c.  Punitive or exemplary damages, to the extent insurable under applicable law;

d.  The multiple portion of a damage award;

e.  Pre-judgment interest;

f.  Post-judgment interest;

g.  Solely with respect to a **wrongful employment practices liability act**, liquidated damage awards pursuant to the Age Discrimination in Employment Act (ADEA) (29 U.S.C. §§621-634) or the Equal Pay Act of 1963 (209 U.S.C. §206(d)), including any amendments thereto;

h.  Solely with respect to a **wrongful employment practices liability act**, front pay or back pay; or

i.  Solely with respect to a **wrongful fiduciary liability act**, civil money penalties imposed on an **insured** for violation of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA) (42 USC) (Pub. L. 104-191).  Provided, however, the **insurance organization's** maximum limit of liability for the **policy period** shall be $100,000 and no deductible shall apply for any such civil money penalties.

**Loss** does not mean or include any of the following:

a.  Civil or criminal fines, penalties, sanctions, injunctive relief, orders of forfeiture, or restitution and disgorgement, except:

  1)  To the extent included in paragraphs c., d. or i. above; or

  2)  For the 5% penalty under Section 502(i) and the 20% penalty under section 502(l) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended; or

b.  Taxes;

c.  Amounts an **insured** is liable to pay that are uninsurable under applicable law;

d.  Property or the value of any property that the **insured organization** is required to deliver or return to one having superior rights to the property;

e.  Amounts an **insured** disburses or credits as a loan, lease or as any other extension of credit, whether voluntarily or as required by law, statute, regulation or court order;

f.  The amount of any funds that an **insured** returns or refunds to one from whom or that the **insured organization** collected the funds wrongfully or in error, or that a bankruptcy court finds to be a preferential transfer;

g.  Solely with respect to a **wrongful employment practices liability act**, future salary, wages, commissions, payments for any type of insurance or other benefits for a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement of, order in or other resolution of any **claim**;

h.  Solely with respect to a **wrongful employment practices liability act**, any amounts that constitute severance payments or payments pursuant to a notice period;

i.  Amounts representing a reduction, modification or forgiveness of amounts owed (including the timing of amounts owed) for a loan, lease or extension of credit, whether voluntarily or required by law, statute, regulatory body, regulation or court order; or

j.  Amounts allocated to uncovered **loss** specified in any Allocation Condition made part of this Policy.

Only for the purpose of determining applicable law regarding whether such liquidated, punitive, exemplary or multiplied damages are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a.  Those damages were awarded or imposed;

b.  Any **wrongful act** occurred for which such damages were awarded or imposed;

c.  The **insured** resides, is incorporated or has its principal place of business; or

d.  The **insurance organization** is incorporated or has its principal place of business.

**Outside Entity**

**Outside entity** means any:

a.  Non-profit entity described in 26 U.S.C.A. §501(c)(3) of the Internal Revenue Code of 1986 (IRC), as amended, and not included in the definition of **insured organization**; or

b.  Other entity, if specifically granted by endorsement to this Policy,

whereby an **insured person** is a board member or other equivalent of the entity at the direction or request of the **insured organization**.

**Policy Period**

**Policy period** means the period of time shown in Item 2. on the Declarations.

**Pollutants:**

**Pollutants** means:

a. Noise, solid, semisolid, liquid, odor, gaseous or thermal irritants or contaminants;

b. Smoke, vapor, soot, fume, acid, alkali, chemical, biological or other causative agents or materials;

c. Electromagnetic or ionizing radiation and energy, genetically engineered materials, asbestos, teratogenic, carcinogenic and mutagenic materials and waste.  Waste includes any material to be disposed of, recycled, reconditioned or reclaimed; or

d. Other irritants, contaminants, or controlled or prohibited substances.

**Pollution Or Contamination**

**Pollution or contamination** means any conditions that:

a. Are unclean, unsafe, damaging, injurious or unhealthful; and

b. Result directly or indirectly from the presence of **pollutants**, whether permanent or transient in any **environment**.

**Subsidiary:**

**Subsidiary** means any:

a. Entity in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors is owned, directly or indirectly, in any combination, by the **insured organization**;

b. Non-profit entity in which the right to elect or otherwise appoint more than 50% of such entity's directors or trustees is owned or controlled, directly or indirectly, in any combination, by the **insured organization**;

c. Limited liability company in which the right to elect or otherwise appoint or designate more than 50% of such limited liability company's managers is owned or controlled, directly or indirectly, in any combination, by the **insured organization**;

d. Joint venture in which the right to elect or otherwise appoint more than 50% of such entity's directors, trustees or other equivalent executives is owned or controlled, directly or indirectly, in any combination, by the **insured organization**; or

e. Other entity if listed as a **subsidiary** in an endorsement to this Policy.

**Voluntary Compliance Program**

**Voluntary compliance program** means the Voluntary Compliance Resolution Program (VCR) (Rev. Proc. 92-89) or the Walk-In Closing Agreement Program (Walk-in CAP), both described in the Employee Plans Compliance Resolution System, (EPCRS) (IRS Rev. Proc. 98-22), as amended, or the Tax Sheltered Annuity Voluntary Correction Program (TVC) (Rev. Proc. 95-24).

**Volunteer**

**Volunteer** means any natural person, other than an **employee**, **director or officer**, **leased employee** or **independent contractor**, who was or is:

a. Serving on the committees of the **insured organization** at the appointment of the Board of Directors of the **insured organization**; or

b. Performing services without compensation solely in the conduct of the **insured organization's** business.

**Wrongful Act:**

**Wrongful act** means:

a. **Wrongful management liability act**, but only to the extent Management Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

b. **Wrongful employment practices liability act** or **wrongful third party act**, but only to the extent Employment Practices Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

c. **Wrongful fiduciary liability act**, but only to the extent Fiduciary Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

d. **Wrongful professional liability act**, but only to the extent Professional Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

e.  **Wrongful outside director liability act**, but only to the extent Outside Director Liability Coverage is granted as shown in Item 3. (A) on the Declarations; or

f.  **Wrongful FLSA act**, but only to the extent Fair Labor Standards Act Coverage is granted as shown in Item 3. (A) on the Declarations.

**Wrongful Employment Practices Liability Act:**

**Wrongful employment practices liability act** means any actual or alleged:

a.  Violation of any state, federal or provincial law, anywhere in the world, prohibiting discrimination against employees;

b.  Wrongful dismissal, discharge or termination (including constructive discharge) of employment;

c.  Sexual or workplace harassment;

d.  Violation of employment laws;

e.  Negligent evaluation or training;

f.  Wrongful discipline;

g.  Retaliation, unfair discipline or excessive discipline;

h.  Failure to provide adequate workplace, employment policies or procedures;

i.  Failure to promote, train, grant variable pay or grant tenure;

j.  Breach of an employment contract, whether actual, implied, written or oral;

k.  Misrepresentation or misstatement;

l.  Negligent supervision or hiring of others;

m.  Failure to employ;

n.  Libel, slander, defamation of character, publication of material in violation of a person's right of privacy;

o.  Infliction of emotional distress, mental anguish or humiliation; or

p.  Negligent retention,

related to current, past, future or prospective employment of any natural person by the **insured organization**.

**Wrongful FLSA Act:**

**Wrongful FLSA act** means an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws.

**Wrongful Fiduciary Liability Act:**

**Wrongful fiduciary liability act** means any actual or alleged:

a.  Breach of the responsibilities, obligations or duties imposed upon any **insured** in its capacity as a fiduciary of any **insured plan** or by the common or statutory law of the United States of America or any other jurisdiction anywhere in the world;

b.  Matter claimed against the **insured organization** or any **insured person** solely because of their service as a fiduciary of any **insured plan**; or

c.  Negligent act, error or omission by an **insured** based on any of the following with respect to an **insured plan**:

    1)  Interpreting or applying;

    2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**; or

    3)  Handling of records in effecting enrollment, calculating, terminating or cancelling; or

d.  A negligent act, error or omission by an **insured** in:

    1)  Interpreting or applying; or

    2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**,

    concerning workers' compensation, unemployment insurance, Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.).

**Wrongful Management Liability Act:**

**Wrongful management liability act** means any actual or alleged:

a. Error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured** in their capacity as such; or

b. Matter claimed against an **insured person** solely by reason of his or her serving in such capacity.

Provided, however, **wrongful management liability act** does not include any conduct actually or allegedly committed or attempted by any **insured person** in their capacity as a director, officer, trustee, governor, member of the board of managers, or any equivalent position, or employee of any entity other than the **insured organization**, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **insured person** by the **insured organization**.

**Wrongful Outside Director Liability Act:**

**Wrongful outside director liability act** means:

a. Error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured** in their capacity as a board member of an **outside entity**; or

b. Matter claimed against an **insured person** solely by reason of his or her serving an **outside entity**.

**Wrongful Professional Liability Act:**

**Wrongful professional liability act** shall have the meaning set forth in any endorsement made part of this Policy.

**Wrongful Third Party Act:**

**Wrongful third party act** means the actual or alleged sexual harassment by an **insured** of an individual who is not an **insured**, and who is, was or seeks to be, a customer, borrower or vendor of the **insured organization**.

**MANAGEMENT AND SECURITY LIABILITY POLICY**
ML 00 04 0213

## MULTI-YEAR PREMIUM ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

This Endorsement is effective at 12:01 a.m. on 04-17-2020 to 04-17-2023.

### ADDITIONAL CONDITIONS

**Cancellation**

If the **insured organization** cancels this Policy during the term of this Endorsement, any refund due will be calculated without applying any applicable discount on the amount of earned and unearned premium paid under this Endorsement.

**Experience**

Coverage is subject to change in limit, deductible and premium at the beginning of the next annual **policy period**, if during any one annual **policy period** the **insurance organization** has determined, at the **insurance organization's** sole discretion, that losses incurred during such annual **policy period** have the potential to exceed 100% of the annual earned premium for that annual **policy period**.

**Payment of Premium**

The **insured organization** agrees to prepay premium for the annual **policy periods** from 04-17-2020 to 04-17-2023.In exchange for prepayment of premium, the **insurance organization** agrees to guarantee the **insured organization's** premium for the annual **policy periods** shown above.  The **insured organization's** premium is subject to change resulting from your Experience or Request for Change as described in this Endorsement.

New or revised forms or endorsements may be available at the end of each annual **policy period**.  At the **insurance organization's** option, the **insurance organization** will provide these new or revised forms or endorsements to replace those in effect during the previous annual **policy period**.

**Request for Change**

The **insured organization's** request and **insurance organization's** approval for a change in coverage, limits or deductibles of any one or more coverages effective after 04-17-2020 and before 04-17-2023 will result in a premium adjustment of those coverages as of the effective date of the change using rates then in effect.

# ALLOCATION ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

## CONDITIONS

### Allocation

The Allocation Condition is replaced with the following:

If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the following:

a.  100% of **defense costs** incurred by the **insured** as a result of such **claim** shall be considered covered **loss**, except for those related to an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws, for a **claim** seeking pay for overtime or unpaid minimum wages or;

b.  All **loss** not described in paragraph a. above incurred by the **insured** as a result of such **claim** shall be allocated by the **insurance organization** between covered **loss** and uncovered **loss** based on the relative legal and financial exposures of the parties to covered and uncovered matters.

If **loss** arising from a single **claim** is incurred and covered under more than one coverage made part of this Policy, such **loss** shall be allocated to each applicable coverage based upon the relative legal and financial exposures of the parties to covered and uncovered matters.  To the extent such an allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable coverage in the following order:

a.  Employment Practices Liability Insuring Agreement;

b.  Any Professional Liability Insuring Agreement;

c.  Entity Insuring Agreement;

d.  Reimbursement Insuring Agreement;

e.  Individual Insuring Agreement;

f.  Fiduciary Liability Insuring Agreement; then

g.  Any other coverages under this Policy.

# CREDIT UNION ADVANTAGE ENDORSEMENT-SELECT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

### INSURING AGREEMENTS

**Investigative Costs**

The Investigative Costs Insuring Agreement in the Management Liability Insuring Agreement is replaced with the following:

If Investigative Costs Insuring Agreement is granted as shown in Item 3 (A) on the Declarations, the **insurance organization** shall pay on behalf of the **insured organization** reasonable costs, charges, fees (including attorneys' fees, consultants' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of an **insured person**) incurred by the **insured organization**, including its board of directors, board of managers or any committee thereof and incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**, in connection with:

a. The **insured organization's** investigation, evaluation or response relating to a subpoena for the production of documents or records that is issued by the National Credit Union Administration or equivalent state regulator of credit unions first served during the **policy period** on the **insured organization** or a **director or officer** or, if exercised, the Extended Reporting Period; or

b. The **insured organization's** investigation or evaluation of any written demand first made during the **policy period** against the board of directors or board of managers of such **insured organization** or, if exercised, the Extended Reporting Period.

Provided, however, Investigative Costs Insuring Agreement in paragraph b. above shall only apply to a written demand:

a. Brought by any natural person made without the instigation, solicitation, assistance or active participation of any **insured person**; and

b. That is a civil proceeding in a court of law against any **insured person** for a covered **wrongful management liability act**.

### ADDITIONAL DEFINITIONS

The following Definitions are added to the Management Liability Insuring Agreement.

**Borrower**

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Loan Servicing**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a. Record keeping;

b. Billing;

c. Disbursements of principal and interest for a loan;

d. Credit reporting or statements of a **borrower's** creditworthiness; or

e. Receipt or payment of insurance premiums and taxes.

## DEFINITIONS

**Wrongful Professional Liability Act**

The Wrongful Professional Liability Act Definition is replaced with the following:

**Wrongful professional liability act** means:

a. **Wrongful lending liability act**, but only to the extent Lender Liability Insuring Agreement is provided in this Policy;

b. **Wrongful vicarious lending liability act**, but only to the extent Lender Liability Insuring Agreement is provided in this Policy; and

c. **Wrongful credit union services liability act**, but only to the extent Credit Union Professional Liability Insuring Agreement is provided in this Policy.

## ADDITIONAL EXCLUSIONS

If any Management Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall not be liable to make any payment:

**Lending or Leasing Activities**

For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

a. The rendering or failure to render **loan servicing**;

b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d. The violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e. The violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar statute, but only related to paragraphs a., b. or c. above;

f. The violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above; or

g. Federal or state laws or regulations relating to extension or denials of credit, including but not limited to: the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601); Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691); Consumer Leasing Act [Regulation M] (15 U.S.C. Sec. 1667); Fair Credit Billing Act (15 U.S.C. §1666); Fair Credit Reporting Act (15 U.S.C. Sec. 1681); Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601); Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433); Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693); Expedited Funds Availability Act [Regulation CC] (12 U.S.C. Sec. 4001); or the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), each as amended from time to time and each successor or replacement law or regulation, or usury laws or regulations, or unlawful discrimination in the extension or denying of credit, or any similar state, local or common law, or similar laws of a foreign jurisdiction.

Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

**Lien Holder**

For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the status or activities of the **insured organization** as a lien holder or secured party.

Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

## EXCLUSIONS

**Insured Versus Insured**

The Insured Versus Insured Exclusion is replaced with the following:

For **loss** related to any **claim** brought or maintained by or on behalf of any **insured** in any capacity, except a **claim**:

a. That is a derivative action brought or maintained on behalf of the **insured organization** by one or more persons who are not **insured persons** and who bring and maintain such **claim** without the instigation, solicitation, assistance or active participation of any **insured person**;

b. Brought or maintained by any natural person who was a **director or officer**, but who has not served as a **director or officer** for at least 4 years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the instigation, solicitation, assistance or active participation of any **director or officer** who is serving as a **director or officer** or was serving as a **director or officer** within such 4-year period;

c. Brought or maintained by or on behalf of any **insured person** for any **wrongful employment practices liability act** or **wrongful FLSA act**; Brought or maintained by any **insured person** for contribution or indemnity for a **wrongful act**;

d. Brought or maintained by or on behalf of any **insured person** for a **wrongful fiduciary liability act**;

e. Brought or maintained by or on behalf of any **insured person** solely in his or her capacity as a customer of the **insured organization** for a **wrongful professional liability act**, provided that such **claim** is totally without the instigation, solicitation, assistance, involvement or participation of any other **insured person**;

f. Brought by a bankruptcy trustee or examiner of the **insured organization**, or any assignee of such bankruptcy trustee, examiner, receiver, conservator, rehabilitator, or liquidator or comparable authority of the **insured organization**; or

g. Brought by an **employee** pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

Provided, however, this exclusion shall apply to only 50% of **loss** in connection with a **claim** after allocation is applied per the Allocation Condition.

## CONDITIONS

**Allocation**

The Allocation Condition is replaced with the following:

If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the following:

a. 100% of **defense costs** incurred by the **insured** as a result of such **claim** shall be considered covered **loss**, except for those related to an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C §201, et seq.), or any similar state or local laws, for a **claim** seeking pay for overtime or unpaid minimum wages; or

b. All **loss** not described in paragraph a. above incurred by the **insured** as a result of such **claim** shall be allocated by the **insurance organization** between covered **loss** and uncovered **loss** based on the relative legal and financial exposures of the parties to covered and uncovered matters.

If **loss** arising from a single **claim** is incurred and covered under more than one coverage made part of this Policy, such **loss** shall be allocated to each applicable coverage based upon the relative legal and financial exposures of the parties to covered and uncovered matters. To the extent such an allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable coverage in the following order:

    a.   Employment Practices Liability Insuring Agreement;

    b.   Any Professional Liability Insuring Agreement;

    c.   Entity Insuring Agreement;

    d.   Reimbursement Insuring Agreement;

    e.   Individual Insuring Agreement;

    f.   Fiduciary Liability Insuring Agreement; then

    g.   Any other coverages under this Policy.

**Defense and Settlements**

The Defense and Settlements Condition is replaced with the following:

1. The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this Policy without the **insurance organization's** written consent, which shall not be unreasonably withheld. The **insurance organization** shall not be liable for any **loss** based upon settlement, **defense costs**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to that it has not consented.

2. The **insurance organization** shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conducts its investigation or to reach a settlement of the **claim**. The **insureds** agree that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery.

3. The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable. If the **insured organization** withholds consent to such settlement, the **insurance organization** liability for all **loss** arising from such **claim** shall not exceed the total of:

    a.   The amount for which the **insurance organization** could have settled such **claim**; plus

    b.   **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

    c.   80% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

    d.   80% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

    e.   Any applicable deductible.

4. Any amounts paid by the **insurance organization** under paragraphs a., b. or c. above shall be part of and not in addition to the applicable limits of liability shown on the Declarations.

5. The **insurance organization** and the **insureds** shall not unreasonably withhold any consent referenced in this Defense and Settlements Condition.

6. The **insurance organization** shall have the right to appeal any judgment with respect to any **claim** covered, in whole or in part, by this Policy, and the expense of appealing such judgment shall be part of **defense costs**.

7. The **insurance organization** shall have the right and duty to select defense counsel and defend any **claim** covered under this Policy. The **insurance organization's** duty to defend **claims** shall apply even if any of the allegations are groundless, false or fraudulent, but shall only obligate the **insurance organization** to pay **defense costs**.

# WRONGFUL THIRD PARTY ACT ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

### DEFINITIONS

The Wrongful Third Party Act Definition is replaced with the following:

**Wrongful third party act** means the actual or alleged discrimination or sexual harassment by an **insured** of an individual, who is not an **insured**, and who is, was or seeks to be, a customer, borrower or vendor of the **insured organization**.

Provided, however, the definition of **wrongful third party act** shall not include any actual or alleged discrimination related to or based upon any lending activities.

# LENDER LIABILITY DISCRIMINATION ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

**Additional Exclusions for Insuring Agreement K**

**Exclusion 12 d. is deleted and replaced with the following:**

12. d.  Liber or slander, defamation of character, trade libel or alleged disparagement of a person's or organization's reputation, goods, products or services.

# INDIANA AMENDATORY ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in the Bond, except as modified in this endorsement.*

### Conditions

**Nonrenewal**

The Nonrenewal Condition is replaced with the following:

If the **insurance organization** does not renew this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of nonrenewal stating the effective date, and the reason for nonrenewal. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization** at least 45 days prior to the end of the **policy period**. If this notice is mailed, proof of mailing shall be sufficient proof of notice.

**Termination and Cancellation**

The Termination and Cancellation Condition is replaced with the following:

1. This Policy terminates in its entirety upon the expiration of the **policy period.**

2. The **insured organization** may cancel this Policy during the **policy period** by mailing or delivering written notice of cancellation to the **insurance organization**. The unearned premium shall be refunded less than pro rata if this Policy is cancelled as provided in this paragraph.

3. The **insurance organization** may cancel this Policy during the **policy period** for nonpayment of premium. If the **insurance organization** cancels this Policy, the **insurance organization** shall mail or deliver to the **insured organization**, and to the **insured organization**'s agent, written notice of cancellation stating the effective date, and the reason for cancellation. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**. If this notice is mailed, proof of mailing shall be sufficient proof of notice. Cancellation is effective 10 days after the **insurance organization** mails or delivers the notice of cancellation.

### Additional Condition

**Notice to Insurance Organization**

The Notice to Insurance Organization Condition is added to the Conditions as follows:

Notice given by or on behalf of the **insured** to any authorized agent of the **insurance organization** within Indiana, with particulars sufficient to identify the **insured**, shall be deemed notice to the **insurance organization**.

© ProSight Specialty Insurance Group, Inc.

# CYBER AMENDATORY ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**INFORMATION SECURITY INSURING AGREEMENTS**

Paragraph **a.** of the **Loss** definition of **Additional Definitions for Insuring Agreements O - V** under the **Information Security Insuring Agreements** section is deleted and replaced with the following:

**Loss** means:

**a.** With respect to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

**Loss** does not include:

1) Civil or criminal fines or penalties imposed by law, however, this exclusion does not apply to **PCI Fines and Costs.**

2) Punitive or exemplary damages;

3) The multiplied portion of multiplied damages;

4) Taxes;

5) Royalties;

6) Nonmonetary or injunctive relief;

7) The amount of any disgorged profits; or

8) Matters that are uninsurable pursuant to applicable law.

The **Additional Definitions for Insuring Agreements O - V** under the **Information Security Insuring Agreements** section is amended by the addition of the following definitions:

**PCI Fines and Costs** means:

The direct monetary fines and penalties owed by the **Insured Organization** under the terms of a **Merchant Services Agreement**, but only where such fines or penalties result from both the **Insured Organization**'s actual or alleged noncompliance with published PCI Data Security Standards and from a data breach caused by an incident (or reasonably suspected incident) described in Insuring Agreement P; provided **PCI Fines and Costs** shall not include, any charge backs, interchange fees, discount fees, or other service related fee, rates or charges.

**Merchant Services Agreement** means:

Any agreement between an **Insured** and a financial institution, credit/debit card company, credit/debit card processor or independent service operator enabling an **Insured** to accept credit card, debit card, prepaid card, or other payment cards for payments or donations.

Exclusion **16.** of **Additional Exclusions for Insuring Agreements O - V** under the **Information Security Insuring Agreements** section is deleted and replaced with the following:

**16.** Based upon, attributable to or arising out of any action by a governmental or quasi-governmental authority or agency, including, but not limited to, regulatory actions brought against you on behalf of the Federal Trade Commission, Federal Communications Commission or other regulatory agency.  However, this exclusion shall not apply to action brought by governmental authority acting solely in its capacity as a customer of the **Insured Organization** or one of its **Subsidiaries**.  However, this exclusion shall not apply to defense costs.

Coverage for **Defense Costs** only will be limited to $250,000.

© ProSight Specialty Insurance Group, Inc.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

## ADDITIONAL EXCLUSION

**Cap on Certified Terrorism Losses**

1. If aggregate insured losses attributable to **certified acts of terrorism** under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

## ADDITIONAL DEFINITION

**Certified Act Of Terrorism:**

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ProSight Specialty Insurance Group, Inc.

MANAGEMENT AND SECURITY LIABILITY POLICY
ML 45 01 0213

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

The federal Terrorism Risk Insurance Act requires notification of coverage for losses arising out of acts of terrorism.  As defined in the Terrorism Risk Insurance Act, the term certified **act of terrorism** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage for certified **acts of terrorism** is included in your policy.  The United States Government, Department of the Treasury will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The summary of the Terrorism Risk Insurance Act and the coverage under your policy contained in this notice is necessarily general in nature.  Your policy contains specific terms, definitions, exclusions and conditions.  In case of any conflict, your policy language will control the resolution of all coverage questions.  The portion of your annual premium attributable to coverage for acts of terrorism is currently waived.

MANAGEMENT AND SECURITY LIABILITY POLICY
ML Manuscript

# DEFENSE AND SETTLEMENTS ENDORSEMENT

**CONDITIONS**

**6. Defense and Settlements**

**Paragraph c. is deleted and replaced with the following:**

c.   The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable.   If the **insured organization** withholds consent to such settlement, the **insurance organization** liability for all **loss** arising from such **claim** shall not exceed the total of:

1)   The amount for which the **insurance organization** could have settled such **claim**; plus

2)   **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

3)   80% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

4)   80% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

5)   Any applicable deductible.

MANAGEMENT AND SECURITY LIABILITY POLICY
ML Manuscript

## CLAIM REPORTING ENDORSEMENT

**CONDITIONS**

The second paragraph of Claims Reporting is deleted and replaced with the following:

**3.  Claims Reporting**

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

Notice of claim will occur upon knowledge of claim possessed by the:

a.  Chairperson;
b.  Titled Officer;
c.  Branch Manager;
d.  In-house counsel;
e.  Human Resources Manager, or any equivalent position.

# LOSS DEFINITION AMENDMENT – DAMAGES ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

**Definitions**

Definition of Loss, Paragraph a, is deleted and replaced with the following:

**Loss:**

**Loss** means:

a. With respect to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability:

Damages, settlement amounts and costs awarded pursuant to judgments or settlements.

**Loss** does not include:

1) Civil or criminal fines or penalties imposed by law;

2) Punitive or exemplary damages;

3) The multiplied portion of multiplied damages;

4) Taxes;

5) Royalties;

6) Nonmonetary or injunctive relief;

7) The amount of any disgorged profits; or

8) Matters that are uninsurable pursuant to applicable law.

© ProSight Specialty Insurance Group, Inc.

# WRONGFUL EMPLOYMENT PRACTICES LIABILITY ACT ENDORSEMENT

**DEFINITIONS**

**Wrongful Employment Practices Liability Act:**

**The definition of Wrongful Employment Practices Liability Act is deleted and replaced with the following:**

**Wrongful employment practices liability act** means any actual or alleged:

a. Violation of any state, federal or provincial law, anywhere in the world, prohibiting discrimination against employees;

b. Wrongful dismissal, discharge or termination (including constructive discharge) of employment;

c. Sexual or workplace harassment;

d. Violation of employment laws;

e. Negligent evaluation or training;

f. Wrongful discipline;

g. Retaliation, unfair discipline or excessive discipline;

h. Failure to provide adequate workplace, employment policies or procedures;

i. Failure to promote, train, grant variable pay or grant tenure;

j. Breach of an employment contract, whether actual, implied, written or oral;

k. Misrepresentation or misstatement;

l. Negligent supervision or hiring of others;

m. Failure to employ;

n. Libel, slander, defamation of character, publication of material in violation of a person's right of privacy;

o. Infliction of emotional distress, mental anguish or humiliation; or

p. Negligent retention, related to current, past, future or prospective employment of any natural person by the **insured organization**.

q. Hostile work environment, brought by or on behalf of and related to current, past, future or prospective employment of any natural person by the **insured organization.**

© ProSight Specialty Insurance Group, Inc.

# LENDER SERVICE ORGANIZATION LIABILITY - CUSTOMER AND BORROWER DEFINTION AMENDMENT ENDORSEMENT

**Additional Definitions for Insuring Agreement L**

The **Borrower** and **Customer** Definitions are deleted and replaced with the following:

**Borrower:**

**Borrower** means any individual, organization, or their representative to whom or to which the **insured organization** facilitates or assists with a loan, lease or extension of credit on behalf of a **customer** that is not the **insured organization**, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person, entity or their representative, other than a **borrower**, that has received, is receiving or seeks to receive any service from the **insured organization**.

**Exhibit B**

**New York Marine and General Insurance Company**
**Policy No.: PL202000003200**
**Policy Change No. 1**
**Effective: March 8, 2021**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

**Policy Change Number**  1

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| PL202000003200 | 03/08/2021 Processed on date : 07/20/2021 | New York Marine and General Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Notre Dame Federal Credit Union | Allied Solutions, LLC |

| COVERAGE PARTS AFFECTED |
|---|
| Management and Security Liability |

---

**CHANGES**

It is understood and agreed that the policy is amended as follows:


The following forms are added/amended:

Loss Payee Endorsement - GNMA




All other terms and conditions remain unchanged.

---

```
Premium:                                              $0.00
Taxes/ Surcharges/ Fees (See Schedule):               $0.00
Total premium:                                        $0.00
```

_____
Authorized Representative Signature

SIGNATURE PAGE

**In witness whereof**, New York Marine and General Insurance Company has caused this policy to be signed by its president and secretary.

Larry Hannon
President

Frank D. Papalia
Secretary

Named Insured: Notre Dame Federal Credit Union
Policy #: PL202000003200
Policy Period: 04-17-2020 to 04-17-2023

IL 0001 (0519)

# LOSS PAYEE- GNMA

**CONDITIONS**

The following is added to Conditions:

**21. Loss Payee**

In the event of a loss affecting the interest of the Government National Mortgage Association, The Government National Mortgage Association, its successors and assigns shall be named on the loss payable draft as their interests may appear.

**Exhibit C**


**New York Marine and General Insurance Company**
**Policy No.: PL202300003200**
**Policy Period: From 04/17/2023 to 04/17/2026**



## TELL US WHAT HAPPENED AND WE'LL IMMEDIATELY BEGIN TO DELIVER THE AWESOME SERVICE THAT IS THE HALLMARK OF COACTION.

We'll focus first on assuring your well-being.
Then, we'll tend to every detail of your claim with care.

| | | |
|---|---|---|
| ✉ | **EMAIL** | claims@coactionspecialty.com |
| 📠 | **FAX** | 1-855-657-3534 |
| ✉ | **MAIL** | Coaction Claims Department<br>412 Mt. Kemble Avenue Suite 300C<br>Morristown, NJ 07960 |
| 📞 | **PHONE** | 1-800-774-2755<br>Press '1' to Report a Claim / Anytime - days, nights & weekends<br><br>*For inquiries on previously reported claims:*<br>Press '2' Workers' Compensation Claims<br>Press '3' All Other Claims |
| 🖥 | **ONLINE** | customer.coactionspecialty.com |



PN 04 99 37    11/17    As used herein, "Coaction" and "Coaction Specialty Insurance Group" refers to the insurers of Coaction Specialty Insurance Group, Inc. underwriting insurance policies or bonds, which include   New York Marine and General Insurance Company, Gotham Insurance Company and Southwest Marine and General Insurance Company. Actual coverage is specified by the policies or bonds issued. Coaction, 412 Mt Kemble Ave, Ste 300C, Morristown, NJ 07960.

**New York Marine and General Insurance Company**
107 Greenwich Street, 16th Floor
New York, NY 10006
A Stock Company

# Management and Security Liability Policy
## Declarations

*THIS IS A CLAIMS-MADE POLICY. DEFENSE COSTS ARE INCLUDED WITHIN THE ANNUAL AGGREGATE LIMIT OF LIABILITY. ANY DEDUCTIBLES SHALL APPLY TO DEFENSE COSTS. READ THIS POLICY CAREFULLY.*

Effective Date: 04/17/2023 12:01 a.m.  for the Insuring Agreements, Annual Aggregate Limit(s) of Liability and Deductible(s) shown below.
These Declarations supersede any previous Declarations.

Reason for new Declarations:

Policy Number: PL202300003200
Renewal of Policy Number:

**Item 1a:  Named Insured and Address**
Notre Dame Federal Credit Union
1828 Moreau Dr,
Notre Dame, IN, 46556

**Item 1b:  Producer Name and Address**
Allied Solutions, LLC
350 Veterans Way, Ste 200,
Carmel, IN, 46032

**Item 2:   Policy Period**
From: 04/17/2023 12:01 a.m.
To: 04/17/2026 12:01 a.m. at the insured's mailing address shown above

## Item 3. Coverages

| If "no coverage" is shown opposite any coverage below, that coverage is not provided and is deleted from this Policy. | (A) Coverage Annual Aggregate Limit of Liability | (B) Per Claim Deductible | (C) Coverage is Part of Policy Annual Aggregate Limit of Liability |
|---|---|---|---|
| Directors and Officers Coverage | | | |
| A. Individual | $10,000,000 | $0 | Yes |
| B. Reimbursement | $10,000,000 | $25,000 | Yes |
| C. Entity | $10,000,000 | $25,000 | Yes |
| D. Investigative Costs | $100,000 | $0 | Yes |
| E. Outside Director Liability | $10,000,000 | $0 | Yes |
| F. Director and Officer Umbrella | No Coverage | No Coverage | No Coverage |
| G. Director and Officer ID Theft $7,500 Limit per Director or Officer | No Coverage | No Coverage | No Coverage |
| Employment Practices Liability | | | |
| H. Employment Practices Liability | $3,000,000 | $25,000 | Yes |
| I. Fair Labor Standards Act | $200,000 | $10,000 | Yes |
| Fiduciary Liability | | | |
| J. Fiduciary Liability | $3,000,000 | $1,000 | Yes |
| Professional Liability | | | |
| K. Lender Liability | $4,000,000 | $50,000 | Yes |
| L. Lending Service Organization Liability | No Coverage | No Coverage | No Coverage |
| M. Credit Union Professional Liability | $3,000,000 | $50,000 | Yes |
| N. Financial Services Professional Liability | No Coverage | No Coverage | No Coverage |
| Information Security Protection | | | |
| O. Website Publishing Liability | No Coverage | No Coverage | No Coverage |
| P. Security Breach Liability | No Coverage | No Coverage | No Coverage |
| Q. Programming Errors and Omissions Liability | No Coverage | No Coverage | No Coverage |
| R. Replacement or Restoration of Electronic Data | No Coverage | No Coverage | No Coverage |
| S. Extortion Threats | No Coverage | No Coverage | No Coverage |
| T. Business Income and Extra Expense | No Coverage | No Coverage | No Coverage |
| U. Public Relations Expense | No Coverage | No Coverage | No Coverage |
| V. Security Breach Expense | No Coverage | No Coverage | No Coverage |

## Item 4. Policy Annual Aggregate Limit of Liability  $23,000,000

## Item 5. Extended Reporting Period

Additional Annual Premium:        150%

Additional Period:                12

**Item 6.  Additional Insureds**

| | (A) Insureds Are Included In This Policy | (B) Subject to Annual Aggregate Sub-Limit of Liability | (C) Annual Aggregate Sub-Limit of Liability |
|---|---|---|---|
| Directors and Officers Coverage | | | |
|    Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Employment Practices Liability | | | |
|    Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
|    Independent Contractors | Yes | Yes | REFER TO ITEM 4 |
| Fiduciary Liability | | | |
|    Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Professional Liability | | | |
|    Employees and Leased Employees | Yes | Yes | REFER TO ITEM 4 |
| Information Security Protection | | | |
|    Website Publishing Liability | No | Yes | N/A |
|    Security Breach Liability | No | Yes | N/A |
|    Programming Errors and Omissions Liability | No | Yes | N/A |
|    Replacement or Restoration of Electronic Data | No | Yes | N/A |
|    Extortion Threats | No | Yes | N/A |
|    Business Income and Extra Expense | No | Yes | N/A |
|    Public Relations Expense | No | Yes | N/A |
|    Security Breach Expense | No | Yes | N/A |

## Item 7.  Prior and Pending Litigation

| | Date |
|---|---|
| Directors and Officers Coverage | |
|    Individual | 04/17/2020 |
|    Reimbursement | 04/17/2020 |
|    Entity | 04/17/2020 |
|    Investigative Costs | 04/17/2020 |
|    Outside Director Liability | 04/17/2020 |
|    Director and Officer Umbrella | No Coverage |
|    Director and Officer ID Theft | No Coverage |
| Employment Practices Liability | |
|    Employment Practices Liability | 04/17/2020 |
|    Fair Labor Standards Act | 04/17/2020 |
| Fiduciary Liability | |
|    Fiduciary Liability | 04/17/2020 |
| Professional Liability | |
|    Lender Liability | 04/17/2020 |
|    Lending Service Organization Liability | No Coverage |
|    Credit Union Professional Liability | 04/17/2020 |
|    Financial Services Professional Liability | No Coverage |
| Information Security Protection | |
|    Website Publishing Liability | No Coverage |
|    Security Breach Liability | No Coverage |
|    Programming Errors and Omissions Liability | No Coverage |
|    Replacement or Restoration of Electronic Data | No Coverage |
|    Extortion Threats | No Coverage |
|    Business Income and Extra Expense | No Coverage |

Public Relations Expense                                    No Coverage
Security Breach Expense                                     No Coverage
                                            Total Annual Premium $89,495.00

The following forms along with these Declarations complete this Management Protection Package.

SIGNATURE PAGE

**In witness whereof**, New York Marine and General Insurance Company has caused this policy to be signed by its Chief Executive Officer and Secretary.


Jonathan Ritz
Chief Executive Officer

Linda Lin
Secretary

_____

Named Insured: Notre Dame Federal Credit Union
Policy #: PL202300003200
Policy Period: 04-17-2023 to 04-17-2026

IL 0001 (0122)

POLICY NO: PL202300003200

## SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED | EFFECTIVE DATE | POLICY NUMBER |
|---|---|---|
| Notre Dame Federal Credit Union | 04-17-2023 | PL202300003200 |

| | |
|---|---|
| IF THIS ENDORSEMENT IS LISTED IN THE POLICY DECLARATIONS, IT IS IN EFFECT FROM THE TIME COVERAGE UNDER THIS POLICY COMMENCES. OTHERWISE, THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AS SHOWN ABOVE AT THE SAME TIME OR HOUR OF THE DAY AS THE POLICY BECAME EFFECTIVE. | COUNTERSIGNED BY: _____ AUTHORIZED REPRESENTATIVE |

**FORMS THAT APPLY TO**

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| MLDS21 | 0213 | MANAGEMENT AND SECURITY LIABILITY DECLARATIONS |
| IL0001 | 0122 | SIGNATURE PAGE |
| IL0012 | 0711 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| IL3114 | 0720 | POLICY CONDITIONS ADDED |
| ML0001 | 0213 | MANAGEMENT AND SECURITY LIABILITY COVERAGE FORM |
| ML0004 | 0213 | MULTI-YEAR PREMIUM ENDORSEMENT |
| ML0006 | 0213 | ALLOCATION ENDORSEMENT |
| ML0014 | 0213 | CREDIT UNION ADVANTAGE ENDORSEMENT - SELECT |
| ML0028 | 0213 | WRONGFUL THIRD PARTY ACT ENDORSEMENT |
| ML0045 | 0218 | LENDER LIABILITY DISCRIMINATION |
| ML0053 | 0122 | CLAIM REPORTING ENDORSEMENT |
| ML0054 | 0122 | DEFENSE AND SETTLEMENTS ENDORSEMENT |
| ML0055 | 0122 | LENDER LIABILITY - CUSTOMER AND BORROWER DEFINITION AMENDMENT ENDORSEMENT |
| ML0056 | 0122 | LOSS DEFINITION AMENDMENT – DAMAGES ENDORSEMENT |
| ML0058 | 0122 | WRONGFUL EMPLOYMENT PRACTICES LIABILITY ACT ENDORSEMENT |
| ML0103 | 0213 | INDIANA AMENDATORY ENDORSEMENT |
| ML4500 | 0213 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT |
| ML4501 | 0213 | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |

IL 0012 0711

COMMERCIAL INTERLINE
IL 3114 0720

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CONDITIONS ADDED

If the Common Policy Conditions form is attached to this policy, then the following paragraphs are added to the Common Policy Conditions form and nothing is deleted or replaced from such form.  If the Common Policy Conditions form is not attached to this policy, then the following is added to every Coverage Part attached to this policy and also added to any Coverage Form shown in the Schedule Of Forms attached to this policy.

**A. Conformance:**

Any terms of this policy that are in conflict with Federal Law, State law, statutes or regulations applicable to this policy, are amended to conform to such laws, statutes and regulations.

**B. Titles And Headings:**

The titles and headings of the various paragraphs and of the forms attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit, alter or affect the provisions to which they relate.

**C. Compliance With Economic Or Trade Sanctions:**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions or any other applicable economic or trade sanctions, such coverage shall be null and void.

All other terms and conditions of this policy remain unchanged.

***THIS IS A CLAIMS-MADE POLICY. DEFENSE COSTS ARE INCLUDED WITHIN THE ANNUAL AGGREGATE LIMIT OF LIABILITY. ANY DEDUCTIBLES SHALL APPLY TO DEFENSE COSTS. READ THIS POLICY CAREFULLY.***

*Some provisions restrict coverage. Do not rely on the titles or captions used in this Policy. Read this entire Policy carefully to determine rights, duties and what is or is not covered. Words and phrases appearing in **bolded text** in this Policy are defined in the Definitions section of this Policy.*

*All insuring agreements in this Policy are subject to the Declarations, Terms, Conditions and Other Provisions, except as modified in any insuring agreement or endorsement.*

*Insuring Agreements in this Policy are only provided if, and to the extent that, insuring agreement is indicated on the Declarations.*

## Management Liability Insuring Agreements

### A. Individual

If Individual Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by the **insured organization**, as a result of any **claim** first made during the **policy period** against the **insured person**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### B. Reimbursement

If Reimbursement Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is indemnified by the **insured organization**, as a result of any **claim** first made during the **policy period** against the **insured person**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### C. Entity

If Entity Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured organization**, **loss** for which the **insured organization** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured organization**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful management liability act**.

### D. Investigative Costs

If Investigative Costs Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of the **insured organization** reasonable costs, charges, fees (including attorneys' fees, consultants' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of an **insured person**) incurred by the **insured organization**, including its board of directors, board of managers, or any committee thereof, and incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**, in connection with the **insured organization's** investigation or evaluation of any written demand first made during the **policy period** against the board of directors or board of managers of such **insured organization** or, if exercised, the Extended Reporting Period.

Provided, however, Investigative Costs Insuring Agreement shall only apply to a written demand:

1. Brought by any natural person made without the instigation, solicitation, assistance or active participation of any **insured person**; and

2. That is a civil proceeding in a court of law against any **insured person** for a covered **wrongful management liability act**.

**E.    Director and Officer Umbrella**

If Director and Officer Umbrella Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by the **insured organization** as a result of any **claim** first made during the **policy period** against them, individually or otherwise, or, if exercised, the Extended Reporting Period, for a **wrongful management liability act** occurring before or during the **policy period**.

The Director and Officer Umbrella Annual Aggregate Limit of Liability shall be in addition to each insuring agreement Annual Aggregate Limit of Liability for any Management Liability Insuring Agreement as shown in Item 3. (A) on the Declarations, and no deductible shall apply to this insuring agreement. Director and Officer Umbrella Insuring Agreement shall apply only if any other valid and collectable insurance is not available to the **insured person**, whether the insurance is provided in this Policy or provided in any other policy.

For purposes of Director and Officer Umbrella Insuring Agreement, the following are deleted from the Terms, Conditions and Other Provisions:

1.    Insured Versus Insured Exclusion; and

2.    Pollution or Nuclear Exclusion.

For purposes of Director and Officer Umbrella Insuring Agreement, the following are deleted from the Management Liability Insuring Agreement:

1.    Other Wrongful Acts Exclusion;

2.    Personal Injury, Bodily Injury or Property Damage Exclusion;

3.    Professional Services Exclusion;

4.    Greenmail Exclusion; and

5.    Intellectual Property Exclusion.

The Director and Officer Umbrella Insuring Agreement is non-rescindable.

For purposes of the Director and Officer Umbrella Insuring Agreement, the Presumptive Indemnification Condition does not apply.

**F.    Outside Director Liability**

If Outside Director Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured person**, **loss** for which the **insured person** is legally obligated to pay and that the **insured person** is not indemnified by any entity or that no other insurance coverage exists, as a result of any **claim** first made during the **policy period** against them, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful outside director liability act**.

For purposes of Outside Director Liability Insuring Agreement, the Outside Entity Exclusion in the Terms, Conditions and Other Provisions is deleted.

**G.    Director and Officer ID Theft**

If Director and Officer ID Theft Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay up to $7,500 for **identity theft expenses** on behalf of each present **director or officer** who experiences **identity theft**, incurred as the direct result of any **identity theft** first discovered and reported during the **policy period**.

## Additional Definitions for Insuring Agreements A - G

**Identity Theft:**

**Identity theft** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **director or officer** (or spouse or **domestic partner** thereof) with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

 © Coaction Specialty Insurance Group, Inc.

**Identity Theft Expenses:**

**Identity theft expenses** means:

a.  Costs for notarizing affidavits or similar documents attesting to fraud required by credit agencies, financial institutions or similar credit grantors;

b.  Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

c.  Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

d.  Costs for long distance telephone calls to law enforcement agencies, credit agencies, financial institutions or similar credit grantors, merchants or other credit grantors to report or discuss any covered **identity theft**;

e.  Lost wages, up to a maximum payment of $750 per week for a maximum period of six weeks, as a result of absence from employment:

1)  To communicate with law enforcement agencies, credit agencies, financial institutions or similar credit grantors, merchants or other credit grantors or legal counsel;

2)  To complete fraud affidavits or similar documents; or

3)  Due to wrongful incarceration arising from someone having committed a crime in the name of a **director or officer**, provided the **director or officer** is acquitted or charges are dismissed related to the acts that caused the incarceration; and

4)  Costs for daycare and eldercare incurred solely as a result of any **identity theft** discovered during the **policy period**,

incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

## Additional Exclusions for Insuring Agreements A - G

The **insurance organization** shall not be liable to make any payment:

1.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed.  Provided, however, this exclusion shall not apply to the portion of **loss**, including **defense costs**, related to liability the **insured** would have in the absence of the contract or agreement.  Provided, however, this exclusion shall only apply to Entity Insuring agreement.

2.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws.

3.  For the portion of **loss** related to the actual or proposed payment by the **insured organization** of allegedly inadequate consideration in connection with the **insured organization's** purchase of securities issued by any organization or ownership interest in any organization.  Provided, however, this exclusion shall not apply to **defense costs**.  Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

4.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark. Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

5.  For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

6.  For the portion of **loss** related to:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

d.  Libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

e.  Violation of a person's right of privacy;

f.  Physical harm, sickness, disease, disability, death, mental anguish, emotional distress, mental injury or humiliation of any person; or

g.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

7.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Director and Officer Umbrella Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Director and Officer Umbrella Insuring Agreement.

8.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Entity Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Entity Insuring Agreement.

9.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Individual Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Individual Insuring Agreement.

10. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item. 7 on the Declarations for Reimbursement Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Reimbursement Insuring Agreement.

11. For the portion of **loss** related to any service for a fee and pursuant to a written agreement provided by the **insured organization** or an **outside entity**.

    Provided, however, this exclusion shall not apply to any **claim** against an **insured** to the extent such **claim** is for a **wrongful management liability act** in connection with the management or supervision of any division or **subsidiary** of the **insured organization** offering any of the aforementioned services.

12. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

    a.  The actual or alleged violation of any federal, state, municipal, agency or common law or any rules or regulations promulgated thereunder relating to securities (including any unit of a capital account); or

    b.  Any actual or alleged purchase, sale or distribution of or offer, representation or agreement relating to securities (including any unit of a capital account).

13. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

    a.  Unauthorized access of **personal information**; or

    b.  Violation of a person's right to privacy.

    Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

 © Coaction Specialty Insurance Group, Inc.

Employment Practices Liability Insuring Agreements

## H. Employment Practices Liability

If Employment Practices Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay, as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful employment practices liability act** or a **wrongful third party act**.

## I. Fair Labor Standards Act

If Fair Labor Standards Act Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **defense costs** as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful FLSA act** that is solely a **claim** seeking pay for overtime or unpaid minimum wages or alleges misclassification of **employees**.

## Additional Exclusions for Insuring Agreements H and I

The **insurance organization** shall not be liable to make any payment:

1. For the portion of **loss** related to costs required to accommodate a disabled person, including but not limited to modifying any building or property to be more accessible.

2. For the portion of **loss** related to:

   a. Benefits, or the payment of benefits, in connection with an employee benefit plan; or

   b. Any other payment for the benefit of an **employee**, **director or officer** or **leased employee**,

   arising out of the employment relationship.

   Provided, however, this exclusion shall not apply to **defense costs** or salary, wages or commissions.

3. For the portion of **loss** related to any actual or alleged breach of any express contract or agreement between the **insured organization** and any **independent contractor**.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged assumption by an **insured** of another's liability by written, oral or implied contract or agreement.

   Provided, however, this exclusion shall not apply to:

   a. Liability that the **insured** would have in absence of such contract or agreement; or

   b. The extent the **insured organization** has agreed to indemnify a **leased employee** or **independent contractor** for such **loss**, but only to the extent coverage is granted for **leased employees** or **independent contractors** in this Policy.

5. For the portion of **loss** related to any actual or alleged breach of any written employment contract.

   Provided, however, this exclusion shall not apply to **loss**:

   a. To the extent that the **insured** would have been liable for such **loss** in absence of the written contract; or

   b. That constitutes **defense costs**; or

   c. That constitutes severance pay owed pursuant to a settlement agreement.

6. For the portion of **loss** related to any actual or alleged violation of the responsibilities, obligations or duties imposed by:

   a. Employee Retirement Income Security Act of 1974 (29 U.S.C.A. §1 et seq.);

   b. Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.);

   c. Workers' compensation laws;

   d. Workers Adjustment and Retraining Notification Act (WARN) (29 U.S.C. §2101, et seq.) (Regulations 20 C.F.R. Part 639);

e.  Fair Labor Standards Act (FLSA) (29 U.S.C. §201 et seq.) (except Equal Pay Act provisions), except when covered in the Fair Labor Standards Act Insuring Agreement;

f.  National Labor Relations Act (NLRA) (29 U.S.C. §§151-169);

g.  Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (29 U.S.C. §1161 et seq. and 42 U.S.C. §300bb-1 et seq.);

h.  Occupational Safety and Health Act (OSHA) (2 U.S.C. §1341);

i.  Unemployment compensation laws;

j.  Tax laws; or

k.  Federal, state, local or common law provisions similar to paragraphs a. through j. above, including amendments to or regulations promulgated pursuant to the above laws.

Provided, however, this exclusion shall not apply to any **claim** for retaliation against a claimant related to a claimant's exercise of rights pursuant to any of the above laws, rules or regulations.

7.  For the portion of **loss** related to a **wrongful fiduciary liability act**.

8.  For the portion of **loss** related to:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

d.  Physical harm, sickness, disease, disability or death; or

e.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

9.  For the portion of **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administration or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Employment Practices Liability, or any actual or alleged **interrelated wrongful act** at issue in the aforementioned actions, with respect to Employment Practices Liability Insuring Agreement.

Provided, however, this exclusion shall not apply:

a.  To a **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any prior or pending administrative proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local government body; and

b.  When any General Counsel and Human Resource Manager of the **insured organization**, or equivalent, or any **director or officer** had no knowledge of such action described in paragraph a. above prior to the date shown in Item 7. on the Declarations for Employment Practices Liability Insuring Agreement.

## Fiduciary Liability Insuring Agreement

### J.  Fiduciary Liability

If Fiduciary Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise or, if exercised, during the Extended Reporting Period, for a **wrongful fiduciary liability act**.

If Fiduciary Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured** up to $100,000 for fees, penalties or sanctions (other than the cost of corrections) incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization** for which:

1.  Notice of participation was first provided or offered to the **insured organization** by the Department of Labor under a **voluntary compliance program** for a **wrongful fiduciary liability act** involving the actual or alleged noncompliance of an **insured plan**; and

2.  The insured is legally obligated to pay,

during the **policy period** or, if exercised, during the Extended Reporting Period.  The $100,000 for fees, penalties or sanctions (other than the cost of corrections) shall be a part of and not in addition to the Annual Aggregate Limit of Liability provided for Fiduciary Insuring Agreement and no deductible shall apply.

## Additional Exclusions for Insuring Agreement J

The **insurance organization** shall not be liable to make any payment:

1.  For the portion of **loss** related to:

    a.  Benefits due or to become due under any **insured plan**;

    b.  Benefits that would be due under any **insured plan** if such **insured plan** complied with all applicable law; or

    c.  Amounts an **insured** is legally obligated to pay to fund an **insured plan**.

    Provided, however, this exclusion shall not apply to **defense costs** or any actual or alleged:

    a.  Negligent act, error or omission by an **insured** based on any of the following with respect to an **insured plan**:

        1)  Interpreting or applying;

        2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**; or

        3)  Handling of records in effecting enrollment, calculating, terminating or canceling; or

    b.  Negligent act, error or omission by an **insured** in:

        1)  Interpreting or applying; or

        2)  Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**,

        concerning workers' compensation, unemployment insurance, Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.).

2.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual or alleged violation of the responsibilities, obligations or duties imposed by:

    a.  Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.);

    b.  Workers' compensation laws;

    c.  Workers Adjustment and Retraining Notification Act (WARN) (29 U.S.C. §2101, et seq.) (Regulations 20 C.F.R. Part 639);

    d.  Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.);

    e.  National Labor Relations Act (NLRA) (29 U.S.C. §§151-169);

    f.  Occupational Safety and Health Act (OSHA) (2 U.S.C. §1341);

    g.  Unemployment compensation laws;

    h.  Tax laws; or

    i.  Federal, state, local or common law provisions similar to paragraphs a. through h. above, including amendments to or regulations promulgated pursuant to the above laws.

3.  For the portion of **loss** related to a **wrongful employment practices liability act**.

4.  For the portion of **loss** related to:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d.  Libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e.  Violation of a person's right of privacy;

    f.  Physical harm, sickness, disease, disability, death, mental anguish, emotional distress, mental injury or humiliation of any person; or

    g.  Damage to or destruction of any tangible property or data, including loss of use of the property or data.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Fiduciary Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions, with respect to Fiduciary Liability Insuring Agreement.

## Professional Liability Insuring Agreements

### K. Lender Liability

If Lender Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a:

1.  **Borrower** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act** or a **wrongful vicarious lending liability act**; or

2.  Lien holder, other than the **insured organization**, first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, based solely on the status of the **insured organization** as a lien holder or secured party.

## Additional Definitions for Insuring Agreement K

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend, or refuses to extend a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity with an account at the **insured organization** or any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a.  Record keeping;

b.  Billing;

c.  Disbursements of principal and interest for a loan;

d.  Credit reporting or statements of a **borrower's** creditworthiness; or

e.  Receipt or payment of insurance premiums and taxes.

**Non-Lending Services:**

**Non-lending services** means only those services any **insured** performs or is required to perform for the benefit of a **customer** of the **insured organization**:

a.  In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b.  Free of charge, in connection with a service for a fee, commission, or other compensation described in paragraph a. above;

c.  Related to any activities as a notary public; or

d.  Related to services provided under a signature validation program.

Provided, however, **non-lending services** shall not include **loan servicing**.

**Wrongful Lending Liability Act:**

**Wrongful lending liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **insured** relating to:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d.  The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e.  The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

f.  The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

**Wrongful Vicarious Lending Liability Act:**

**Wrongful vicarious lending liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a party that is not an **insured** under this Policy, in connection with:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d.  The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e.  The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

f.  The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above,

for which an insured is actually or allegedly vicariously liable.

## Additional Exclusions for Insuring Agreement K

The **insurance organization** shall not be liable to make any payment:

1.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

2.  For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433),

3.  Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the diminution in value of money, securities, property or any other item of value.

 © Coaction Specialty Insurance Group, Inc.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm, insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such organizations.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

8. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any extension of credit that when made was in excess of 105% of the applicable legal lending limit of the **insured organization**.

9. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from **non-lending services**.

10. For the portion of **loss** related to a **wrongful fiduciary liability act**, or a **wrongful employment practices liability act**.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the purchase or participation in any loan or any transaction whereby the **insured organization** acquires an ownership interest in an extension of credit:

    a. That was not originated by the **insured organization**; and

    b. Where the **insured organization** is not the **borrower's** creditor for the full amount of the extension of credit.

    Provided, however, this exclusion shall not apply to a **wrongful lending liability act** or a **wrongful vicarious lending liability act** as a result of the **insured organization's loan servicing**.

12. For the portion of **loss** related to:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d. Discrimination, libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e. Violation of a person's right of privacy;

    f. Physical harm, sickness, disease, disability or death; or

    g. Damage to or destruction of any tangible property or data, including loss of use of the property or data.

13. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Lender Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned events.

14. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **insured organization**, or any other ownership interest, when such **claim** is based upon, arises out of or pertains to any interest in said security.

    Provided, however, this exclusion shall not apply where:

    a. The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **borrower**; and

    b. Such **claim** is brought without the instigation, solicitation, assistance or participation of any other **insured**.

**L. Lender Service Organization Liability**

If Lending Service Organization Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** brought by a **borrower** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful lending liability act**.

## Additional Definitions for Insuring Agreement L

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** facilitates or assists with a loan, lease or extension of credit on behalf of a **customer** that is not the **insured organization**, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity, other than a **borrower**, that has received, is receiving or seeks to receive any service from the **insured organization**.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a. Record keeping;

b. Billing;

c. Disbursements of principal and interest for a loan;

d. Credit reporting or statements of a **borrower's** creditworthiness; or

e. Receipt or payment of insurance premium and taxes.

**Non-Lending Services:**

**Non-lending services** means only those services any **insured** performs or is required to perform for the benefit of a **customer** of the **insured organization**;

a. In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b. Free of charge, in connection with a service for a fee, commission, or other compensation described in paragraph a. above;

c. Related to any activities as a notary public; or

d. Related to services provided under a signature validation program.

Provided, however, **non-lending services** shall not include the following services performed by an **insured**:

a. The rendering or failure to render **loan servicing**;

b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit; or

c. An agreement, refusal, grant or extension of any loan, lease or extension of credit.

**Wrongful Lending Liability Act:**

**Wrongful lending liability act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by an **insured** relating to:

a. The rendering or failure to render **loan servicing**;

b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit;

c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d. The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

 e. The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

 f. The unintentional violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

## Additional Exclusions for Insuring Agreement L

The **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or in directly, or in the consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including common law.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the diminution in value of money, securities, property or any other item of value.

5. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm, insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such organizations.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any extension of credit that when made was in excess of 105% of the applicable legal lending limit of the **insured organization**.

8. For the portion of **loss** related to any actual or alleged duty or obligation to repurchase a loan.

9. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from **non-lending services**.

10. For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the purchase or participation in any loan or any transaction whereby the **insured organization** acquires an ownership interest in an extension of credit:

 a. That was not originated by the **insured organization**; and

 b. Where the **insured organization** is not the **borrower's** creditor for the full amount of the extension of credit.

Provided, however, this exclusion shall not apply to a **wrongful lending liability act** or a **wrongful vicarious lending liability act** as a result of the **insured organization's loan servicing**.

12. For the portion of **loss** related to:

    a.   False arrest, detention or imprisonment;

    b.   Malicious prosecution;

    c.   Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d.   Discrimination, libel or slander, defamation of character, trade libel or other alleged disparagement of a person's or organization's reputation, goods, products or services;

    e.   Violation of a person's right of privacy;

    f.   Physical harm, sickness, disease, disability or death; or

    g.   Damage to or destruction of any tangible property or data, including loss of use of the property or data.

13. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Lending Service Organization Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned events.

14. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **insured organization**, or any other ownership interest, when such **claim** is based upon, arises out of or pertains to any interest in said security.

    Provided, however, this exclusion shall not apply where:

    a.   The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **borrower**; and

    b.   Such **claim** is brought without the instigation, solicitation, assistance or participation of any other **insured**.

## M. Credit Union Professional Liability

If Credit Union Professional Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful credit union services liability act**.

## Additional Definitions for Insuring Agreement M

**Borrower:**

    **Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

    **Customer** means any natural person or entity with an account at the **insured organization** or any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Debt Cancellation Program:**

    **Debt cancellation program** means any written agreement, formed at the time of the initial loan, lease or extension of credit, between the **insured organization** and a **customer**, wherein the **insured organization**, for a fee paid by the **customer**, agrees that upon the occurrence of certain events specified in the written agreement, the **insured organization** will cancel or defer principal, or forgive interest, on a loan, lease or other extension of credit granted by the **insured organization** to such **customer**.

**IRA/Keogh Act:**

    **IRA/Keogh Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured**, for a **customer** and in the **insured's** capacity as a trustee of any:

    a.   Individual Retirement Account (IRA);

b. Keogh Account (HR 10 Plan);

c. Deferred compensation plan that meets the requirements of the Internal Revenue Code of 1986 (IRC) (26 U.S.C.A. §1 et seq.); or

d. Other plan under Section (3) of Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.),

provided such trustee activity is allowed under the limited trust authority granted by such accounts or plans.

**Loan Protection Products:**

**Loan protection products** means insurance products sold to a **borrower** in connection with a loan, including but not limited to credit insurance, guaranteed asset protection (GAP) insurance or mechanical repair insurance.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a. Record keeping;

b. Billing;

c. Disbursements of principal and interest for a loan;

d. Credit reporting or statements of a **borrower's** creditworthiness; or

e. Receipt or payment of insurance premiums and taxes.

**Member:**

**Member** means any natural person or an entity that has or has had a share account at the **insured organization**.

**Payment Of Deposit Act:**

**Payment of deposit act** means any unintentional error or omission in payment of shares or deposits or in the application of funds received from a **member**.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

**Professional Services:**

**Professional services** means only those services the **insured organization** performs or is required to perform for a **customer** of the **insured organization**:

a. In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b. Free of charge, in connection with a service for a fee, commission or other compensation described in paragraph a. above;

c. Pursuant to a membership or account agreement with a **member**;

d. Related to any activities as a notary public; or

e. Related to services provided under a signature or validation program.

Provided, however, that **professional services** shall not include:

a. Services performed by any entity that an **insured** acquires ownership or control as security for a loan, lease or extension of credit;

b. Medical or health care services;

c. The practice of law or the rendering of legal services;

d. Architectural, engineering or construction management services;

e. Services provided, to a **customer**, as an enrolled actuary as that term is used in or in connection with Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended;

f. The rental of a safe deposit box;

g. The designing, building or maintenance of any website or the content of any website;

h. Real estate appraisal services; or

i. **Trust services**.

**Shared Branching Facility:**

**Shared branching facility** means a staffed office location that provides members of any credit union, other than the **insured organization**, the ability to interact with an **insured person** to transact business on behalf of the member with their respective credit union, pursuant to a written contract that at a minimum includes share deposit and share withdrawal transactions.

**Trade Practices Act:**

**Trade practices act** means any unintentional violation of any unfair or deceptive trade practices act, statute or regulation.

**Trust Services:**

**Trust services** means those services provided by an **insured** on behalf of the **insured organization** in their capacity as:

a. Executor, administrator or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

b. Custodian, depository or managing agent for securities or real property, manager of personal property, attorney-in-fact, escrow agent, transfer or dividend disbursing agent, registrar, fiscal paying agent, tax withholding agent, exchange agent, redemption or subscription agent, warrant or scrip agent, trustee under bond indenture or sinking fund agent;

c. Trustee or co-trustee, fiduciary or co-fiduciary under a pension, profit sharing, health and welfare or other similar employee benefit plan or trust; or

d. Trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Credit Union Services Liability Act:**

**Wrongful credit union services liability act** means:

a. **IRA/Keogh Act**;

b. **Trade practices act**;

c. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed while functioning as a **shared branching facility**;

d. **Payment of deposit act**, but only if such **claim** is brought by a **member**; or

e. Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by or on behalf of an **insured** in the rendering or failure to render **professional services**.

## Additional Exclusions for Insuring Agreement M

The insurance organization shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the control of any entity or property that an **insured** acquired as security or collateral for any loan, lease or extension of credit.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed.

    Provided, however, this exclusion shall not apply to:

    a.  The extent that the **insured** would have been liable in the absence of the contract or agreement;

    b.  The extent that the **insured organization**, pursuant to an agreement of indemnification, agreed, prior to the **claim**, to assume the liability of an **insured person**; or

    c.  Any **claim** against the **insured** by a **customer**, if and to the extent that such **claim** alleges:

        1)  A breach of contractual obligations in the rendering of, or failure to render, **professional services**; or

        2)  A breach of a membership agreement or an account agreement.

5.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

6.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any dispute involving fees or charges of the **insured organization**.

7.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from fraudulent:

    a.  Instruction through e-mail, telefacsimile or telephonic means; or

    b.  ACH debit from a **customer's** account.

8.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged written or verbal representations, promises or guarantees regarding the past performance or future value of any investment product.

9.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

10. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any decrease or lack of increase in the value of any investments, including securities, commodities, currencies, options or futures.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

    a.  The rendering or failure to render **loan servicing**;

    b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

    c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

    d.  The unintentional violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

    e.  The unintentional violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

    f.  The unintentional violation of any federal or state unfair or deceptive practices act, statute, regulation or other law relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

    Provided, however, this exclusion shall not apply to any **professional services** related to **loan protection products** or a **debt cancellation program** or for activities as a notary public.

12. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual loss of money, securities, property or other items of value in the custody or control of any **insured**, its agent or while in transit.

13. For the portion of **loss** related to a **wrongful fiduciary liability act** (except for an **IRA/Keogh Act**) or a **wrongful employment practices liability act**.

14. For the portion of **loss** related to:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

    d. Discrimination;

    e. Violation of a person's right of privacy;

    f. Physical harm, sickness, disease, disability or death;

    g. Damage to or destruction of any tangible property or data, including loss of use of the property or data; or

    h. Mental anguish, emotional distress, mental injury or humiliation of any person.

15. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Credit Union Professional Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions.

16. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the **insured organization** providing safe deposit box or vault facilities, lock box, single key safe deposit box, self-service safe deposit box, lobby lock box or any other property storage lock box.

17. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

    a. Unauthorized access of **personal information**; or

    b. Violation of a person's right to privacy.

18. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from having guaranteed in writing or witnessed any signature upon any transfer, enrollment form, change in beneficiary, securities transfer, assignment, bill of sale, power of attorney, evidence of debt, endorsement or any other such items.

19. Provided, however, this exclusion shall not apply to any activities as a notary public or services provided under a signature validation program.

20. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the failure to comply with any notice of any **customer** or any authorized representative of such **customer** to stop payment on any check or draft made or drawn by such **customer** or the wrongful dishonor of any check or draft made or drawn by the **customer** or any authorized representative of such **customer**.

## N. Financial Services Professional Liability

If Financial Services Professional Liability Insuring Agreement is granted as shown in Item 3. (A) of the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made during the **policy period** against the **insured**, individually or otherwise, or, if exercised, during the Extended Reporting Period, for a **wrongful financial services liability act**.

## Additional Definitions for Insuring Agreement N

**Borrower:**

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

**Debt Cancellation Program:**

**Debt cancellation program** means any written agreement, formed at the time of the initial loan, lease or extension of credit, between the **insured organization** and a **customer**, wherein the **insured organization**, for a fee paid by the **customer**, agrees that upon the occurrence of certain events specified in the written agreement, the **insured organization** will cancel or defer principal, or forgive interest, on a loan, lease, or other extension of credit granted by the **insured organization** to such **customer**.

**Loan Protection Products:**

**Loan protection products** means insurance products sold to a borrower in connection with a loan, including but not limited to credit insurance, guaranteed asset protection (GAP) insurance or mechanical repair insurance.

**Loan Servicing:**

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a. Record keeping;

b. Billing;

c. Disbursements of principal and interest for a loan;

d. Credit reporting or statements of a **borrower's** creditworthiness; or

e. Receipt or payment of insurance premiums and taxes.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business.

**Professional Services:**

**Professional services** means only those services the **insured organization** performs or is required to perform for a **customer** of the **insured organization**:

a. In conformance to an agreement between such **customer** and the **insured organization** for a fee, commission or other compensation, other than that comprised solely of interest or investment income, that benefits the **insured organization**;

b. Free of charge, in connection with a service for a fee, commission or other compensation described in paragraph a. above;

c. Related to any activities as a notary public; or

d. Related to services provided under a signature validation program.

Provided, however, that **professional services** shall not include:

a. Services performed by any entity that an **insured** acquires ownership or control as security for a loan, lease or extension of credit;

b. Medical or health care services;

c. The practice of law or the rendering of legal services;

d. Architectural, engineering or construction management services;

e. Services provided, to a **customer**, as an enrolled actuary as that term is used in or in connection with Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.). as amended;

f. The rental of a safe deposit box;

g. The designing, building or maintenance of any website or the content of any website;

h. Real estate appraisal services; or

i. **Trust services**.

**Trust Services:**

**Trust services** means those services provided by an **insured** on behalf of the **insured organization** in their capacity as:

a. Executor, administrator, or personal representatives of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

b. Custodian, depository or managing agent for securities or real property, manager of personal property, attorney-in-fact, escrow agent, transfer or dividend disbursing agent, registrar, fiscal paying agent, tax withholding agent, exchange agent, redemption or subscription agent, warrant or scrip agent, trustee under bond indenture or sinking fund agent;

c. Trustee or co-trustee, fiduciary or co-fiduciary under a pension, profit sharing, health and welfare or other similar employee benefit plan or trust; or

d. Trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Financial Services Liability Act:**

**Wrongful financial services liability act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by or on behalf of an **insured** in the rendering or failure to render **professional services**.

## Additional Exclusions for Insuring Agreement N

The **insurance organization** shall not be liable to make any payment:

1. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the control of any entity or property that an **insured** acquired as security or collateral for any loan, lease or extension of credit.

2. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any mechanical or electronic failure or breakdown, or any malfunction of any machine or computer, or any systems of machines or computers, including related peripheral components, or of any systems, applications, software, terminal devices or related communication networks.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly from, or in consequence of the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601), Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691), Fair Credit Billing Act (15 U.S.C. §1666), Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601), Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433), Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693), Fair Credit Reporting Act (15 U.S.C. Sec. 1681), the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), or any similar laws of any state, local or foreign jurisdiction, including any common law.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the actual or alleged liability of an **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed.

   Provided, however, this exclusion shall not apply to the extent that the **insured** would have been liable in the absence of the contract or agreement.

5. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, resulting directly or indirectly from any dispute involving fees or charges of the **insured organization**.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from fraudulent:

   a. Instruction through e-mail, telefacsimile or telephonic means; or

   b. ACH debit from a **customer's** account.

8. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged written or verbal representations, promises or guarantees regarding the past performance or future value of any investment product.

9. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any actual or alleged infringement or violation of any intellectual property rights or laws, including but not limited to copyright, title, slogan, patent, service mark, service name, trade dress, trade name, trade secret or trademark.

10. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any decrease or lack of increase in the value of any investments, including securities, commodities, currencies, options or futures.

11. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

   a. The rendering or failure to render **loan servicing**;

   b. The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit;

   c. An agreement, refusal, grant or extension of any loan, lease or extension of credit;

   d. The violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

   e. The violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar state statute, but only related to paragraphs a., b. or c. above; or

   f. The violation of any federal or state unfair or deceptive practices act, statute, regulation or other law relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above.

   Provided, however, this exclusion shall not apply to any **professional services** related to **loan protection products** or a **debt cancellation program** or for activities as a notary public.

12. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual loss of money, securities, property or other items of value in the custody or control of any **insured**, its agent or while in transit.

13. For the portion of **loss** related to a **wrongful fiduciary liability act** or a **wrongful employment practices liability act**.

14. For the portion of **loss** related to:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. Wrongful entry into, or eviction of a person or entity from, a room, dwelling or premises;

   d. Discrimination;

   e. Violation of a person's right of privacy;

   f. Physical harm, sickness, disease, disability or death;

   g. Damage to or destruction of any tangible property or data, including loss of use of the property or data; or

   h. Mental anguish, emotional distress, mental injury or humiliation of any person.

15. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any written demand, suit, litigation, order, formal complaint, formal civil administrative or civil regulatory proceeding, judgment or arbitration proceeding against any **insured** occurring on or prior to the Prior and Pending Litigation Date shown in Item 7. on the Declarations for Financial Services Professional Liability Insuring Agreement, or any **interrelated wrongful act** that is part of or alleged in the aforementioned actions.

16. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the **insured organization** providing safe deposit box or vault facilities, lock box, single key safe deposit box, self-service safe deposit box, lobby lock box or any other property storage lock box.

17. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

   a. Unauthorized access of **personal information**; or

   b. Violation of a person's right of privacy.

18. For **loss** related to any **claim** brought by, on behalf of, or at the request of any person or concern (including but not limited to any shareholder, member, bondholder, policyholder or debenture holder), their estates, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of

the **insured organization**, or any other ownership interest when such **claim** is based upon, arises out of or pertains to any interest in said security.

Provided, however, this exclusion shall not apply where:

a. The claimant is an **insured** and is bringing such **claim** solely in their capacity as a **customer**; and

b. Such **claim** is brought without the solicitation, assistance or participation of any other **insured**.

19. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from having guaranteed in writing or witnessed any signature upon any transfer, enrollment form, change in beneficiary, securities transfer, assignment, bill of sale, power of attorney, evidence of debt, endorsement or any other such items.

Provided, however, this exclusion shall not apply to any activities as a notary public or services provided under a signature validation program.

20. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the failure to comply with any notice of any **customer** or any authorized representative of such **customer** to stop payment on any check or draft made or drawn by such **customer** or the wrongful dishonor of any check or draft made or drawn by the **customer** or any authorized representative of such **customer**.

## Information Security Insuring Agreements

### O. Website Publishing Liability

If Website Publishing Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay, as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **wrongful web site publishing liability act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### P. Security Breach Liability

If Security Breach Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the **insured** is legally obligated to pay as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **security breach liability wrongful act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### Q. Programming Errors and Omissions Liability

If Programming Errors and Omissions Liability Insuring Agreement is granted as shown in Item 3.(A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** for which the insured is legally obligated to pay as a result of any **claim** first made against the **insured** during the **policy period** or during the applicable Extended Reporting Period for a **programming errors and omissions liability wrongful act** or a series of **interrelated wrongful acts** taking place on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the **policy period**.

### R. Replacement or Restoration of Electronic Data

If Replacement or Restoration of Electronic Data Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** of **electronic data** or **computer programs** stored within the **computer system** resulting directly from an **e-commerce incident** sustained during the **policy period**.

### S. Extortion Threats

If Extortion Threats Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **Insured**, **loss** resulting directly from an **extortion threat** communicated to you during the **policy period**.

However, the **insurance organization** will not pay for **extortion expenses** or **ransom payments** which are part of a series of related threats that began prior to the policy period.

**T. Business Income and Extra Expense**

If Business Income and Extra Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured, loss** due to an **interruption** resulting directly from an **e-commerce incident** sustained during the **policy period** or an **extortion threat** communicated to you during the **policy period**.

**U. Public Relations Expense**

If Public Relations Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** due to **negative publicity** resulting directly from an **e-commerce incident** or a **security breach** sustained during the **policy period**.

**V. Security Breach Expense**

If Security Breach Expense Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall pay on behalf of any **insured**, **loss** resulting directly from a **security breach** sustained during the **policy period**.

---

### Additional Definitions for Insuring Agreements O - V

---

**Business Income:**

**Business income** means the:

a.  Net income (net profit or loss before income taxes) that would have been earned or incurred; and

b.  Continuing normal operating expenses incurred, including payroll.

**Claim:**

**Claim** means:

a.  A written demand for monetary damages; or

b.  A civil proceeding commenced by the service of a complaint or similar proceeding,

against any **insured** for a **wrongful act**, including any appeal there from.

**Computer Program:**

**Computer program** means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enables the computer or devices to receive, process, store or send **electronic data**.

**Computer System:**

**Computer system** means the following, and is limited to **computer systems** which are owned by you or which are licensed or leased to you by a Service Provider shown in the Declarations:

a.  Computers, including Personal Digital Assistants (PDA's) and other transportable or hand-held devices, electronic storage devices and related peripheral components;

b.  Systems and applications software; and

c.  Related communications networks,

by which **electronic data** is collected, transmitted, processed, stored or retrieved.

**E-Commerce Activities:**

**E-commerce activities** means those activities conducted by you in the normal conduct of your business via your website and your e-mail system.

**E-Commerce Incident:**

**E-commerce incident** means a:

a.  **Virus**;

b.  Malicious code; or

c.  Denial of service attack,

introduced into or enacted upon the **computer system** (including **electronic data**) or a network to which it is connected, that is designed to damage, destroy, delete, corrupt or prevent the use of or access to any part of the **computer system** or otherwise disrupt its normal operation.

Recurrence of the same **virus** after the **computer system** has been restored shall constitute a separate **e-commerce** incident.

**Electronic Data:**

**Electronic data** means digital information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on electronic storage devices including, but not limited to, hard or floppy disks, CD-ROMs, tapes, drives, cels, data processing devises or any other media which are used with electronically-controlled equipment. **Electronic data** is not tangible property.

**Electronic data** does not include your **electronic data** that is licensed, leased, rented or loaned to others.

**Extortion Expenses:**

**Extortion expenses** means:

a.  Fees and costs of:

1) A security firm; or

2) A person or entity hired with our consent to determine the validity and severity of an **extortion threat** made against you. Such consent will not be unreasonably withheld.

b.  Interest costs paid by you for any loan from a financial institution taken by you to pay a ransom demand;

c.  Reward money paid by you to an **informant** which leads to the arrest and conviction of parties responsible for **loss**; and

d.  Any other reasonable expenses incurred by you with our written consent, including:

a.  Fees and costs of independent negotiators; and

b.  Fees and costs of a company hired by you, upon the recommendation of the security firm, to protect your **electronic data** from further threats made by the same person(s).

**Extortion Threat:**

**Extortion threat** means a threat or series of related threats:

a.  To perpetrate an **e-commerce incident**;

b.  To disseminate, divulge or utilize:

1) Your proprietary information; or

2) Weaknesses in the source code,

within the **computer system** by gaining unauthorized access to such **computer system**.

c.  To destroy, corrupt or prevent normal access to the **computer system** by gaining unauthorized access to such **computer system**;

d.  To inflict **ransomware** on the **computer system** or a network to which it is connected; or

e.  To publish your client's **personal information**.

**Extra Expense:**

**Extra expense** means necessary expenses you incur:

a.  During an **interruption** that you would not have incurred if there had been no **interruption**; or

b.  To avoid or minimize the suspension of your **e-commerce activities**.

**Extra expense** does not include any costs or expenses associated with upgrading, maintaining, improving, repairing or remediating any **computer system**.

**Informant:**

**Informant** means a person, other than an **employee**, providing information not otherwise obtainable, solely in return for a reward offered by you.

**Interruption:**

**Interruption** means:

a. With respect to an **e-commerce incident**:

1) An unanticipated cessation or slowdown of your **e-commerce activities**; or

2) Your suspension of your **e-commerce activities** for the purpose of avoiding or mitigating the possibility of transmitting a **virus** or malicious code to another,

and, with regard to Paragraphs **1.a.** and **1.b.**, is deemed to begin when your **e-commerce activities** are interrupted and ends at the earliest of:

   a) 90 days after the **interruption** begins;

   b) The time when your **e-commerce activities** are resumed; or

   c) The time when service is restored to you.

b. With respect to an **extortion threat**, your voluntary suspension of your **e-commerce activities**:

1) Based upon clear evidence of a credible threat; or

2) Based upon the recommendation of a security firm, if any,

and, with regard to Paragraphs **2.a.** and **2.b.**, is deemed to begin when your **e-commerce activities** are interrupted and ends at the earliest of:

   a) 14 days after the **interruption** begins;

   b) The time when your **e-commerce activities** are resumed; or

   c) The time when service is restored to you.

**Loss:**

**Loss** means:

a. With respect to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability:

Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

**Loss** does not include:

1) Civil or criminal fines or penalties imposed by law;

2) Punitive or exemplary damages;

3) The multiplied portion of multiplied damages;

4) Taxes;

5) Royalties;

6) Nonmonetary or injunctive relief;

7) The amount of any disgorged profits; or

8) Matters that are uninsurable pursuant to applicable law.

b. With respect to Insuring Agreement: Replacement or Restoration of Electronic Data:

The cost to replace or restore **electronic data** or **computer programs**, as well as the cost of data entry, reprogramming and computer consultation services.

**Loss** does not include the cost to duplicate research that led to the development of your **electronic data** or **computer programs**. To the extent that any **electronic data** cannot be replaced or restored, we will pay the cost to replace the media on which the **electronic data** was stored with blank media of substantially identical type.

c. With respect to Insuring Agreement: Extortion Threats:

**Extortion expenses** and **ransom payments**.

d. With respect to Insuring Agreement: Business Income and Extra Expense:

The actual loss of **business income** you sustain and/or **extra expense** you incur.

e. With respect to Insuring Agreement: Public Relations Expense:

**Public relations expenses**.

 © Coaction Specialty Insurance Group, Inc.

f.    With respect to Insuring Agreement: Security Breach Expense:

**Security breach expenses**.

**Negative Publicity:**

**Negative publicity** means information which has been made public that has caused, or is reasonable likely to cause, a decline or deterioration in the reputation of the **Insured Organization** or of one or more of its products or services.

**Personal Information:**

**Personal information** means any information collected by the **insured** in the normal conduct of its business that is required by law to be protected from public disclosure.

**Public Relations Expenses:**

**Public relations expenses** means:

a.    Fees and costs of a public relations firm; and

b.    Any other reasonable expenses incurred by you with our written consent,

to protect or restore your reputation solely in response to **negative publicity**.

**Ransom Payment:**

**Ransom payment** means a payment made in the form of cash.

**Ransomware:**

**Ransomware** means any software that encrypts **electronic data** held within the **computer system** and demands a **ransom payment** in order to decrypt and restore such **electronic data**.

**Security Breach:**

**Security breach** means:

1.    The acquisition of **personal information** held within the **computer system** or otherwise by a person who is not authorized to have access to such information; or

2.    The acquisition of **personal information** held within the **computer system** or otherwise by a person authorized to have access to such information but which results in the unauthorized disclosure of such information.

**Security Breach Expenses:**

**Security breach expenses** means:

a.    Costs to notify all parties affected by a **security breach**;

b.    Overtime salaries paid to **employees** assigned to handle inquiries from parties affected by a **security breach**;

c.    Fees and costs of a company hired by you for the purpose of operating a call center to handle inquiries from parties affected by a **security breach**;

d.    Post event credit monitoring costs for victims of a **security breach** for up to one year from the date of the **security breach**; and

e.    Any other reasonable expenses incurred by you with our written consent.

**Security breach expenses** do not include any costs or expenses associated with upgrading, maintaining, improving, repairing or remediating any **computer system** as a result of a **security breach**.

**Suit:**

**Suit** means a civil proceeding in which damages to which this policy applies are claimed against the **insured**.  **Suit** includes:

a.    An arbitration proceeding in which such damages are claimed and to which the **insured** submits with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent.

**Suit** does not include a civil proceeding seeking recognition and/or enforcement of a foreign money judgment.

**Virus:**

**Virus** means any kind of malicious code designed to damage or destroy any part of the **computer system** (including **electronic data**) or disrupt its normal functioning.

**Wrongful Act:**

**Wrongful act** means:

a.  With respect to Insuring Agreement: Website Publishing Liability:

Any actual or alleged error, misstatement or misleading statement posted or published by an **insured** on its website that results in:

1)  An infringement of another's copyright, trademark, trade dress or service mark;

2)  Any form of defamation against a person or institution; or

3)  A violation of a person's right of privacy.

b.  With respect to Insuring Agreement: Security Breach Liability:

Any actual or alleged neglect, breach of duty or omission by an **insured** that results in:

1)  A **security breach**; or

2)  A **computer system** transmitting, by e-mail or other means, a **virus** to a third party.

c.  With respect to Insuring Agreement: Programming Errors and Omissions Liability:

Any actual or alleged programming error or omission that results in the disclosure of your client's **personal information** held within the **computer system**.

## Additional Exclusions for Insuring Agreements O - V

We will not be liable for **loss** or **defense costs**:

1.  Based upon, attributable to or arising out of lightning, earthquake, hail, volcanic action or any other act of nature.

2.  Based upon, attributable to or arising out of:

a.  War, including undeclared or civil war or civil unrest;

b.  Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.  Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

3.  Based upon, attributable to or arising out of bodily injury or physical damage to or destruction of tangible property, including loss of use thereof.

Bodily injury includes bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  Based upon, attributable to or arising out of an unexplained or indeterminable failure, malfunction or slowdown of the **computer system**, including **electronic data** and the inability to access or properly manipulate the **electronic data**.

5.  Based upon, attributable to or arising out of an **interruption** in normal computer function or network service or function due to insufficient capacity to process transactions or due to an overload of activity on the **computer system** or network.  However, this exclusion does not apply if such **interruption** is caused by an **e-commerce incident**.

6.  Based upon, attributable to or arising out of a complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause.

7.  Based upon, attributable to or arising out of the failure, reduction in or surge of power.

8.  Based upon, attributable to or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and its amendments, or similar provisions of any federal, state or local statutory or common law.

9.  Based upon, attributable to or arising out of the malfunction or failure of any satellite.

 © Coaction Specialty Insurance Group, Inc.

10. Based upon, attributable to or arising out of an injury caused by an **insured** or at an **insured's** direction with the knowledge that the act would violate the rights of another.

11. Based upon, attributable to or arising out of an oral or written publication of material, if done by an **insured** or at an **insured's** direction with knowledge of its falsity.

12. Based upon, attributable to or arising out of an **insured's** assumption of liability by contract or agreement, whether oral or written. However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of such contract or agreement.

13. Based upon, attributable to or arising out of any actual or alleged patent or trade secret violation, including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996 or the Uniform Trade Secrets Act and their amendments.

14. Based upon, attributable to or arising out of costs, fees or other expenses you incur in establishing either the existence or the amount of **loss** covered under this policy.

15. Based upon, attributable to or arising out of any action by a governmental authority, including the seizure or destruction of property by order of governmental authority. However, this exclusion shall not apply to actions brought by governmental authority acting solely in its capacity as a customer of the **insured organization** or one of its **subsidiaries**.

16. Based upon, attributable to or arising out of any action by a governmental or quasi-governmental authority or agency, including, but not limited to, regulatory actions brought against you on behalf of the Federal Trade Commission, Federal Communications Commission or other regulatory agency. However, this exclusion shall not apply to action brought by governmental authority acting solely in its capacity as a customer of the **insured organization** or one of its **subsidiaries**.

17. Based upon, attributable to or arising out of costs associated with upgrading or improving the **computer system** regardless of the reason for the upgrade.

18. Based upon, attributable to or arising out of **claims** brought or alleged by one **insured** against another.

19. Based upon, attributable to or arising out of unintentional errors or omissions in the entry of **electronic data** into the **computer system**.

## Additional Conditions for Insuring Agreements O – V

### Deductibles and Limits of Liability

1. Under Insuring Agreement: Replacement or Restoration of Electronic Data, Extortion Threats, Public Relations Expense and Security Breach Expense:

   Definition of **loss** does not include defense costs.

2. Under Insuring Agreement: Business Income and Extra Expense

   The **Insurance Organization** will pay only the amount of **loss** which exceeds the greater of:

   a. The Deductible Amount shown in the Declarations; or

   b. The amount of **loss** incurred during the Waiting Period shown in the Declarations.

3. In the event a **loss** is covered under more than one Insuring Agreement only the highest Deductible Amount applicable to the **loss** shall be applied.

### Defense and Settlements

The provisions contained within this section apply only to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability.

**Coverage Extensions**

### Estates and Legal Representatives

In the event an **insured person** is deceased, incompetent, insolvent or bankrupt, **insured person** shall also include estates, heirs, legal representatives or assigns of an **insured person**.

### Extended Reporting Period

If the **insured organization** or the **insurance organization** terminates, cancels or does not renew this Policy for any reason, other than for nonpayment of premium, the **insured organization** shall have the right, upon payment of the additional premium shown in Item 5. on the Declarations, to extend coverage granted by this Policy for an amount of time shown in Item 5. on the Declarations following the effective date of termination, cancellation or nonrenewal. However, the extended coverage provided shall only apply to **wrongful acts** occurring prior to the effective date of termination, cancellation or nonrenewal. The right to purchase the Extended Reporting Period shall cease unless written notice to elect this extension of coverage along with the additional premium due is received by the **insurance organization** within 30 days following the effective date of termination, cancellation or nonrenewal. Any **claim** first made during the Extended Reporting Period shall be deemed to have been made during the **policy period** immediately preceding the effective date of termination, cancellation or nonrenewal.

If the Extended Reporting Period is elected, all premium shall be deemed fully earned at the effective date of termination, cancellation or nonrenewal.

### Spouse and Domestic Partner Liability

The **insurance organization** shall pay for **loss** that a present or former spouse or **domestic partner** of an **insured person** is legally obligated to pay as a result of any **claim** first made during the **policy period** against such spouse or **domestic partner** that is:

a.  Based upon an alleged **wrongful act** by the **insured person** for which coverage is provided to the **insured person** under this Policy; and

b.  Based solely upon their status as a spouse or **domestic partner**.

The Spouse and Domestic Partner Liability Coverage Extension does not apply to the extent that the **claim** alleges any **wrongful act** committed or attempted by the **insured person's** spouse or **domestic partner**.

## Exclusions

With respect to any insuring agreement provided in this Policy, the **insurance organization** shall not be liable to make any payment:

1.  For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any deliberate dishonest, fraudulent, intentional or willful misconduct or act, or any willful or intentional violation of any law, statute or regulation, by an **insured**, if a final judgment, order, decree or other determination establishes that such misconduct, act or violation was committed by the **insured**.

2.  For **loss** related to any **claim** brought or maintained by or on behalf of any **insured** in any capacity, except a **claim**:

a.  That is a derivative action brought or maintained on behalf of the **insured organization** by one or more persons who are not **insured persons** and who bring and maintain such **claim** without the instigation, solicitation, assistance or active participation of any **insured person**;

b.  Brought or maintained by any natural person who was a **director or officer**, but who has not served as a **director or officer** for at least 4 years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the instigation, solicitation, assistance or active participation of any **director or officer** who is serving as a **director or officer** or was serving as a **director or officer** within such 4-year period;

c.  Brought or maintained by or on behalf of any **insured person** for any **wrongful employment practices liability act** or **wrongful FLSA act**;

d.  Brought or maintained by any **insured person** for contribution or indemnity for a **wrongful act**;

e.  Brought or maintained by or on behalf of any **insured person** for a **wrongful fiduciary liability act**;

f.  Brought or maintained by or on behalf of any **insured person** solely in his or her capacity as a customer or borrower of the **insured organization** for a **wrongful professional liability act**, provided that such **claim** is totally without the instigation, solicitation, assistance, involvement or participation of any other **insured person**;

g. Brought by a bankruptcy trustee or examiner of the **insured organization**, or any assignee of such bankruptcy trustee, examiner, receiver, conservator, rehabilitator, or liquidator or comparable authority of the **insured organization**; or

h. Brought by an **employee** pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

3. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any act, error, omission, neglect or breach of duty by an **insured person** while serving as an employee, director or volunteer of, or in any other capacity for, any entity other than the **insured organization** regardless of whether such service was undertaken, or such act, error, omission, neglect or breach of duty was committed, at the request or direction of the **insured organization** or any other person or entity.

4. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from actual, threatened or alleged:

   a. **Pollution or contamination** of any **environment** by **pollutants** or seepage of **pollutants** that are introduced at anytime, anywhere, in any way;

   b. Discharge, dispersal, release or escape of **pollutants**;

   c. Costs or other **loss** or damage arising out of **pollution or contamination** or seepage, including but not limited to cleaning up, remedying, testing, monitoring, containing, treating, detoxifying and neutralizing such **pollution or contamination**, seepage or **pollutants**, whether occasioned by governmental direction, request, demand or order, or otherwise;

   d. Nuclear reaction, radiation or radioactive contamination; or

   e. Costs or other **loss** or damages arising from the investigation or defense of any lawsuit, administrative or criminal proceedings, or other action or proceedings related to any of the above.

   Provided, however, this exclusion shall not apply to:

   a. Individual Insuring Agreement in the Management Liability Insuring Agreement for a **wrongful management liability act**; or

   b. Employment Practices Insuring Agreement for a **wrongful employment practices liability act** based upon retaliation against the claimant for an actual or alleged refusal to violate any federal, state or local statutory law or common law,

   related to paragraphs a., b., c. or d. above.

5. For the portion of **loss** related to amounts for which an **insured** is entitled to any coverage under any insurance policy for which this Policy is a direct or indirect renewal or replacement.

6. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the assertion of subrogation or recovery rights by or on behalf of any fidelity bonding company or fidelity insurer.

7. For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from any **insured** gaining in fact any profit, unjust enrichment, remuneration or advantage that such **insured** was not legally entitled.

## Conditions

1. **Allocation**

   If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

   If there is an agreement on an allocation of **defense costs**, the **insurance organization** shall pay on behalf of the **insureds**, the covered portion of **defense costs** that the **insureds** have incurred in connection with such **claim** and that are allocated to covered **loss**.

   If there is no agreement on an allocation of such **defense costs**, the **insurance organization** shall advance **defense costs** that the **insurance organization** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined.  Any advancement of **defense costs** shall be subject to, and

conditioned upon, receipt by the **insurance organization** of a written agreement by the **insureds** that such advanced amounts shall be repaid to the **insurance organization** by the **insureds**, severally for **insured persons** according to their respective interests, and jointly for the **insured organization**, including uncollectible amounts from **insured persons**, if and to the extent that such **defense costs** are not covered under this Policy.

Any negotiated, arbitrated or judicially determined allocation of **defense costs** incurred in connection with a **claim** shall be applied retroactively to all **defense costs** incurred in connection with such **claim**, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **defense costs** incurred in connection with a **claim** shall not apply to or create any presumption with respect to the allocation of other **loss** as a result of such **claim** or any other **claim**.

If **loss** arising from a single **claim** is incurred and covered under more than one insuring agreement made part of this Policy, such **loss** shall be allocated to each applicable insuring agreement based upon the relative legal and financial exposures of the parties to covered and uncovered matters.  To the extent such allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable insuring agreement in the following order:

a. Employment Practices Liability Insuring Agreement;

b. Any Professional Liability Insuring Agreement;

c. Entity Insuring Agreement in the Management Liability Insuring Agreement;

d. Reimbursement Insuring Agreement in the Management Liability Insuring Agreement;

e. Individual Insuring Agreement in the Management Liability Insuring Agreement;

f. Fiduciary Liability Insuring Agreement; then

g. Any other insuring agreements under this Policy.

2. **Changes in Exposure**

a. Acquisition or Creation of Another Organization

If before or during the **policy period** the **insured organization** acquires an interest in another organization:

1) Or creates another organization, that as a result of such acquisition or creation becomes a **subsidiary**; or

2) By merger or consolidation, such that the **insured organization** is the surviving entity,

then such other organization, including their equivalent **insured persons** and **insured plans**, shall become an **insured** under this Policy, but only with respect to **wrongful acts** occurring subsequent to such acquisition, creation, merger or consolidation.

If the total assets of any such acquired, created, merged or consolidated **subsidiary** or its total benefit plans exceed 35% of the total assets of the **insured organization** or its **insured plans**, respectively (as reflected in each of the most recent annual consolidated financial statements or similar written confirmation of total assets), the **insured organization** shall give written notice of such acquisition, creation, merger or consolidation to the **insurance organization**, and any additional information requested by the **insurance organization**, as soon as practicable, but in no event later than 60 days after the date of such acquisition, creation, merger or consolidation. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request for such additional premium.  If the **insured organization** fails to provide written notice to the **insurance organization** of such acquisition, creation, merger or consolidation of or into such organization, or any additional information requested by the **insurance organization**, or fails to pay the required additional premium, then coverage for such organizations shall cease as of the date of such acquisition, creation, merger or consolidation.

b. Acquisition of Insured Organization by Another Organization

If during the **policy period**:

1) The **insured organization** merges into, consolidates with, or is acquired by another organization so that the **insured organization** is not the surviving entity; or

2) Another organization, group of organizations, person or persons acting collectively acquires, directly or indirectly, in any combination:

a) More than 50% of the outstanding voting securities representing the present right to vote for election of directors of the **insured organization**;

b) And only if the **insured organization** is a non-profit entity, the right to elect or otherwise appoint more than 50% of the **insured organization's** directors or trustees; or

c) Any only if the **insured organization** is a limited liability company, the right to elect or otherwise appoint or designate more than 50% of the **insured organization's** managers; or

3) The **insured organization** ceases to actively engage in its primary business,

then coverage shall continue until the end of the **policy period**, but only with respect to **claims** for **wrongful acts** occurring before any transaction or event described in paragraphs a., b. or c. above. The premium shall be deemed fully earned at inception upon completion of any transaction or event described in paragraphs a., b. or c. above.

c.  Cessation of a Subsidiary

If before or during the **policy period** an organization ceases to be a **subsidiary**, then coverage with respect to such **subsidiary**, including their equivalent **insured persons** and **insured plans**, shall continue until the end of the **policy period**, but only in connection with **claims** for **wrongful acts** occurring while such organization was a **subsidiary**.

d.  Change in Insured Organization

If the **insured organization** is a non-profit entity and, if during the **policy period** the **insured organization** experiences a change in taxation status, by losing its federal income tax exempt status under 26 U.S.C.A §501(c) of the Internal Revenue Code of 1986 (IRC), for any reason, the **insured organization** shall give written notice of such change in taxation status to the **insurance organization** as soon as practicable, but in no event later than 30 days after the date of such change in taxation status. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request for such additional premium. If the **insured organization** fails to provide written notice to the **insurance organization** of such change in taxation status, or fails to pay the required additional premium, then coverage shall continue for the **insureds** until the end of the **policy period**, but only with respect to **wrongful acts** occurring prior to such change in taxation status.

If the **insured organization** is a financial institution and is chartered with any state, local or federal body, and if during the **policy period** the **insured organization** converts or loses its charter for any reason, the **insured organization** shall give written notice of such change in charter to the **insurance organization** as soon as practicable, but in no event later than 30 days after the date of such change in charter. The **insured organization** shall also provide any requested additional premium required by the **insurance organization** within 30 days of request. If the **insured organization** fails to provide written notice to the **insurance organization** of such change in charter, or fails to pay the required additional premium, then coverage shall continue for the **insureds** until the end of the **policy period**, but only with respect to **wrongful acts** occurring prior to such change in charter.

Except where further bankruptcy relief may require, the bankruptcy or insolvency of any of the **insureds** shall not relieve the **insurance organization** of any obligation under this Policy.

## 3.  Claims Reporting

For the purposes of this Policy, all **claims**, including any **claims** made during an Extended Reporting Period, arising out of the same **wrongful act** and all **interrelated wrongful acts** of the **insureds** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them, regardless of whether such date is before or during the **policy period**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of **claim**:

a.  The name of the claimant;

b.  The names of the **insureds** whose **wrongful acts** are involved in the **claim**;

c.  The date of the alleged **wrongful acts**; and

d.  A copy of any written demand, summons, complaint, lawsuit or legal notice comprising or giving notice of the **claim**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide to the **insurance organization** such other information and cooperation as the **insurance organization** may reasonably request.

If during the **policy period** or, if elected, the Extended Reporting Period, the **insureds** become aware of circumstances that could give rise to a **claim** for a **wrongful act** taking place before or during the **policy period** and give written notice of such circumstances and other information as reasonably requested by the **insurance organization**, then any **claims** subsequently arising from such circumstances shall be considered to have been made during the **policy period** or, if elected, the Extended Reporting Period in which such notice of such circumstances and such other information was first provided to the **insurance organization**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of circumstance:

a.  A description, including the date, of the alleged **wrongful act**;

b.  The nature of the potential **loss**; and

c.  The names of the potential claimants and **insureds** involved.


All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.  Notice to the **insurance organization** of any **claim** or circumstance shall be submitted to:

Coaction Specialty Insurance Group, Inc.
Attention: Claims Department
412 Mt. Kemble Avenue
Morristown, NJ  07960
-Or-
By email: claims@coactionspecialty.com

**4.  Conformity with Laws**

If any term of this Policy, as written or applied, is found to be invalid under the law of any jurisdiction, then:

a.  If permitted under such law, that term will be considered amended only to the extent necessary to conform with such law;

b.  Such invalidity will not affect the validity of that term in any other jurisdiction; and

c.  Such invalidity will not affect the validity of any other term of this Policy in that or any other jurisdiction.


**5.  Deductibles and Limits of Liability**

a.  Deductibles

The **insurance organization's** liability with respect to **loss** arising from each **claim** shall apply only to that part of **loss** that is excess of the applicable deductible shown in Item 3. (B) on the Declarations.

If **loss** arising from a single **claim** is subject to more than one deductible, the applicable deductible shall be applied separately to each part of such **loss**, but the largest applicable deductible shall be the maximum deductible applicable to all **loss** arising from such single **claim**.  If a single deductible applies to multiple **insureds**, the deductible shall be pro-rated among such **insureds**.

b.  Limits of Liability

For all insuring agreements included in this Policy as shown in Item 3. (A) on the Declarations that are made part of the Policy Annual Aggregate Limit of Liability shown in Item 3. (C) on the Declarations, the Policy Annual Aggregate Limit of Liability shown in Item 4. on the Declarations is the maximum amount the **insurance organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period.

For each coverage included in this Policy as shown in Item 3. (A) on the Declarations, the coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations is the maximum amount the **insurance organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, under each applicable coverage.

For all selected Management Liability Coverage, the maximum amount the **insurance organization** shall be liable to pay is the amount provided in the Management Liability Coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, under all Management Liability Coverage.

For each selected Additional Insured included in this Policy, as shown in Item 6. (A) on the Declarations, that is subject to an Annual Aggregate Sub-Limit of Liability shown in Item 6. (B) on the Declarations, the Annual Aggregate Sub-Limit of Liability shown in Item 6. (C) on the Declarations is the maximum amount the **insurance**

**organization** shall be liable to pay for all **loss** resulting from all **claims** first made during the **policy period** or, if elected, the Extended Reporting Period, for **claims** made against the applicable Additional Insured. Any Annual Aggregate Sub-Limit of Liability for any Additional Insureds is part of and not in addition to the respective Coverage Annual Aggregate Limit of Liability as shown in Item 3. (A) on the Declarations.

**Defense costs** shall be part of, and not in addition to, any limit of liability shown on the Declarations, and **defense costs** shall reduce and may exhaust such limit of liability.

If **loss** arising from a single **claim** is covered under more than one coverage or enhanced coverage made part of this Policy, the applicable limit of liability shall apply separately to each part of such **loss**.

The **insurance organization's** obligations for all **claims** first made during the **policy period** against the **insureds**, under each coverage or enhanced coverage made part of this Policy, shall cease once the applicable limit of liability has been exhausted by payment of **loss**.

Any limit of liability for the Extended Reporting Period, if elected, shall be part of, and not in addition to, the applicable limit of liability for the **policy period** immediately preceding the elected Extended Reporting Period. The purchase of the Extended Reporting Period shall not increase or reinstate any applicable limit of liability for the **policy period** immediately preceding the Extended Reporting Period.

All limits of liability made part of this Policy apply separately to each consecutive annual period during the **policy period** and to any remaining period of less than 12 months, starting with the beginning of the **policy period**, unless the **policy period** is extended after the first day of the **policy period** for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the applicable limits.

## 6. Defense and Settlements

a. The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this Policy without the **insurance organization's** written consent, which shall not be unreasonably withheld. The **insurance organization** shall not be liable for any **loss** based upon settlement, **defense costs**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to that it has not consented.

b. The **insurance organization** shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conduct its investigation or to reach a settlement of the **claim**. The **insureds** agree that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery.

c. The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable. If the **insured organization** withholds consent to such settlement, the **insurance organization** liability for all **loss** arising from such **claim** shall not exceed the total of:

1) The amount for which the **insurance organization** could have settled such **claim**; plus

2) **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

3) 70% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

4) 70% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

5) Any applicable deductible.

d. Any amounts paid by the **insurance organization** under paragraphs a., b. or c. above shall be part of and not in addition to the applicable limits of liability shown on the Declarations. The **insurance organization** and the **insureds** shall not unreasonably withhold any consent referenced in this Defense and Settlements Condition.

e. The **insurance organization** shall have the right to appeal any judgment with respect to any **claim** covered, in whole or in part, by this Policy, and the expense of appealing such judgment shall be part of **defense costs**.

f. The **insurance organization** shall have the right and duty to select defense counsel and defend any **claim** covered under this Policy. The **insurance organization's** duty to defend **claims** shall apply even if any of the allegations are groundless, false or fraudulent, but shall only obligate the **insurance organization** to pay **defense costs**.

**7. Insured Organization Rights and Obligations**

The **insured organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **insured** with respect to:

a. The payment of premiums and the receiving of any return premiums that become due under this Policy;

b. The negotiation, agreement to and acceptance of endorsements made part of this Policy;

c. The giving or receiving of any notice provided for in this Policy;

d. The adjustment of **loss** amounts; and

e. The receipt or enforcement of payment of **loss** (and the **insured organization** further agrees that it shall be responsible for application of any such payment as provided in the Policy).

Each **insured** agrees that the **insured organization** shall act on its behalf with respect to such matters.

**8. Legal Action Against Insurance Organization**

a. Legal action against the **insurance organization** under this Policy may not be brought by any person or entity unless:

　1) There has been full compliance with all the terms of this Policy; and

　2) The **insureds'** obligation to pay has finally been determined:

　　a) By final judgment; or

　　b) In a written agreement executed by the **insureds**, the claimant and the **insurance organization**.

b. A person or entity does not have the right under this Policy to join the **insurance organization** as a party to any action or proceeding that a **claim** against the **insureds** is being asserted.

**9. Modification of Policy Terms**

This Policy contains all of the agreements between the **insurance organization** and the **insureds** concerning the coverage provided. The Policy terms can be modified only by written endorsement issued by the **insurance organization** and made a part of this Policy.

**10. Non-Assignment**

Neither this Policy nor any rights under this Policy can be assigned without the written consent of the **insurance organization**.

**11. Other Insurance**

The coverage provided under this Policy is excess over any other valid and collectible insurance or bond coverage that applies or would have applied in the absence of this Policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the coverage provided in this Policy.

Any payment by an **insured** of a deductible (or retention) under such other insurance shall reduce, if such loss would otherwise be covered **loss** under this Policy, by the amount of such payment, the applicable deductible under the coverage.

**12. Presumptive Indemnification**

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insured organization** agrees to indemnify all **insured persons** for all **loss** to the fullest extent permitted by law. The **insured organization** shall also take all steps necessary or allowable to provide such indemnification.

**13. Priority of Payments**

a. If payment is due and owed under this Policy for **loss**, and such **loss** together with any prior payments of **loss**, exceeds the applicable limit of liability, the **insurance organization** shall be liable to pay such **loss** subject to the remaining applicable limit of liability in the following priority:

　1) First, the **insurance organization** shall pay on behalf of any **insured person** for **loss** as a result of a **claim**; and

　2) Second, only if and to the extent the payment under paragraph a. above does not exhaust the applicable limit of liability, the **insurance organization** shall pay any other **loss** covered by this Policy.

b. The parties agree that any other **insured**, including any bankruptcy trustee, debtor-in-possession or any other successor of the **insured organization**, shall have no interest in or claim for any payments under this Policy until all **claims** against all **insured persons** have been fully and finally resolved and all payments for such **loss** covered under the Policy have been made.

**14. Rights to Recover from Others**

If the **insureds** have rights to recover all or part of any **loss** for which the **insurance organization** has made payment under this Policy, those rights are transferred to the **insurance organization**. The **insureds** must do everything necessary to secure and protect those rights. The **insureds** must not do anything to impair those rights. At the **insurance organization's** request, the **insureds** shall bring suit or transfer those rights to **insurance organization** and cooperate with the **insurance organization** in the enforcement of those rights.

**15. Severability of Application**

In providing coverage under this Policy, the **insurance organization** has relied upon the statements and representations included in the **application**, and all such statements and representations are material to the acceptance of risk. The **insureds** represent that all such statements and representations are true. This Policy is issued in reliance upon the **application**.

If any such statements and representations are untrue, this Policy shall not afford any coverage with respect to any of the following **insureds**:

a. Any **insured person** who knew the facts that were not truthfully disclosed in the **application**;

b. Under the Reimbursement Coverage in the Management Liability Coverage, the **insured organization** to the extent that it indemnifies an **insured person** referenced in paragraph a. above;

c. The **insured organization**, if the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Council, Risk Manager, Human Resource Manager, or any equivalent position knew the facts that were not truthfully disclosed in the **application**; or

d. The **insured plan**, under the Fiduciary Liability Coverage, if the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Counsel, Risk Manager, Human Resource Manager, or any equivalent position knew the facts that were not truthfully disclosed in the **application**,

whether such **insured person** knew of any untruthful statements or misrepresentations in the **application**.

**16. Severability of Exclusions**

No fact pertaining to or knowledge possessed by any **insured person** shall be imputed to any other **insured person** for purposes of applying all exclusions made part of this Policy. Only facts pertaining to or knowledge possessed by the Chairman of the Board, Chief Executive Officer, President, Chief Financial Officer, General Counsel, Risk Manager, Human Resource Manager, or any equivalent position, shall be imputed to the **insured organization** or **insured plan** for purposes of applying any exclusion made part of this Policy.

**17. Territory**

Coverage under this Policy applies in all parts of the world.

**18. Valuation and Foreign Currency**

All premiums, limits, deductibles, **loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or any element of **loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or any part of the **loss** is due.

**19. Nonrenewal**

If the **insurance organization** does not renew this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of nonrenewal stating the effective date and the reason for nonrenewal. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**. If this notice is mailed, proof of mailing shall be sufficient proof of notice. Nonrenewal is effective 60 days after the **insurance organization** mails or delivers notice of nonrenewal.

**20. Termination and Cancellation**

a. This Policy terminates in its entirety upon the expiration of the **policy period**.

b. The **insured organization** may cancel this Policy during the **policy period** by mailing or delivering written notice of cancellation to the **insurance organization**. The unearned premium shall be refunded less than pro rata if this Policy is canceled as provided in this paragraph.

c. The **insurance organization** may cancel this Policy during the **policy period** for nonpayment of premium. If the **insurance organization** cancels this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of cancellation stating the effective date and the reason for cancellation. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**. If the notice is mailed, proof of mailing shall be sufficient proof of notice. Cancellation is effective 10 days after the **insurance organization** mails or delivers notice of cancellation.

## Definitions

**Application:**

**Application** means all materials submitted for this Policy or for any policy that this is a renewal or replacement. **Application** also includes any financial statements, annual reports, proxies, bylaws or any description of corporate governance and business practices that are made available by the **insured organization** or publicly available through any regulatory body or the **insured organization's** website, prior to the start of the **policy period**. All such materials are deemed attached to and incorporated into this Policy.

**Claim:**

**Claim** means any of the following, for any **wrongful act**, including any appeal therefrom:

a. A written demand to any **insured** for monetary damages or legal or equitable non-monetary relief;

b. A civil proceeding brought against any **insured** commenced by the service of a complaint or similar pleading;

c. A criminal proceeding against any **insured person** commenced by the return of an indictment or information;

d. A formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, including proceedings before the Equal Employment Opportunity Commission or similar state or federal agency against any **insured**;

e. A written request to participate in an arbitration, mediation or other alternative dispute resolution proceeding if an **insured** is obligated to participate in such proceeding or if an **insured** agrees to participate in such proceeding, with the **insurance organization's** written consent;

f. A written request to any **insured** to toll or waive a statute of limitations.

g. Solely with respect to a **wrongful fiduciary liability act**, any fact-finding investigation of any **insured** by the United States Department of Labor or the United States Pension Benefit Guaranty Corporation; or

h. Solely with respect to a **wrongful employment practices liability act**, a written demand for reinstatement, re-employment or re-engagement.

**Defense Costs:**

**Defense costs** means reasonable attorneys' fees, experts' fees, arbitrators' fees or mediators' fees and expenses, to which the **insurance organization** has consented and that are incurred after notice is provided in compliance with the Claims Reporting Condition and, as a direct result of defending a **claim**, including any appeals and the premium for any attachment, appeal or other similar bonds.

Provided, however, **defense costs** does not include:

a. Wage, salary, benefit or overhead expenses of an **insured**;

b. Any attorneys' fees, disbursements, costs or expenses incurred in connection with an affirmative claim by or on behalf of an **insured** including counterclaims, cross-claims or third-party claims, except for claims for contribution or indemnity asserted with the **insurance organization's** consent against persons or parties not insured under this Policy; or

c. Amounts that are incurred in connection with providing any collateral that may be required for obtaining any appeal bond, or other similar bond or any obligation to provide such collateral.

**Director Or Officer:**

**Director or officer** means:

a.  Any natural person who was, is now or becomes in the future a duly elected or appointed officer, director, member of the board of managers, or management committee of the **insured organization**;

b.  With respect to a **subsidiary** incorporated or chartered outside the United States of America, any natural person who was, is now or becomes in the future in a position that is the functional equivalent of any duly elected or appointed officer or director of that **subsidiary**;

c.  With respect to any **insured organization** that is a non-profit entity, any natural person who was, is now or becomes in the future a duly elected or appointed officer, director, member of the audit committee, member of the supervisory committee or trustee;

d.  Only with respect to Fiduciary Liability Coverage made part of this Policy, any natural person who was, is now or becomes in the future a duly elected or appointed trustee, officer or director of any **insured plan**.

**Domestic Partner:**

**Domestic partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal written program established by the **insured organization**.

**Employee:**

**Employee** means any natural person, other than a **director or officer**, **leased employee**, **volunteer** or **independent contractor**, whether their employment status is full-time, part-time, temporary or seasonal, who:

a.  Has provided, is providing, or seeks to provide in the future labor or service within the scope of the performance of their assigned duties at the direction of the **insured organization** in the conduct of its business; and

b.  Has been, is being, or seeks to be paid a regular wage or salary by the **insured organization** or by an employment service or sponsor who provides such persons to the **insured organization**.

**Environment:**

**Environment** means any:

a.  Person;

b.  Man-made object or feature;

c.  Animals, crops or vegetation; or

d.  Land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated and whether or not owned, controlled or occupied by an **insured**.

**Independent Contractor:**

**Independent contractor** means any natural person, other than an **employee**, **director or officer**, **leased employee** or **volunteer** who renders service to the **insured organization** in the course of independent employment pursuant to a contract for specified services; provided that any:

a.  Coverage afforded under this Policy for such natural person only applies to the extent that the **insured organization** agrees to indemnify such natural person; and

b.  Such coverage shall be specifically excess of any other indemnity and insurance otherwise available to such natural person or any entity that such natural person is affiliated.

**Insurance Organization:**

**Insurance organization** means insurance company named on the declarations.

**Insured:**

**Insured** means:

a.  The **insured organization**;

b.  **Insured persons**;

c.  Only with respect to Fiduciary Liability Coverage provided in this Policy, **insured plan**; or

d.   Other **insured** if listed as an **insured** in an endorsement to this Policy.

**Insured Organization**

**Insured organization** means any entity shown in Item 1. on the Declarations and its **subsidiaries**.

**Insured Persons:**

**Insured persons** means:

a.   A **director or officer**;

b.   **Volunteer**; and

c.   Only to the extent coverage is granted for the Additional Insureds as shown in Item 6. (A) on the Declarations, **employees**, **leased employees** and **independent contractors**.

**Insured Plan**

**Insured plan** means any:

a.   Employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended that is operated solely by the **insured organization**, or jointly by the **insured organization** and a labor organization, starting before the **policy period**, for the benefit of the **employees**, **directors or officers**, **leased employees** or **volunteers** of the **insured organization**;

b.   Other employee benefit plan, or group insurance program, including a Health Savings Account (HAS) program, not subject to Title I of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended, sponsored solely by the **insured organization** for the benefit of the **employees**, **directors or officers**, **leased employees** or **volunteers** of the **insured organization**, or in the case of a HSA, those offered by the **insured organization**, if such plan existed prior to the **policy period**;

c.   Other employee benefit plan if listed as an **insured plan** in an endorsement to this Policy; or

d.   Government-mandated benefit program for workers' compensation, unemployment, social security or disability benefits for **employees**, **directors or officers**, **leased employees** or **volunteers**.

Unless otherwise listed as an **insured plan** in an endorsement to this Policy, **insured plan** does not include a multi-employer plan, as defined by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended or an employee stock ownership plan.

**Interrelated Wrongful Acts**

**Interrelated wrongful acts** means all **wrongful acts** that have a common fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

**Leased Employee**

**Leased employee** means any natural person, other than an **employee**, **director or officer**, **volunteer** or **independent contractor**, who is leased to the **insured organization** to perform work and for whom the **insured organization** directs or guides the work performed; provided that any:

a.   Coverage afforded under this Policy for such **leased employee** only applies to the extent that the **insured organization** agrees to indemnify such **leased employee**; and

b.   Such coverage shall be specifically excess of any other indemnity and insurance otherwise available to the **leased employee** from or provided by the entity that such **leased employee** is leased.

**Loss**

**Loss** means **defense costs** and the following amounts that the **insureds** are legally obligated to pay as the result of a **claim**:

a.   Compensatory damages awarded in judgments;

b.   Amounts paid in settlements entered into with the consent of the **insurance organization**;

c.   Punitive or exemplary damages, to the extent insurable under applicable law;

d.   The multiple portion of a damage award;

e.   Pre-judgment interest;

f.   Post-judgment interest;

ML 00 01 0213                         © Coaction Specialty Insurance Group, Inc.                         Page 38 of 42

g.  Solely with respect to a **wrongful employment practices liability act**, liquidated damage awards pursuant to the Age Discrimination in Employment Act (ADEA) (29 U.S.C. §§621-634) or the Equal Pay Act of 1963 (209 U.S.C. §206(d)), including any amendments thereto;

h.  Solely with respect to a **wrongful employment practices liability act**, front pay or back pay; or

i.  Solely with respect to a **wrongful fiduciary liability act**, civil money penalties imposed on an **insured** for violation of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA) (42 USC) (Pub. L. 104-191).  Provided, however, the **insurance organization's** maximum limit of liability for the **policy period** shall be $100,000 and no deductible shall apply for any such civil money penalties.

**Loss** does not mean or include any of the following:

a.  Civil or criminal fines, penalties, sanctions, injunctive relief, orders of forfeiture, or restitution and disgorgement, except:

    1)  To the extent included in paragraphs c., d. or i. above; or

    2)  For the 5% penalty under Section 502(i) and the 20% penalty under section 502(l) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §1 et seq.), as amended; or

b.  Taxes;

c.  Amounts an **insured** is liable to pay that are uninsurable under applicable law;

d.  Property or the value of any property that the **insured organization** is required to deliver or return to one having superior rights to the property;

e.  Amounts an **insured** disburses or credits as a loan, lease or as any other extension of credit, whether voluntarily or as required by law, statute, regulation or court order;

f.  The amount of any funds that an **insured** returns or refunds to one from whom or that the **insured organization** collected the funds wrongfully or in error, or that a bankruptcy court finds to be a preferential transfer;

g.  Solely with respect to a **wrongful employment practices liability act**, future salary, wages, commissions, payments for any type of insurance or other benefits for a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement of, order in or other resolution of any **claim**;

h.  Solely with respect to a **wrongful employment practices liability act**, any amounts that constitute severance payments or payments pursuant to a notice period;

i.  Amounts representing a reduction, modification or forgiveness of amounts owed (including the timing of amounts owed) for a loan, lease or extension of credit, whether voluntarily or required by law, statute, regulatory body, regulation or court order; or

j.  Amounts allocated to uncovered **loss** specified in any Allocation Condition made part of this Policy.

Only for the purpose of determining applicable law regarding whether such liquidated, punitive, exemplary or multiplied damages are insurable under this Policy, the law of the jurisdiction most favorable to the insurability of those damages shall control, provided that such jurisdiction is where:

a.  Those damages were awarded or imposed;

b.  Any **wrongful act** occurred for which such damages were awarded or imposed;

c.  The **insured** resides, is incorporated or has its principal place of business; or

d.  The **insurance organization** is incorporated or has its principal place of business.

### Outside Entity

**Outside entity** means any:

a.  Non-profit entity described in 26 U.S.C.A. §501(c)(3) of the Internal Revenue Code of 1986 (IRC), as amended, and not included in the definition of **insured organization**; or

b.  Other entity, if specifically granted by endorsement to this Policy,

whereby an **insured person** is a board member or other equivalent of the entity at the direction or request of the **insured organization**.

### Policy Period

**Policy period** means the period of time shown in Item 2. on the Declarations.

**Pollutants:**

**Pollutants** means:

a.  Noise, solid, semisolid, liquid, odor, gaseous or thermal irritants or contaminants;

b.  Smoke, vapor, soot, fume, acid, alkali, chemical, biological or other causative agents or materials;

c.  Electromagnetic or ionizing radiation and energy, genetically engineered materials, asbestos, teratogenic, carcinogenic and mutagenic materials and waste. Waste includes any material to be disposed of, recycled, reconditioned or reclaimed; or

d.  Other irritants, contaminants, or controlled or prohibited substances.

**Pollution Or Contamination**

**Pollution or contamination** means any conditions that:

a.  Are unclean, unsafe, damaging, injurious or unhealthful; and

b.  Result directly or indirectly from the presence of **pollutants**, whether permanent or transient in any **environment**.

**Subsidiary:**

**Subsidiary** means any:

a.  Entity in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors is owned, directly or indirectly, in any combination, by the **insured organization**;

b.  Non-profit entity in which the right to elect or otherwise appoint more than 50% of such entity's directors or trustees is owned or controlled, directly or indirectly, in any combination, by the **insured organization**;

c.  Limited liability company in which the right to elect or otherwise appoint or designate more than 50% of such limited liability company's managers is owned or controlled, directly or indirectly, in any combination, by the **insured organization**;

d.  Joint venture in which the right to elect or otherwise appoint more than 50% of such entity's directors, trustees or other equivalent executives is owned or controlled, directly or indirectly, in any combination, by the **insured organization**; or

e.  Other entity if listed as a **subsidiary** in an endorsement to this Policy.

**Voluntary Compliance Program**

**Voluntary compliance program** means the Voluntary Compliance Resolution Program (VCR) (Rev. Proc. 92-89) or the Walk-In Closing Agreement Program (Walk-in CAP), both described in the Employee Plans Compliance Resolution System, (EPCRS) (IRS Rev. Proc. 98-22), as amended, or the Tax Sheltered Annuity Voluntary Correction Program (TVC) (Rev. Proc. 95-24).

**Volunteer**

**Volunteer** means any natural person, other than an **employee**, **director or officer**, **leased employee** or **independent contractor**, who was or is:

a.  Serving on the committees of the **insured organization** at the appointment of the Board of Directors of the **insured organization**; or

b.  Performing services without compensation solely in the conduct of the **insured organization's** business.

**Wrongful Act:**

**Wrongful act** means:

a.  **Wrongful management liability act**, but only to the extent Management Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

b.  **Wrongful employment practices liability act** or **wrongful third party act**, but only to the extent Employment Practices Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

c.  **Wrongful fiduciary liability act**, but only to the extent Fiduciary Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

d.  **Wrongful professional liability act**, but only to the extent Professional Liability Coverage is granted as shown in Item 3. (A) on the Declarations;

e. **Wrongful outside director liability act**, but only to the extent Outside Director Liability Coverage is granted as shown in Item 3. (A) on the Declarations; or

f. **Wrongful FLSA act**, but only to the extent Fair Labor Standards Act Coverage is granted as shown in Item 3. (A) on the Declarations.

## Wrongful Employment Practices Liability Act:

**Wrongful employment practices liability act** means any actual or alleged:

a. Violation of any state, federal or provincial law, anywhere in the world, prohibiting discrimination against employees;

b. Wrongful dismissal, discharge or termination (including constructive discharge) of employment;

c. Sexual or workplace harassment;

d. Violation of employment laws;

e. Negligent evaluation or training;

f. Wrongful discipline;

g. Retaliation, unfair discipline or excessive discipline;

h. Failure to provide adequate workplace, employment policies or procedures;

i. Failure to promote, train, grant variable pay or grant tenure;

j. Breach of an employment contract, whether actual, implied, written or oral;

k. Misrepresentation or misstatement;

l. Negligent supervision or hiring of others;

m. Failure to employ;

n. Libel, slander, defamation of character, publication of material in violation of a person's right of privacy;

o. Infliction of emotional distress, mental anguish or humiliation; or

p. Negligent retention,

related to current, past, future or prospective employment of any natural person by the **insured organization**.

## Wrongful FLSA Act:

**Wrongful FLSA act** means an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws.

## Wrongful Fiduciary Liability Act:

**Wrongful fiduciary liability act** means any actual or alleged:

a. Breach of the responsibilities, obligations or duties imposed upon any **insured** in its capacity as a fiduciary of any **insured plan** or by the common or statutory law of the United States of America or any other jurisdiction anywhere in the world;

b. Matter claimed against the **insured organization** or any **insured person** solely because of their service as a fiduciary of any **insured plan**; or

c. Negligent act, error or omission by an **insured** based on any of the following with respect to an **insured plan**:

1) Interpreting or applying;

2) Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**; or

3) Handling of records in effecting enrollment, calculating, terminating or cancelling; or

d. A negligent act, error or omission by an **insured** in:

1) Interpreting or applying; or

2) Giving counsel to **employees**, **directors or officers**, **leased employees** or **independent contractors**,

concerning workers' compensation, unemployment insurance, Old-Age, Survivors and Disability Insurance (OASDI) (42 U.S.C.A. §301, et seq.).

**Wrongful Management Liability Act:**

**Wrongful management liability act** means any actual or alleged:

a.   Error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured** in their capacity as such; or

b.   Matter claimed against an **insured person** solely by reason of his or her serving in such capacity.

Provided, however, **wrongful management liability act** does not include any conduct actually or allegedly committed or attempted by any **insured person** in their capacity as a director, officer, trustee, governor, member of the board of managers, or any equivalent position, or employee of any entity other than the **insured organization**, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **insured person** by the **insured organization**.

**Wrongful Outside Director Liability Act:**

**Wrongful outside director liability act** means:

a.   Error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **insured** in their capacity as a board member of an **outside entity**; or

b.   Matter claimed against an **insured person** solely by reason of his or her serving an **outside entity**.

**Wrongful Professional Liability Act:**

**Wrongful professional liability act** shall have the meaning set forth in any endorsement made part of this Policy.

**Wrongful Third Party Act:**

**Wrongful third party act** means the actual or alleged sexual harassment by an **insured** of an individual who is not an **insured**, and who is, was or seeks to be, a customer, borrower or vendor of the **insured organization**.

 © Coaction Specialty Insurance Group, Inc.

## MULTI-YEAR PREMIUM ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

This Endorsement is effective at 12:01 a.m. on 04/17/2023 to 04/17/2026.

### ADDITIONAL CONDITIONS

**Cancellation**

If the **insured organization** cancels this Policy during the term of this Endorsement, any refund due will be calculated without applying any applicable discount on the amount of earned and unearned premium paid under this Endorsement.

**Experience**

Coverage is subject to change in limit, deductible and premium at the beginning of the next annual **policy period**, if during any one annual **policy period** the **insurance organization** has determined, at the **insurance organization's** sole discretion, that losses incurred during such annual **policy period** have the potential to exceed 100% of the annual earned premium for that annual **policy period**.

**Payment of Premium**

The **insured organization** agrees to prepay premium for the annual **policy periods** from 04/17/2023 to 04/17/2026.In exchange for prepayment of premium, the **insurance organization** agrees to guarantee the **insured organization's** premium for the annual **policy periods** shown above.  The **insured organization's** premium is subject to change resulting from your Experience or Request for Change as described in this Endorsement.

New or revised forms or endorsements may be available at the end of each annual **policy period**.  At the **insurance organization's** option, the **insurance organization** will provide these new or revised forms or endorsements to replace those in effect during the previous annual **policy period**.

**Request for Change**

The **insured organization's** request and **insurance organization's** approval for a change in coverage, limits or deductibles of any one or more coverages effective after 04/17/2023 and before 04/17/2026 will result in a premium adjustment of those coverages as of the effective date of the change using rates then in effect.

## ALLOCATION ENDORSEMENT

### MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

### CONDITIONS

**Allocation**

The Allocation Condition is replaced with the following:

If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the following:

a.  100% of **defense costs** incurred by the **insured** as a result of such **claim** shall be considered covered **loss**, except for those related to an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C. §201, et seq.), or any similar state or local laws, for a **claim** seeking pay for overtime or unpaid minimum wages or;

b.  All **loss** not described in paragraph a. above incurred by the **insured** as a result of such **claim** shall be allocated by the **insurance organization** between covered **loss** and uncovered **loss** based on the relative legal and financial exposures of the parties to covered and uncovered matters.

If **loss** arising from a single **claim** is incurred and covered under more than one coverage made part of this Policy, such **loss** shall be allocated to each applicable coverage based upon the relative legal and financial exposures of the parties to covered and uncovered matters. To the extent such an allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable coverage in the following order:

a.  Employment Practices Liability Insuring Agreement;

b.  Any Professional Liability Insuring Agreement;

c.  Entity Insuring Agreement;

d.  Reimbursement Insuring Agreement;

e.  Individual Insuring Agreement;

f.  Fiduciary Liability Insuring Agreement; then

g.  Any other coverages under this Policy.

 © Coaction Specialty Insurance Group, Inc.

MANAGEMENT AND SECURITY LIABILITY POLICY
ML 00 14 0213

## CREDIT UNION ADVANTAGE ENDORSEMENT-SELECT

### MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

### INSURING AGREEMENTS

#### Investigative Costs

The Investigative Costs Insuring Agreement in the Management Liability Insuring Agreement is replaced with the following:

If Investigative Costs Insuring Agreement is granted as shown in Item 3 (A) on the Declarations, the **insurance organization** shall pay on behalf of the **insured organization** reasonable costs, charges, fees (including attorneys' fees, consultants' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of an **insured person**) incurred by the **insured organization**, including its board of directors, board of managers or any committee thereof and incurred after written notice is provided to the **insurance organization** and consent is received from the **insurance organization**, in connection with:

a.  The **insured organization's** investigation, evaluation or response relating to a subpoena for the production of documents or records that is issued by the National Credit Union Administration or equivalent state regulator of credit unions first served during the **policy period** on the **insured organization** or a **director or officer** or, if exercised, the Extended Reporting Period; or

b.  The **insured organization's** investigation or evaluation of any written demand first made during the **policy period** against the board of directors or board of managers of such **insured organization** or, if exercised, the Extended Reporting Period.

Provided, however, Investigative Costs Insuring Agreement in paragraph b. above shall only apply to a written demand:

a.  Brought by any natural person made without the instigation, solicitation, assistance or active participation of any **insured person**; and

b.  That is a civil proceeding in a court of law against any **insured person** for a covered **wrongful management liability act**.

### ADDITIONAL DEFINITIONS

The following Definitions are added to the Management Liability Insuring Agreement.

#### Borrower

**Borrower** means any individual or organization to whom or to which the **insured organization** extends, agrees to extend or refuses to extend, a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

#### Loan Servicing

**Loan servicing** means the servicing of a loan, lease or extension of credit, including:

a.  Record keeping;

b.  Billing;

c.  Disbursements of principal and interest for a loan;

d.  Credit reporting or statements of a **borrower's** creditworthiness; or

e.  Receipt or payment of insurance premiums and taxes.

## DEFINITIONS

**Wrongful Professional Liability Act**

The Wrongful Professional Liability Act Definition is replaced with the following:

**Wrongful professional liability act** means:

a.  **Wrongful lending liability act**, but only to the extent Lender Liability Insuring Agreement is provided in this Policy;

b.  **Wrongful vicarious lending liability act**, but only to the extent Lender Liability Insuring Agreement is provided in this Policy; and

c.  **Wrongful credit union services liability act**, but only to the extent Credit Union Professional Liability Insuring Agreement is provided in this Policy.

## ADDITIONAL EXCLUSIONS

If any Management Liability Insuring Agreement is granted as shown in Item 3. (A) on the Declarations, the **insurance organization** shall not be liable to make any payment:

**Lending or Leasing Activities**

For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from:

a.  The rendering or failure to render **loan servicing**;

b.  The restructure, termination, transfer, collection, repossession or foreclosure of any loan, lease or extension of credit originated by the **insured organization**;

c.  An agreement, refusal, grant or extension of any loan, lease or extension of credit;

d.  The violation of any automatic stay and discharge injunction under the U.S. Bankruptcy Code (11 U.S.C. §101, et seq.), but only related to paragraphs a., b. or c. above;

e.  The violation of the Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) or any similar statute, but only related to paragraphs a., b. or c. above;

f.  The violation of any federal or state unfair or deceptive practices act, statute or regulation relating to an agreement, refusal, grant or extension of any loan, lease or extension of credit, but only related to paragraphs a., b. or c. above; or

g.  Federal or state laws or regulations relating to extension or denials of credit, including but not limited to: the Truth in Lending Act [Regulation Z] (15 U.S.C. Sec. 1601); Equal Credit Opportunity Act [Regulation B] (15 U.S.C. Sec. 1691); Consumer Leasing Act [Regulation M] (15 U.S.C. Sec. 1667); Fair Credit Billing Act (15 U.S.C. §1666); Fair Credit Reporting Act (15 U.S.C. Sec. 1681); Real Estate Settlement Procedures Act [RESPA] (12 U.S.C. Sec. 2601); Federal Trade Commission Holder in Due Course Rule (16 C.F.R. Sec. 433); Electronic Fund Transfer Act [Regulation E] (15 U.S.C. Sec. 1693); Expedited Funds Availability Act [Regulation CC] (12 U.S.C. Sec. 4001); or the Home Ownership and Equity Protection Act of 1994 (HOEPA) (15 U.S.C. §1639), each as amended from time to time and each successor or replacement law or regulation, or usury laws or regulations, or unlawful discrimination in the extension or denying of credit, or any similar state, local or common law, or similar laws of a foreign jurisdiction.

Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

**Lien Holder**

For **loss** related to any **claim** based upon, arising out of, attributable to, or resulting directly or indirectly from the status or activities of the **insured organization** as a lien holder or secured party.

Provided, however, this exclusion shall only apply to Entity Insuring Agreement.

## EXCLUSIONS

**Insured Versus Insured**

The Insured Versus Insured Exclusion is replaced with the following:

For **loss** related to any **claim** brought or maintained by or on behalf of any **insured** in any capacity, except a **claim**:

a. That is a derivative action brought or maintained on behalf of the **insured organization** by one or more persons who are not **insured persons** and who bring and maintain such **claim** without the instigation, solicitation, assistance or active participation of any **insured person**;

b. Brought or maintained by any natural person who was a **director or officer**, but who has not served as a **director or officer** for at least 4 years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the instigation, solicitation, assistance or active participation of any **director or officer** who is serving as a **director or officer** or was serving as a **director or officer** within such 4-year period;

c. Brought or maintained by or on behalf of any **insured person** for any **wrongful employment practices liability act** or **wrongful FLSA act**; Brought or maintained by any **insured person** for contribution or indemnity for a **wrongful act**;

d. Brought or maintained by or on behalf of any **insured person** for a **wrongful fiduciary liability act**;

e. Brought or maintained by or on behalf of any **insured person** solely in his or her capacity as a customer of the **insured organization** for a **wrongful professional liability act**, provided that such **claim** is totally without the instigation, solicitation, assistance, involvement or participation of any other **insured person**;

f. Brought by a bankruptcy trustee or examiner of the **insured organization**, or any assignee of such bankruptcy trustee, examiner, receiver, conservator, rehabilitator, or liquidator or comparable authority of the **insured organization**; or

g. Brought by an **employee** pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

Provided, however, this exclusion shall apply to only 50% of **loss** in connection with a **claim** after allocation is applied per the Allocation Condition.

## CONDITIONS

**Allocation**

The Allocation Condition is replaced with the following:

If as a result of any **claim** the **insureds** who are covered for such **claim** under this Policy incur **loss** jointly with others, including any **insureds** who are not covered for such **claim** under this Policy, or the **insureds** incur an amount consisting of both **loss** covered by this Policy and **loss** not covered by this Policy because the **claim** includes both covered and uncovered matters, such amount shall be allocated between covered **loss** and uncovered **loss** based upon the following:

a. 100% of **defense costs** incurred by the **insured** as a result of such **claim** shall be considered covered **loss**, except for those related to an actual or alleged violation of the Fair Labor Standards Act (FLSA) (29 U.S.C §201, et seq.), or any similar state or local laws, for a **claim** seeking pay for overtime or unpaid minimum wages; or

b. All **loss** not described in paragraph a. above incurred by the **insured** as a result of such **claim** shall be allocated by the **insurance organization** between covered **loss** and uncovered **loss** based on the relative legal and financial exposures of the parties to covered and uncovered matters.

If **loss** arising from a single **claim** is incurred and covered under more than one coverage made part of this Policy, such **loss** shall be allocated to each applicable coverage based upon the relative legal and financial exposures of the parties to covered and uncovered matters. To the extent such an allocation cannot reasonably be made, such **loss** shall be covered, subject to all the limitations, exclusions, conditions, provisions and other terms of this Policy, under the applicable coverage in the following order:

a. Employment Practices Liability Insuring Agreement;

b. Any Professional Liability Insuring Agreement;

c. Entity Insuring Agreement;

d. Reimbursement Insuring Agreement;

e. Individual Insuring Agreement;

f. Fiduciary Liability Insuring Agreement; then

g. Any other coverages under this Policy.

**Defense and Settlements**

The Defense and Settlements Condition is replaced with the following:

1. The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense costs** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this Policy without the **insurance organization's** written consent, which shall not be unreasonably withheld. The **insurance organization** shall not be liable for any **loss** based upon settlement, **defense costs**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to that it has not consented.

2. The **insurance organization** shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conducts its investigation or to reach a settlement of the **claim**. The **insureds** agree that in the event of a **claim**, the **insureds** shall do nothing that may prejudice the **insurance organization** or its potential or actual rights of recovery.

3. The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable. If the **insured organization** withholds consent to such settlement, the **insurance organization** liability for all **loss** arising from such **claim** shall not exceed the total of:

   a. The amount for which the **insurance organization** could have settled such **claim**; plus

   b. **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

   c. 80% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

   d. 80% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

   e. Any applicable deductible.

4. Any amounts paid by the **insurance organization** under paragraphs a., b. or c. above shall be part of and not in addition to the applicable limits of liability shown on the Declarations.

5. The **insurance organization** and the **insureds** shall not unreasonably withhold any consent referenced in this Defense and Settlements Condition.

6. The **insurance organization** shall have the right to appeal any judgment with respect to any **claim** covered, in whole or in part, by this Policy, and the expense of appealing such judgment shall be part of **defense costs**.

7. The **insurance organization** shall have the right and duty to select defense counsel and defend any **claim** covered under this Policy. The **insurance organization's** duty to defend **claims** shall apply even if any of the allegations are groundless, false or fraudulent, but shall only obligate the **insurance organization** to pay **defense costs**.

# WRONGFUL THIRD PARTY ACT ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**DEFINITIONS**

The Wrongful Third Party Act Definition is replaced with the following:

**Wrongful third party act** means the actual or alleged discrimination or sexual harassment by an **insured** of an individual, who is not an **insured**, and who is, was or seeks to be, a customer, borrower or vendor of the **insured organization**.

Provided, however, the definition of **wrongful third party act** shall not include any actual or alleged discrimination related to or based upon any lending activities.

 © Coaction Specialty Insurance Group, Inc.

# LENDER LIABILITY DISCRIMINATION ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

**Additional Exclusions for Insuring Agreement K**

**Exclusion 12 d. is deleted and replaced with the following:**

12. d.  Liber or slander, defamation of character, trade libel or alleged disparagement of a person's or organization's reputation, goods, products or services.

# CLAIM REPORTING ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**CONDITIONS**

The second paragraph of Claims Reporting is deleted and replaced with the following:

**3.  Claims Reporting**

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

Notice of claim will occur upon knowledge of claim possessed by the:

    a.  Chairperson;
    b.  Titled Officer;
    c.  Branch Manager;
    d.  In-house counsel;
    e.  Human Resources Manager, or any equivalent position.

# DEFENSE AND SETTLEMENTS ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**CONDITIONS**

**6.  Defense and Settlements**

**Paragraph c. is deleted and replaced with the following:**

c.  The **insurance organization** may, with the consent of the **insured organization**, settle any **claim** for any monetary amount that the **insurance organization** deems reasonable.  If the **insured organization** withholds consent to such settlement, the **insurance organization's** liability for all **loss** arising from such **claim** shall not exceed the total of:

1)  The amount for which the **insurance organization** could have settled such **claim**; plus

2)  **Defense costs** incurred as of the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; plus

3)  80% of the covered **loss**, excluding **defense costs**, incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**, in excess of the amount for which the **insurance organization** could have settled such **claim**; plus

4)  80% of **defense costs** incurred after the date such settlement was proposed in writing by the **insurance organization** to the **insured organization**; minus

5)  Any applicable deductible.

# LENDER LIABILITY - CUSTOMER AND BORROWER DEFINITION AMENDMENT ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions, except as modified in this endorsement.*

**LENDER LIABILITY INSURING AGREEMENT**

The definitions of **Borrower** and **Customer** of **Additional Definitions for Insuring Agreement K** under the **Lender Liability Insuring Agreement** are deleted and replaced with the following

**Borrower:**

**Borrower** means any individual or organization or their representative to whom or to which the **insured organization** extends, agrees to extend, or refuses to extend a loan, lease or extension of credit, or any individual or organization guaranteeing such a loan, lease or extension of credit.

**Customer:**

**Customer** means any natural person, entity or their representative with an account at the **insured organization** or any natural person or entity that has received, is receiving or seeks to receive any service from the **insured organization**.

# LOSS DEFINITION AMENDMENT – DAMAGES ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**INFORMATION SECURITY INSURING AGREEMENTS**

Definition of **Loss**, Paragraph **a**, of the Loss definition of the **Additional Definitions for Insuring Agreements O – V** under the **Information Security Insuring Agreements** section is deleted and replaced with the following:

**Loss:**

**Loss** means:

a.  With respect to Insuring Agreements: Website Publishing Liability, Security Breach Liability and Programming Errors and Omissions Liability:

Damages, settlement amounts and costs awarded pursuant to judgments or settlements.

**Loss** does not include:

1)  Civil or criminal fines or penalties imposed by law;

2)  Punitive or exemplary damages;

3)  The multiplied portion of multiplied damages;

4)  Taxes;

5)  Royalties;

6)  Nonmonetary or injunctive relief;

7)  The amount of any disgorged profits; or

8)  Matters that are uninsurable pursuant to applicable law.

# WRONGFUL EMPLOYMENT PRACTICES LIABILITY ACT ENDORSEMENT

**MANAGEMENT AND SECURITY LIABILITY POLICY**

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

**EMPLOYMENT PRACTICES LIABILTIY**

The definition of **Wrongful Employment Practices Liability Act** is deleted and replaced with the following:

**Wrongful employment practices liability act** means any actual or alleged:

a.  Violation of any state, federal or provincial law, anywhere in the world, prohibiting discrimination against employees;

b.  Wrongful dismissal, discharge or termination (including constructive discharge) of employment;

c.  Sexual or workplace harassment;

d.  Violation of employment laws;

e.  Negligent evaluation or training;

f.  Wrongful discipline;

g.  Retaliation, unfair discipline or excessive discipline;

h.  Failure to provide adequate workplace, employment policies or procedures;

i.  Failure to promote, train, grant variable pay or grant tenure;

j.  Breach of an employment contract, whether actual, implied, written or oral;

k.  Misrepresentation or misstatement;

l.  Negligent supervision or hiring of others;

m.  Failure to employ;

n.  Libel, slander, defamation of character, publication of material in violation of a person's right of privacy;

o.  Infliction of emotional distress, mental anguish or humiliation;

p.  Negligent retention, related to current, past, future or prospective employment of any natural person by the **insured organization**; or

q.  Hostile work environment, brought by or on behalf of and related to current, past, future or prospective employment of any natural person by the **insured organization.**

# INDIANA AMENDATORY ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in the Bond, except as modified in this endorsement.*

## Conditions

### Nonrenewal

The Nonrenewal Condition is replaced with the following:

If the **insurance organization** does not renew this Policy, the **insurance organization** shall mail or deliver to the **insured organization** and to the **insured organization's** agent, written notice of nonrenewal stating the effective date, and the reason for nonrenewal. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization** at least 45 days prior to the end of the **policy period**. If this notice is mailed, proof of mailing shall be sufficient proof of notice.

### Termination and Cancellation

The Termination and Cancellation Condition is replaced with the following:

1. This Policy terminates in its entirety upon the expiration of the **policy period.**

2. The **insured organization** may cancel this Policy during the **policy period** by mailing or delivering written notice of cancellation to the **insurance organization**. The unearned premium shall be refunded less than pro rata if this Policy is cancelled as provided in this paragraph.

3. The **insurance organization** may cancel this Policy during the **policy period** for nonpayment of premium. If the **insurance organization** cancels this Policy, the **insurance organization** shall mail or deliver to the **insured organization**, and to the **insured organization**'s agent, written notice of cancellation stating the effective date, and the reason for cancellation. The **insurance organization** shall mail or deliver this notice to the last mailing address known to the **insurance organization**. If this notice is mailed, proof of mailing shall be sufficient proof of notice. Cancellation is effective 10 days after the **insurance organization** mails or delivers the notice of cancellation.

## Additional Condition

### Notice to Insurance Organization

The Notice to Insurance Organization Condition is added to the Conditions as follows:

Notice given by or on behalf of the **insured** to any authorized agent of the **insurance organization** within Indiana, with particulars sufficient to identify the **insured**, shall be deemed notice to the **insurance organization**.

 © Coaction Specialty Insurance Group, Inc.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

## MANAGEMENT AND SECURITY LIABILITY POLICY

*This endorsement is subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Agreements and Conditions contained in this Policy, except as modified in this endorsement.*

## ADDITIONAL EXCLUSION

**Cap on Certified Terrorism Losses**

1. If aggregate insured losses attributable to **certified acts of terrorism** under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy.

## ADDITIONAL DEFINITION

**Certified Act Of Terrorism:**

> **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:
>
> a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
>
> b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© Coaction Specialty Insurance Group, Inc.

MANAGEMENT AND SECURITY LIABILITY POLICY
ML 45 01 0213

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

The federal Terrorism Risk Insurance Act requires notification of coverage for losses arising out of acts of terrorism.  As defined in the Terrorism Risk Insurance Act, the term certified **act of terrorism** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage for certified **acts of terrorism** is included in your policy.  The United States Government, Department of the Treasury will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The summary of the Terrorism Risk Insurance Act and the coverage under your policy contained in this notice is necessarily general in nature.  Your policy contains specific terms, definitions, exclusions and conditions.  In case of any conflict, your policy language will control the resolution of all coverage questions.  The portion of your annual premium attributable to coverage for acts of terrorism is currently waived.

**Exhibit D**


**Answer and Counterclaim in *Notre Dame Federal Credit Union v. David Dilley* filed October 22, 2021**

**Court File No.: 43D04-2109-CC-000568**

| STATE OF INDIANA | ) | IN KOSCIUSKO SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| KOSCIUSKO COUNTY | ) | CAUSE NO. 43D04-2109-CC-000568 |

| Notre Dame Federal Credit Union | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Filed: 10/22/2021 1:38 PM** |
| | ) | **Kosciusko County Superior Court IV** |
| | ) | **Kosciusko County, Indiana** |
| David Dilley | ) | |
| | ) | |
| Defendant | ) | |

## ANSWER AND COUNTERCLAIM

Defendant David Dilley ("Defendant"), by the undersigned attorneys, answers Notre Dame

Federal Credit Union's ("Plaintiff's") Complaint and counterclaims against Plaintiff:

### ANSWER TO COUNT I

1. Admit.

2. Admit.

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

### ANSWER TO COUNT II

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

### ANSWER TO COUNT III

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## ANSWER TO COUNT IV

1.      Defendant has insufficient information to admit or deny this allegation because the documents attached as Exhibit D are illegible, and therefore, denies same.

2.      Defendant has insufficient information to admit or deny this allegation because the documents attached as Exhibit D, which constitute the alleged contract, are illegible, and therefore, denies same.

3.  Deny.

4.  Paragraph 4 sets forth a legal conclusion to which no response is required.

## AFFIRMATIVE DEFENSES TO COUNTS I, II, and III

1.      As set forth more fully in Defendant's counterclaim, Defendant disputes Plaintiff's compliance with the Uniform Commercial Code ("UCC") as adopted by Indiana (codified as Title 26, Article 1 of the Indiana Code), and Plaintiff has not, and cannot, meet its burden of establishing compliance with Ind. Code § 26-1-9.1-601 et seq.

2.      Plaintiff failed to sell Defendant's vehicles in a commercially reasonable manner and demands strict proof thereof.

3.      Plaintiff failed to send Defendant the statutory notices required by I.C. § 26-1-9.1-601 et seq.

4.      Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

5.      Defendant respectfully requests and reserves the right to amend and/or supplement his defenses contained in this Answer and Counterclaim as the facts and circumstances giving rise to the Complaint become known to him through the court of litigation.

## AFFIRMATIVE DEFENSES TO COUNT IV

1.  Plaintiff fails to state a claim for which relief can be granted.

2.  Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

## **COUNTERCLAIM**

### **Parties**

1.      Plaintiff is an Indiana company with its principal place of business in Indiana.

2.      Defendant is an Indiana resident.

### **Jurisdiction and Venue**

3.      Defendant is a resident of Kosciusko County and Plaintiff sued Defendant in Kosciusko County.

4.      This Court has jurisdiction over the parties to this Counterclaim.

5.      Venue is proper under Rule 75 of the Indiana Rules of Trial Procedure.

### **General Allegations**

6.      Defendant executed three Consumer Notes and Security Agreements with Plaintiff in which Defendant granted Plaintiff a security interest in collateral as part of the loan agreement.

7.      Exhibit A to the Complaint is a true and accurate copy of the Note executed by the parties on or about March 6, 2018, and as part of the agreement, the Note gave Defendant a security interest in his 2015 Jeep Grand Cherokee (the "Jeep Note").

8.      Exhibit B to the Complaint is a true and accurate copy of the Note executed by the parties on or about February 23, 2018, and as part of the agreement, the Note gave Defendant a security interest in his 2016 KZ Recreational Vehicle (the "RV Note").

9.      Exhibit C to the Complaint is a true and accurate copy of the Note executed by the parties on or about February 26, 2018, and as part of the agreement, the Note gave Defendant a security interest in his 2012 Polaris ATV (the "ATV Note").

10.     Exhibit D to the Complaint includes a true and accurate copy of the credit card application completed by Defendant on or around March 7, 2018.

11.     In each of the Jeep Note, RV Note, and ATV Note Defendant granted Plaintiff a security interest in collateral used primarily for personal, family, or household purposes.

3

12.    Plaintiff obtained a security interest in the Jeep, RV, and ATV (collectively, the "Collateral") and remained a secured party until Plaintiff sold the Collateral.

13.    Plaintiff failed to sell any of the collateral in a commercially reasonable manner.

14.    Had Plaintiff complied with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the Jeep, Plaintiff would have obtained net sales proceeds greater than or equal to the alleged debt owed to Plaintiff on the Jeep Note.

15.    The fair value of the Jeep at the time of repossession was greater than or equal to the amount Defendant allegedly owed Plaintiff on the Jeep Note.

16.    Had Plaintiff complied with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the RV, Plaintiff would have obtained net sales proceeds greater than or equal to the alleged debt owed to Plaintiff on the RV Note.

17.    The fair value of the RV at the time of repossession was greater than or equal to the amount Defendant allegedly owed Plaintiff on the RV Note.

18.    Had Plaintiff complied with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the ATV Note, Plaintiff would have obtained net sales proceeds greater than or equal to the alleged debt owed to Plaintiff on the ATV Note.

19.    The fair value of the ATV at the time of repossession was greater than or equal to the amount Defendant allegedly owed Plaintiff on the ATV Note.

## Count I – UCC Violations regarding the Jeep

20.    Defendant repeats the allegations set forth above as if set forth in Count I.

21.    Plaintiff failed to comply with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the Jeep, which entitles Defendant to damages under IC § 26-1-9.1-625.

22.    Regarding the Jeep, Plaintiff violated § 26-1-9.1-611 and § 26-1-9.1-614 because it did not send Defendant a "reasonable authenticated notification of disposition" that complied with the UCC.

23.      Regarding the Jeep, Plaintiff violated § 26-1-9.1-616 because it did not send Defendant a post-sale explanation of deficiency in accordance with § 26-1-9.1-616(c).

24.      Plaintiff's failure to send a proper post-sale notice under IC § 26-1-9.1-616 is part of a pattern and/or consistent practice of noncompliance.

## Count II – UCC Violations concerning the RV

25.      Defendant repeats the allegations set forth above as if set forth in Count II.

26.      Plaintiff failed to comply with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the RV, which entitles Defendant to damages under IC § 26-1-9.1-625.

27.      Regarding the RV, Plaintiff violated § 26-1-9.1-611 and § 26-1-9.1-614 because it did not send Defendant a "reasonable authenticated notification of disposition" that complied with the UCC.

28.      Regarding the RV, Plaintiff violated § 26-1-9.1-616 because it did not send Defendant a post-sale explanation of deficiency in accordance with § 26-1-9.1-616(c).

29.      Plaintiff's failure to send a proper post-sale notice under IC § 26-1-9.1-616 is part of a pattern and/or consistent practice of noncompliance.

## Count III – UCC Violations concerning the ATV

30.      Defendant repeats the allegations set forth above as if set forth in Count III.

31.      Plaintiff failed to comply with IC § 26-1-9.1-601 through § 26-1-9.1-628 in repossessing and selling the ATV, which entitles Defendant to damages under IC § 26-1-9.1-625.

32.      Regarding the ATV, Plaintiff violated § 26-1-9.1-611 and § 26-1-9.1-614 because it did not send Defendant a "reasonable authenticated notification of disposition" that complied with the UCC.

33.      Regarding the ATV, Plaintiff violated § 26-1-9.1-616 because it did not send Defendant a post-sale explanation of deficiency in accordance with § 26-1-9.1-616(c).

34.     Plaintiff's failure to send a proper post-sale notice under IC § 26-1-9.1-616 is part of a pattern and/or consistent practice of noncompliance.

WHEREFORE, Defendant prays this Court enter a judgment against Plaintiff as to each Count I, Count II, and Count III, and for each count:

    a.  award damages equal to the statutory minimum provided by IC § 26-1-9.1-625 (c)(2);

    b.  award statutory damages of $500 pursuant to IC § 26-1-9.1-625(e) for violating § 26-1-9.1-616.

    c.  prejudgment and post-judgment interest;

    d.  a declaration that Defendant owes Plaintiff nothing on the Notes.

    e.  an order requiring Plaintiff to remove any adverse credit information Plaintiff previously reported to credit reporting organizations about Defendant;

    f.  attorney's fees to the extent permitted by contract or law; and

    g.  for such other and further relief as this Court deems just and proper.

Respectfully submitted,

_/s/ Jeffrey S. Gibson_____
Jeffrey S. Gibson, #22362-49
Wagner Reese, LLP
11939 N. Meridian Street, Suite 100
Carmel, IN 46032
Phone: 317-446-8339

Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 22, 2021, I electronically filed this Motion using the Indiana E-Filing System.

I also certify that on October 22, 2021, the foregoing document was served upon the following Via E-Service or U.S. Mail, first class, postage prepaid, if not registered with E-Service:

KRISOR & ASSOCIATES
John D. Krisor Jr. (5355-71)
Brooks J. Grainger (19362-71)
Ian M. Septoski (25450-64)
P.O. Box 6200
South Bend, IN 46660
(574) 271-4920

_/s/ Jeffrey S. Gibson_____
Jeffrey S. Gibson, #22362-49

WAGNER REESE, LLP
11939 North Meridian Street, Suite 100
Carmel, IN 46032
Tel: (317) 569-0000/Fax: (317) 569-8088
Email: jgibson@wagnerreese.com

**Exhibit E**


**First Amended Answer and Counterclaim in *Notre Dame Federal Credit Union v. David Dilley* filed September 20, 2022**

**Court File No.: 43D04-2109-CC-000568**

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN KOSCIUSKO SUPERIOR COURT |
| | ) SS: | |
| KOSCIUSKO COUNTY | ) | CAUSE NO. 43D04-2109-CC-000568 |

| | |
|---|---|
| Notre Dame Federal Credit Union | ) |
| | ) |
|     Plaintiff/Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| David Dilley | ) |
| | ) |
|     Defendant/Counterclaimant. | ) |

## FIRST AMENDED ANSWER AND COUNTERCLAIM

Defendant/Counterclaimant David Dilley ("Dilley"), by the undersigned attorneys, answers Plaintiff Notre Dame Federal Credit Union ("Plaintiff's") Complaint and counterclaims against Plaintiff on behalf of himself and other similarly situated consumers:

### ANSWER TO COUNT I

1. Admit.

2. Admit.

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

### ANSWER TO COUNT II

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## **ANSWER TO COUNT III**

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## **ANSWER TO COUNT IV**

1.     Dilley has insufficient information to admit or deny this allegation because the documents attached as Exhibit D is illegible, and therefore, denies same.

2.     Dilley has insufficient information to admit or deny this allegation because the documents attached as Exhibit D, which constitute the alleged contract, are illegible, and therefore, denies same.

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## **AFFIRMATIVE DEFENSES TO COUNTS I, II, and III**

1.     As set forth more fully in Dilley's counterclaim, Dilley disputes Plaintiff's compliance with the Uniform Commercial Code ("UCC") as adopted by Indiana (codified as Title 26, Article 1 of the Indiana Code), and Plaintiff has not, and cannot, meet its burden of establishing compliance with IC. § 26-1-9.1-601 et seq.

2.     Plaintiff failed to sell Dilley's vehicles in a commercially reasonable manner and demands strict proof thereof.

3.     Plaintiff failed to send Dilley the statutory notices required by IC § 26-1-9.1-601 et seq.

4.      Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

5.      Dilley respectfully requests and reserves the right to amend and/or supplement his defenses contained in this Answer and Counterclaim as the facts and circumstances giving rise to the Complaint become known to him through the court of litigation.

## AFFIRMATIVE DEFENSES TO COUNT IV

1.      Plaintiff fails to state a claim for which relief can be granted.

2.      Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

# COUNTERCLAIM

## Nature of Case

1.      This is a consumer class action against Plaintiff Notre Dame Federal Credit Union ("Plaintiff"), and its predecessors or successors, seeking relief to redress Plaintiff's unlawful s repossession practices and procedures.

2.      The Uniform Commercial Code ("UCC") as adopted by Indiana is codified as Title 26, Article 1 of the Indiana Code.

3.      Chapter 9.1 of the UCC (§§ 26-1-9.1-601 through 26-1-9.1-628) forms a comprehensive scheme governing a secured creditor's repossession and disposition of a consumer-debtor's collateral.

4.      Indiana Code § 26-1-9.1-611(b) of the UCC requires a secured creditor, before disposition of a consumer's repossessed collateral, to send the consumer-debtor a "reasonable authenticated officiation of disposition," which provides the consumer-debtor with specific information about the intended disposition and the consumer-debtor's redemption rights.

5.      Indiana Code §§ 26-1-9.1-613 and 26-1-9.1-614 of the UCC set forth the mandatory information that the secured party must include in the written notice of intended sale of the collateral (hereinafter the "presale notice").

6.      Indiana Code § 26-1-9.1-616 requires that the secured party mail consumer-debtors an "explanation" of surplus or deficiency after it sells the debtors' vehicles (hereinafter a "post-sale notice"). This statute also requires that the post-sale include specific information and the order in which the information must be presented. *See* IC 26-1-9.1-616(c).

7.      Plaintiff mailed Dilley and many other consumers a presale notice and post-sale notice that did not comply with the Uniform Commercial Code as adopted by each state.[1]

8.      Dilley sues for himself and all other similarly situated consumers. They seek compensatory damages equal to the statutory minimum provided by § 26-1-9.1-625(c)(2) of the UCC, $500 per each post-sale notice violation, and such other further relief as this Court may deem appropriate.

## Parties

9.      Dilley is a resident of Indiana (in Kosciusko County), and Dilley executed consumer loan agreements for the purchases of a 2015 Jeep Grand Cherokee, 2016 KZI Camper, and 2012 Polaris Sportsman (collectively, the "Collateral") in Notre Dame, Indiana. (*See* **Exhibits A–C** to Plaintiff's Complaint).

10.     Plaintiff is credit union with its principal place of business in Indiana.

---

[1] For readability, Dilley cites to the Indiana's version of the UCC, which is substantially identical to each state's version of the UCC and the state law that'd generally apply to the putative class members' UCC claims, regardless of where the putative class members resides, their loans originated, or the repossessions or voluntary surrenders took place. Regardless, Dilley believes the vast majority of claims arise under Indiana law. Plus, because there is no conflict between Indiana's UCC and other states' version of the UCC, "the forum should apply [Indiana] law" to all Class Members' claims. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 235-36 (3d Cir. 2016) (citing *Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n. 1 (Ind.Ct.App.1990) and applying Indiana law).

11.    All allegations of acts or omissions by Plaintiff include, but are not limited to, acts and omissions of Plaintiff's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were made with Plaintiff's express and/or implied authority, or were ratified or otherwise approved by Plaintiff; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Plaintiff's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

## Jurisdiction and Venue

12.    This Court has jurisdiction over the parties to this Counterclaim.

13.    Venue is proper under Rule 75 of the Indiana Rules of Trial Procedure.

## Allegations as to Dilley's Counterclaims

14.    Dilley signed three consumer credit contracts with Plaintiff that were each secured by different property.

15.    On February 23, 2018, Dilley and Plaintiff entered a loan agreement in which Dilley granted Plaintiff a security interest in his 2016 KZI Camper.

16.    A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit B**.

17.    On February 26, 2018, Dilley and Plaintiff entered into a loan agreement in which Dilley granted Plaintiff a security interest in his 2012 Polaris Sportsman ATV.

18.    A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit C**.

19.     On March 6, 2018, Dilley and Plaintiff entered a loan agreement in which Dilley granted Plaintiff a security interest in his 2015 Jeep Grand Cherokee.

20.     A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit A**.

21.     The 2015 Jeep Grand Cherokee, 2016 KZI Camper, and 2012 Polaris Sportsman ATV (collectively, the "Collateral") were bought for use primarily for personal, family or household purposes.

22.     Plaintiff obtained a security interest in the Collateral and remained a secured party until disposition of the Collateral.

23.     Dilley was a debtor or obligor in a consumer-goods transaction as those terms are defined in the UCC.

24.     Plaintiff did not sell the Collateral in a commercially reasonable manner.

25.     Dilley's Collateral was sold for significantly less than its fair market value.

26.     After Plaintiff repossessed the Collateral, on March 1, 2021, Plaintiff mailed Dilley three documents, informing him Plaintiff had repossessed the Collateral and would sell the Collateral at a private sale (i.e., the "presale notices" mailed to Dilley).[2]

27.     True, accurate, and complete copies of the three presale notices Plaintiff mailed to Dilley are attached to Dilley's Motion for Leave to Amend as **Exhibit 1**.

---

[2] Dilley uses the term "repossess" broadly to include a secured party's retaking of collateral, whether through involuntary repossession, voluntary repossession, voluntary surrender, or abandonment, as the UCC's notice requirements equally apply in all these situations.

28.    After Plaintiff sold the Collateral, on March 19, 2021, Plaintiff mailed Dilley three documents titled "DEFICIENCY BALANCE NOTIFICATION" (i.e., the "post-sale notices" mailed to Dilley).

29.    True, accurate, and complete copies of the three post-sale notices Plaintiff mailed to Dilley are attached to Dilley's Motion for Leave to Amend as **Exhibit 2**.

30.    The presale notices Plaintiff mailed Dilley on March 1, 2021, told Dilley Plaintiff would sell the vehicle and did not suggest Dilley had the opportunity to redeem the vehicle.

31.    The presale notices Plaintiff mailed Dilley on March 1, 2021, suggested the sale of Dilley's Collateral was inevitable and he could not do anything to prevent the Collateral from being sold.

32.    Dilley had the right to redeem the Collateral pursuant to IC § 1-26-1-9.1-623 until March 17, 2021, when Plaintiff sold the Collateral.

33.    The presale notices mailed to Dilley identified an incorrect "current balance" on his accounts.

34.    Plaintiff's internal records identified a "current balance" on the 2015 Jeep Cherokee of $29,491.61 at the time Plaintiff mailed the presale notices until Plaintiff applied the sale proceeds of $22,350.

35.    Plaintiff's internal records identified a "current balance" on the 2016 KZI Camper of $18,750.65 at the time Plaintiff mailed the presale notices on March 1, 2021.

36.    Plaintiff's internal records identified a "current balance" of $6,494.37 on the 2012 Polaris at the time Plaintiff mailed the presale notices on March 1, 2021.

37.    The presale notices mailed to Dilley told him he would be responsible for "storage fees" but Plaintiff paid no storage fees.

38.    The presale notices mailed to Dilley did not accurately describe his deficiency or potential liability.

39.    The presale notices Plaintiff mailed Dilley did not inform him how much it would cost him to request an accounting of his alleged indebtedness or if he could obtain an accounting free of charge.

40.    Rather, the presale notices Plaintiff mailed Dilley told him he had to "request" the cost to obtain an accounting.

41.    Dilley was entitled to a free accounting of indebtedness as to each piece of Collateral because he had not requested an accounting within the last 6 months from the date on the presale notices (March 1, 2021).

42.    Plaintiff failed to send Dilley a reasonable authenticated notice of disposition as required by § 26-1-9.1-611 before selling any of the Collateral.

43.    Plaintiff mailed Dilley presale notices that omitted, misstated, and/or failed to unambiguously state information required by § 26-1-9.1-613 and § 26-1-9.1-614.

## Class Allegations

44.    Dilley repeats the allegations set forth above as if restated in their entirety.

45.    Plaintiff mailed Dilley and many other consumers presale notices that did not comply with the UCC.

46.    Plaintiff mailed Dilley and many other consumers post-sale notices that did not comply with the UCC.

47.    At least one of the issues identified in Dilley's presale notice are present in the presale notices mailed to the class members.

48.    Dilley counterclaims individually and for a class designated under Rule 23(A) and Rule 23(B)(3) of the Indiana Rules of Trial Procedure to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

49.    The proposed class definition (the "Class") is defined as all consumers who Plaintiff mailed a presale notice and whose collateral was sold by Plaintiff, Plaintiff's agent, or an assignee on or after February 11, 2012.

50.    Dilley reserves the right to amend the scope of the Class or modify the Class definition based on information unavailable to him at this time but will obtain through discovery.

51.    Upon information and belief, the presale notices Plaintiff mailed Dilley were created from a form template that Plaintiff has used to create other consumer-debtors' presale notices.

52.    Upon information and belief, Plaintiff has disposed of many pieces of personal property serving as collateral after mailing a presale notice in substantially similar form to the presale notices mailed to Dilley.

53.    The presale notices mailed to Dilley and the Class Members failed to include accurate and unambiguous information required by the UCC and/or were misleading with respect to Dilley and the Class Members' rights under the UCC, and were not reasonable authenticated notifications of disposition, which violates § 26-1-9.1-611(b).

54.    After Plaintiff mailed Dilley and the Class Members presale notices, Plaintiff or its agent disposed of their collateral.

55.    After Plaintiff sold Dilley's and Class Members' collateral, Plaintiff mailed them post-sale notices.

56.    Upon information and belief, the post-sale notices Plaintiff mailed Dilley were created from a form template that Plaintiff has used to create other consumer-debtors' post-sale notices.

57.    Upon information and belief, Plaintiff has disposed of many pieces of personal property serving as collateral and subsequently mailed a post-sale notice in substantially similar form to the post-sale notices Plaintiff mailed to Dilley.

58.    The post-sale notices Plaintiff mailed to Dilley and the Class Members did not substantially comply with IC § 26-1-9.1-616 because they did not include all the information required by the statute, and they did not explain how Plaintiff calculated the deficiency in the proper order as identified in IC § 26-9.1-616(c).

59.    The post-sale notices Plaintiff mailed to Dilley and the Class Members do not mention that their post-sale deficiency balances could be affected by anything other than interest (e.g., future debits, credits, charges, rebates, etc.) as required by IC § 26-1-9.1-616(a)(1)(C).

60.    Each Class Member obtained financing for their collateral primarily for personal, family, or household purposes.

61.    Members of the Class are so numerous their individual joinder is impracticable.

62.    Dilley is informed and believes Plaintiff mailed more than 100 individuals presale notices created from the same form document or template used to create the presale notices mailed to Dilley.

63.    Dilley is informed and believes Plaintiff mailed more than 100 individuals post-sale notices created from the same form document or template used to create the post-sale notices mailed to Dilley.

64.    The Class is sufficiently numerous to make joinder impracticable, if not impossible, but the precise number of class members is unknown.

65.    There are questions of law and fact common to the Class, which predominate over any issues involving individual Class Members.

66.    Plaintiff or someone at Plaintiff's direction has unlawfully collected or attempted to collect deficiency balances from Dilley and other consumers issued defective presale and failed to rebut the presumption that their outstanding debts were satisfied.

67.    Plaintiff has maintained a practice and policy of reporting derogatory information regarding the class members defaults and post-sale loan balances to consumer credit reporting agencies like Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC.

68.    Plaintiff's UCC violations and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

69.    Plaintiff's UCC violations and reporting of false or inaccurate derogatory information on the Class Members' credit reports were oral or written publication of material that slanders or libels the Class Members.

70.    Plaintiff's UCC violations and reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

71.    The reporting of false or inaccurate derogatory information on the Class Members' credit reports was not done with knowledge of its falsity.

72.    Plaintiff's acts that violated the statutes alleged in this counterclaim required no professional skill.

73.    Plaintiff's acts that violated the statutes alleged in this counterclaim required no specialized knowledge, labor, or skill.

74.    Upon information and belief, Plaintiff did not intend to violate the UCC and did not intend injury to the Class because it believed its notices were accurate, lawful and contained no misrepresentations.

75.    Upon information and belief, Plaintiff did not know its UCC violations and its reporting of information on the Class Members' credit reports would violate the rights of the class members or inflict injury upon them.

76.    Plaintiff's negligent misrepresentations in the presale notices were the proximate cause of the loss of use of the collateral because it precluded the Class Members from reclaiming their collateral before it was sold.

77.    There are common, predominating questions because:

   a. the Class claims are based on an interpretation of the form UCC notices regarding the Class Members' rights to presale notices of disposition of the collateral;

   b. a central aspect of Dilley's class action is a determination of whether Plaintiff violated any statutory provisions governing its form UCC notices and uniform business practices;

c.  determining the sufficiency of Plaintiff's form UCC notices will resolve the merits of each Class Member's claims.

d.  the substantive elements of Class Members' claims require the same type of proof;

e.  the Class is bound together by mutual interest in resolving common questions that exceeds any individual interests amongst the Class Members.

78.    Claims involving the interpretation of form notices and contracts present a classic case for treatment as a class action. *McKeage v. TMBC, LLC*, 847 F. 3d 992, 999 (8th Cir. 2017).

79.    Dilley's claims are typical of the claims of the Class Members.

80.    Dilley's and the Class's claims are based on the same factual and legal theories.

81.    Dilley's and the Class's rights derive from written, form contracts and documents.

82.    The violations alleged by Dilley and the Class derive from written, form presale and post-sale notices that violate the UCC.

83.    Dilley and each Class Member was damaged and may recover damages equal to the minimum damages provided by the UCC due to Plaintiff's failure to provide proper presale notices.

84.    Dilley and each Class Member may recover $500 for each post-sale notice Plaintiff mailed them that did not comply with IC § 26-1-9.1-616.

85.    Dilley will fairly and adequately represent and protect the interests of the Class.

86.    Dilley has no interests antagonistic to the Class Members.

87.    Dilley's counsel is competent and experienced in consumer and class action litigation.

88.    Dilley and all Class Members have an interest in determining the adequacy of the presale notices mailed by Plaintiff and to recover damages due to the statutorily defective notices.

89.    The questions of law or fact common to the Class predominate over questions affecting only individual members.

90.    Dilley and each Class Member will rely on the same basic evidence (i.e., the form notices).

91.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

92.    Class Members are consumer-debtors, who likely cannot locate or afford to hire lawyers.

93.    Most Class Members are probably unaware Plaintiff violated their rights and the law.

94.    If each Class Member were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

95.    Concentrating the litigation of Dilley's and the Class Members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

96.    The Class should be certified under Rule 23(B)(3) of the Indiana Rules of Trial Procedure, as the superior method for the fair and efficient adjudication of this controversy.

## Count I – UCC Presale Notice Violations

97.    Dilley repeats the allegations set forth above as if set forth in Count I.

98.    Plaintiff violated the UCC by failing to mail Dilley and the Class Members reasonable presale notices in compliance with IC §§ 26-1-9.1-611 through 26-9.1-614 before selling their collateral.

99.    As a direct and proximate result of failure to comply with the requirements of §§ 26-1-9.1-601 through 26-1-9.1-628, Dilley and the Class suffered actual damages, including:

      a.    deprivation of rights granted under the UCC

      b.    harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

      c.    harm caused by defamation, slander and libel;

      d.    harm caused by invasion of privacy; and

      e.    other uncertain and hard-to-quantify actual damages.

## Count II – UCC Post-Sale Notice Violations

100.    Dilley repeats the allegations set forth above as if set forth in Count I.

101.    Plaintiff violated IC § 26-1-9.1-616 as to every noncompliant post-sale notice it mailed to Dilley and the Class Members.

WHEREFORE, Dilley prays this Court certify the Class as defined above (or as modified by this Court), appoint Dilley's undersigned counsel as counsel for the Class, and enter a judgment for Dilley and the Class against Plaintiff:

      a.    awarding actual damages equal to the statutory damages provided by § 26-1-9.1-625(c)(2) of the UCC for Plaintiff's presale notice violations;

b. awarding statutory damages of $500 for each deficient post-sale notice pursuant to IC § 26-1-9.1-625(e)(5).

c. prejudgment and post-judgment interest;

d. attorney's fees;

e. a preliminary and permanent injunction enjoining Plaintiff from engaging in the practices alleged;

f. a mandatory injunction compelling Plaintiff to remove any adverse credit information wrongfully reported on Dilley's and the Class's consumer credit reports;

g. a declaration that the presale notices mailed by Plaintiff to Dilley and the Class fail to comport with the statutory requirements; and

h. for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Jeffrey Gibson*
Jeffrey S. Gibson, #22362-49
**Wagner Reese, LLP**
11939 N. Meridian Street, Suite 100
Carmel, IN 46032
Phone: 317-446-8339

Attorney for Dilley / Counterclaimant

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 20, 2022, I electronically filed this Motion using the

Indiana E-Filing System.

I also certify that on September 20, 2022, the foregoing document was served upon

the following Via E-Service or U.S. Mail, first class, postage prepaid, if not registered with

E-Service:

Libby Y. Goodnight, # 20880-49
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
Tel: (317) 636-4341

Kay Dee Baird, #28821-73
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
Tel: (317) 636-4341

John D. Krisor Jr., #5355-71
Ian Septoski, #25450-64
KRISOR & ASSOCIATES
P.O. BOX 6200
South Bend, IN 46660
Tel: (574) 272-1000

Counsel for Plaintiff


/s/ Jeffrey Gibson
Jeffrey S. Gibson, #22362-49


WAGNER REESE, LLP
11939 North Meridian Street, Suite 100
Carmel, IN 46032
Tel: (317) 569-0000/Fax: (317) 569-8088
Email: jgibson@wagnerreese.com

**Exhibit F**

**Second Amended Answer and Counterclaim in _Notre Dame Federal Credit Union v. David Dilley_ filed May 23, 2023**

**Court File No.: 43D04-2109-CC-000568**

STATE OF INDIANA       )      IN KOSCIUSKO SUPERIOR COURT
                   ) SS:
KOSCIUSKO COUNTY      )      CAUSE NO. 43D04-2109-CC-000568

Notre Dame Federal Credit Union    )
                                )
       Plaintiff/Counterclaim-Defendant,    )
                                  )
v.                                       )
                                  )
David Dilley                         )
                                  )
       Defendant/Counterclaimant.      )

**FILED**

May 23, 2023

Kosciusko Superior Court 4

## SECOND AMENDED ANSWER AND COUNTERCLAIM

Defendant/Counterclaimant David Dilley ("Dilley"), by the undersigned attorneys, answers Plaintiff Notre Dame Federal Credit Union ("Plaintiff's") Complaint and counterclaims against Plaintiff on behalf of himself and other similarly situated consumers:

### ANSWER TO COUNT I

1. Admit.

2. Admit.

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

### ANSWER TO COUNT II

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

Exhibit 3

## ANSWER TO COUNT III

1. Admit

2. Admit

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## ANSWER TO COUNT IV

1.     Dilley has insufficient information to admit or deny this allegation because the documents attached as Exhibit D is illegible, and therefore, denies same.

2.     Dilley has insufficient information to admit or deny this allegation because the documents attached as Exhibit D, which constitute the alleged contract, are illegible, and therefore, denies same.

3. Deny.

4. Paragraph 4 sets forth a legal conclusion to which no response is required.

## AFFIRMATIVE DEFENSES TO COUNTS I, II, and III

1.     As set forth more fully in Dilley's counterclaim, Dilley disputes Plaintiff's compliance with the Uniform Commercial Code ("UCC") as adopted by Indiana (codified as Title 26, Article 1 of the Indiana Code), and Plaintiff has not, and cannot, meet its burden of establishing compliance with IC § 26-1-9.1-601 et seq.

2.     Plaintiff failed to sell Dilley's vehicles in a commercially reasonable manner and demands strict proof thereof.

3.     Plaintiff failed to send Dilley the statutory notices required by IC § 26-1-9.1-601 et seq.

4.       Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

5.       Dilley respectfully requests and reserves the right to amend and/or supplement his defenses contained in this Answer and Counterclaim as the facts and circumstances giving rise to the Complaint become known to him through the court of litigation.

## AFFIRMATIVE DEFENSES TO COUNT IV

1.       Plaintiff fails to state a claim for which relief can be granted.

2.       Plaintiff seeks unreasonable attorney fees not permitted by the contract or law.

# COUNTERCLAIM

## Nature of Case

1.       This is a consumer class action against Plaintiff Notre Dame Federal Credit Union ("Plaintiff"), and its predecessors or successors, seeking relief to redress Plaintiff's unlawful s repossession practices and procedures.

2.       The Uniform Commercial Code ("UCC") as adopted by Indiana is codified as Title 26, Article 1 of the Indiana Code.

3.       Chapter 9.1 of the UCC (§§ 26-1-9.1-601 through 26-1-9.1-628) forms a comprehensive scheme governing a secured creditor's repossession and disposition of a consumer-debtor's collateral.

4.       Indiana Code § 26-1-9.1-611(b) of the UCC requires a secured creditor, before disposition of a consumer's repossessed collateral, to send the consumer-debtor a "reasonable authenticated officiation of disposition," which provides the consumer-debtor

with specific information about the intended disposition and the consumer-debtor's redemption rights.

5.    Indiana Code §§ 26-1-9.1-613 and 26-1-9.1-614 of the UCC set forth the mandatory information that the secured party must include in the written notice of intended sale of the collateral (hereinafter the "presale notice").

6.    Indiana Code § 26-1-9.1-616 requires that the secured party mail consumer-debtors an "explanation" of surplus or deficiency after it sells the debtors' vehicles (hereinafter a "post-sale notice"). This statute also requires that the post-sale include specific information and the order in which the information must be presented. *See* IC 26-1-9.1-616(c).

7.    Plaintiff mailed Dilley and many other consumers a presale notice and post-sale notice that did not comply with the Uniform Commercial Code as adopted by each state.[1]

8.    Dilley sues for himself and all other similarly situated consumers. They seek compensatory damages equal to the statutory minimum provided by IC § 26-1-9.1-625(c)(2) of the UCC, $500 per each post-sale notice violation, and such other further relief as this Court may deem appropriate.

## Parties

---

[1] For readability, Dilley cites to the Indiana's version of the UCC, which is substantially identical to each state's version of the UCC and the state law that'd generally apply to the putative class members' UCC claims, regardless of where the putative class members resides, their loans originated, or the repossessions or voluntary surrenders took place. Regardless, Dilley believes the vast majority of claims arise under Indiana law. Plus, because there is no conflict between Indiana's UCC and other states' version of the UCC, "the forum should apply [Indiana] law" to all Class Members' claims. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 235-36 (3d Cir. 2016) (citing *Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n. 1 (Ind.Ct.App.1990) and applying Indiana law).

9.      Dilley is a resident of Indiana (in Kosciusko County), and Dilley executed consumer loan agreements for the purchases of a 2015 Jeep Grand Cherokee, 2016 KZI Camper, and 2012 Polaris Sportsman (collectively, the "Collateral") in Notre Dame, Indiana. (*See* **Exhibits A–C** to Plaintiff's Complaint).

10.     Plaintiff is credit union with its principal place of business in Indiana.

11.     All allegations of acts or omissions by Plaintiff include, but are not limited to, acts and omissions of Plaintiff's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were made with Plaintiff's express and/or implied authority, or were ratified or otherwise approved by Plaintiff; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Plaintiff's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

## Jurisdiction and Venue

12.     This Court has jurisdiction over the parties to this Counterclaim.

13.     Venue is proper under Rule 75 of the Indiana Rules of Trial Procedure.

## Allegations as to Dilley's Counterclaims

14.     Dilley signed three consumer credit contracts with Plaintiff that were each secured by different property.

15.     On February 23, 2018, Dilley and Plaintiff entered a loan agreement in which Dilley granted Plaintiff a security interest in his 2016 KZI Camper.

16.     A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit B**.

5

17.     On February 26, 2018, Dilley and Plaintiff entered into a loan agreement in which Dilley granted Plaintiff a security interest in his 2012 Polaris Sportsman ATV.

18.     A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit C**.

19.     On March 6, 2018, Dilley and Plaintiff entered a loan agreement in which Dilley granted Plaintiff a security interest in his 2015 Jeep Grand Cherokee.

20.     A true, accurate, and complete copy of the documents memorializing the transaction described in the previous allegation is attached to Plaintiff's Complaint as **Exhibit A**.

21.     The 2015 Jeep Grand Cherokee, 2016 KZI Camper, and 2012 Polaris Sportsman ATV (collectively, the "Collateral") were bought for use primarily for personal, family or household purposes.

22.     Plaintiff obtained a security interest in the Collateral and remained a secured party until disposition of the Collateral.

23.     Dilley was a debtor or obligor in a consumer-goods transaction as those terms are defined in the UCC.

24.     Plaintiff did not sell the Collateral in a commercially reasonable manner.

25.     Dilley's Collateral was sold for significantly less than its fair market value.

26.     After Plaintiff repossessed the Collateral, on March 1, 2021, Plaintiff mailed Dilley three documents, informing him Plaintiff had repossessed the Collateral and would sell the Collateral at a private sale (i.e., the "presale notices" mailed to Dilley).[2]

27.     True, accurate, and complete copies of the three presale notices Plaintiff mailed to Dilley are attached to Dilley's Motion for Leave to Amend as **Exhibit 1**.

28.     After Plaintiff sold the Collateral, on March 19, 2021, Plaintiff mailed Dilley three documents titled "DEFICIENCY BALANCE NOTIFICATION" (i.e., the "post-sale notices" mailed to Dilley).

29.     True, accurate, and complete copies of the three post-sale notices Plaintiff mailed to Dilley are attached to Dilley's Motion for Leave to Amend as **Exhibit 2**.

30.     The presale notices Plaintiff mailed Dilley on March 1, 2021, told Dilley Plaintiff would sell the vehicle and did not suggest Dilley had the opportunity to redeem the vehicle.

31.     The presale notices Plaintiff mailed Dilley on March 1, 2021, suggested the sale of Dilley's Collateral was inevitable and he could not do anything to prevent the Collateral from being sold.

32.     Dilley had the right to redeem the Collateral pursuant to IC § 1-26-1-9.1-623 until March 17, 2021, when Plaintiff sold the Collateral.

33.     The presale notices mailed to Dilley identified an incorrect "current balance" on his accounts.

---

[2] Dilley uses the term "repossess" broadly to include a secured party's retaking of collateral, whether through involuntary repossession, voluntary repossession, voluntary surrender, or abandonment, as the UCC's notice requirements equally apply in all these situations.

34.     Plaintiff's internal records identified a "current balance" on the 2015 Jeep Cherokee of $29,491.61 at the time Plaintiff mailed the presale notices until Plaintiff applied the sale proceeds of $22,350.

35.     Plaintiff's internal records identified a "current balance" on the 2016 KZI Camper of $18,750.65 at the time Plaintiff mailed the presale notices on March 1, 2021.

36.     Plaintiff's internal records identified a "current balance" of $6,494.37 on the 2012 Polaris at the time Plaintiff mailed the presale notices on March 1, 2021.

37.     The presale notices mailed to Dilley told him he would be responsible for "storage fees" but Plaintiff paid no storage fees.

38.     The presale notices mailed to Dilley did not accurately describe his deficiency or potential liability.

39.     The presale notices Plaintiff mailed Dilley did not inform him how much it would cost him to request an accounting of his alleged indebtedness or if he could obtain an accounting free of charge.

40.     Rather, the presale notices Plaintiff mailed Dilley told him he had to "request" the cost to obtain an accounting.

41.     Dilley was entitled to a free accounting of indebtedness as to each piece of Collateral because he had not requested an accounting within the last 6 months from the date on the presale notices (March 1, 2021).

42.     Plaintiff failed to send Dilley a reasonable authenticated notice of disposition as required by IC § 26-1-9.1-611 before selling any of the Collateral.

43.     Plaintiff mailed Dilley presale notices that omitted, misstated, and/or failed to unambiguously state information required by IC § 26-1-9.1-613 and IC § 26-1-9.1-614.

## Class Allegations

44.     Dilley repeats the allegations set forth above as if restated in their entirety.

45.     Plaintiff mailed Dilley and many other consumers presale notices that did not comply with the UCC.

46.     Plaintiff mailed Dilley and many other consumers post-sale notices that did not comply with the UCC.

47.     At least one of the issues identified in Dilley's presale notice are present in the presale notices mailed to the class members.

48.     Dilley counterclaims individually and for a class designated under Rule 23(A) and Rule 23(B)(3) of the Indiana Rules of Trial Procedure to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

49.     The proposed class definition (the "Class") is defined as all consumers who Plaintiff mailed a presale notice and/or whose collateral was sold by Plaintiff, Plaintiff's agent, or an assignee on or after February 11, 2012.

50.     Dilley reserves the right to amend the scope of the Class or modify the Class definition based on information unavailable to him at this time but will obtain through discovery.

51.     Upon information and belief, the presale notices Plaintiff mailed Dilley were created from a form template that Plaintiff has used to create other consumer-debtors' presale notices.

52.     Upon information and belief, Plaintiff has disposed of many pieces of personal property serving as collateral after mailing Class Members a presale notice in substantially similar form to the presale notices mailed to Dilley.

53.    All Class Members who had not requested an accounting within the 6 months prior to Plaintiff's mailing of their presale notices had the right to request and obtain a free accounting from Plaintiff.

54.    Upon information and belief, Plaintiff has disposed of many pieces of personal property serving as collateral after mailing Class members presale notices with at least one of the same deficiencies as the presale notices mailed to Dilley.

55.    The presale notices mailed to Dilley and the Class Members failed to include accurate and unambiguous information required by the UCC and/or were misleading with respect to Dilley and the Class Members' rights under the UCC, and were not reasonable authenticated notifications of disposition, which violates IC § 26-1-9.1-611(b).

56.    After Plaintiff mailed Dilley and the Class Members presale notices, Plaintiff or its agent disposed of their collateral.

57.    After Plaintiff sold Dilley's and Class Members' collateral, Plaintiff mailed them post-sale notices.

58.    Upon information and belief, the post-sale notices Plaintiff mailed Dilley were created from a form template that Plaintiff has used to create other consumer-debtors' post-sale notices.

59.    Upon information and belief, Plaintiff has disposed of many pieces of personal property serving as collateral and subsequently mailed a post-sale notice in substantially similar form to the post-sale notices Plaintiff mailed to Dilley.

60.    The post-sale notices Plaintiff mailed to Dilley and the Class Members did not substantially comply with IC § 26-1-9.1-616 because they did not include all the information

required by the statute, and they did not explain how Plaintiff calculated the deficiency in the proper order as identified in IC § 26-9.1-616(c).

61.    The post-sale notices Plaintiff mailed to Dilley and the Class Members do not mention that their post-sale deficiency balances could be affected by anything other than interest (e.g., future debits, credits, charges, rebates, etc.) as required by IC § 26-1-9.1-616(a)(1)(C).

62.    Each Class Member obtained financing for their collateral primarily for personal, family, or household purposes.

63.    Each Class Member granted Plaintiff a security interest in collateral.

64.    Members of the Class are so numerous their individual joinder is impracticable.

65.    Dilley is informed and believes Plaintiff mailed more than 100 individuals presale notices created from the same form document or template used to create the presale notices mailed to Dilley.

66.    Dilley is informed and believes Plaintiff mailed more than 100 individuals presale notices bearing at least one of the same deficiencies as the presale notices mailed to him.

67.    Dilley is informed and believes Plaintiff mailed more than 100 individuals post-sale notices created from the same form document or template used to create the post-sale notices mailed to Dilley.

68.    Dilley is informed and believes Plaintiff mailed more than 100 individuals post-sale notices bearing at least one of the same deficiencies as the post-sale notices mailed to Dilley.

69.     The Class is sufficiently numerous to make joinder impracticable, if not impossible, but the precise number of class members is unknown.

70.     There are questions of law and fact common to the Class, which predominate over any issues involving individual Class Members.

71.     Plaintiff or someone at Plaintiff's direction has unlawfully collected or attempted to collect deficiency balances from Dilley and other consumers issued defective presale and failed to rebut the presumption that their outstanding debts were satisfied.

72.     Plaintiff has maintained a practice and policy of reporting derogatory information regarding the class members defaults and post-sale loan balances to consumer credit reporting agencies like Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC.

73.     Plaintiff's UCC violations and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

74.     Plaintiff's UCC violations and reporting of false or inaccurate derogatory information on the Class Members' credit reports were oral or written publication of material that slanders or libels the Class Members.

75.     Plaintiff's UCC violations and reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

76.     The reporting of false or inaccurate derogatory information on the Class Members' credit reports was not done with knowledge of its falsity.

77.     Plaintiff's acts that violated the statutes alleged in this counterclaim required no professional skill.

78.     Plaintiff's acts that violated the statutes alleged in this counterclaim required no specialized knowledge, labor, or skill.

79.     Upon information and belief, Plaintiff did not intend to violate the UCC and did not intend injury to the Class because it believed its notices were accurate, lawful and contained no misrepresentations.

80.     Upon information and belief, Plaintiff did not know its UCC violations and its reporting of information on the Class Members' credit reports would violate the rights of the class members or inflict injury upon them.

81.     Plaintiff's negligent misrepresentations in the presale notices were the proximate cause of the loss of use of the collateral because it precluded the Class Members from reclaiming their collateral before it was sold.

82.     There are common, predominating questions because:

a.  the Class claims are based on an interpretation of the form UCC notices regarding the Class Members' rights to presale notices of disposition of the collateral;

b.  a central aspect of Dilley's class action is a determination of whether Plaintiff violated any statutory provisions governing its form UCC notices and uniform business practices;

c. determining the sufficiency of Plaintiff's form UCC notices will resolve the merits of each Class Member's claims.

    d.  the substantive elements of Class Members' claims require the same type of proof;

    e. the Class is bound together by mutual interest in resolving common questions that exceeds any individual interests amongst the Class Members.

83.    Claims involving the interpretation of form notices and contracts present a classic case for treatment as a class action. *McKeage v. TMBC, LLC*, 847 F. 3d 992, 999 (8th Cir. 2017).

84.    Dilley's claims are typical of the claims of the Class Members.

85.    Dilley's and the Class's claims are based on the same factual and legal theories.

86.    Dilley's and the Class's rights derive from written, form contracts and documents.

87.    The violations alleged by Dilley and the Class derive from written, form presale and post-sale notices that violate the UCC.

88.    Dilley and each Class Member was damaged and may recover damages equal to the minimum damages provided by the UCC due to Plaintiff's failure to provide proper presale notices.

89.    Dilley and each Class Member may recover $500 for each post-sale notice Plaintiff mailed them that did not comply with IC § 26-1-9.1-616.

90.    Dilley will fairly and adequately represent and protect the interests of the Class.

91.    Dilley has no interests antagonistic to the Class Members.

92.    Dilley's counsel is competent and experienced in consumer and class action litigation.

93.    Dilley and all Class Members have an interest in determining the adequacy of the presale notices mailed by Plaintiff and to recover damages due to the statutorily defective notices.

94.    The questions of law or fact common to the Class predominate over questions affecting only individual members.

95.    Dilley and each Class Member will rely on the same basic evidence (i.e., the form notices).

96.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

97.    Class Members are consumer-debtors, who likely cannot locate or afford to hire lawyers.

98.    Most Class Members are probably unaware Plaintiff violated their rights and the law.

99.    If each Class Member were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

100.    Concentrating the litigation of Dilley's and the Class Members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

101.    The Class should be certified under Rule 23(B)(3) of the Indiana Rules of Trial Procedure, as the superior method for the fair and efficient adjudication of this controversy.

## Count I – UCC Presale Notice Violations

102.    Dilley repeats the allegations set forth above as if set forth in Count I.

103.    Plaintiff violated IC §§ 26-1-9.1-611 though 26-9.1-614 by mailing Dilley and the Class Members deficient presale notices.

104.    Plaintiff violated the UCC by failing to mail Dilley and the Class Members reasonable presale notices in compliance with IC §§ 26-1-9.1-611 through 26-1-9.1-614 before selling their collateral.

105.    As a direct and proximate result of failure to comply with the requirements of §§ 26-1-9.1-601 through 26-1-9.1-628, Dilley and the Class suffered actual damages equal to or greater than the statutory minimum provided under § 26-1-9.1-625(c)(2), including:

> a.      deprivation of rights granted under the UCC
>
> b.      harm to credit worthiness, credit standing, credit capacity, character, and general reputation;
>
> c.      harm caused by defamation, slander and libel;
>
> d.      harm caused by invasion of privacy; and
>
> e.      other uncertain and hard-to-quantify actual damages.

## Count II – UCC Post-Sale Notice Violations

106.    Dilley repeats the allegations set forth above as if set forth in Count II.

107.    Plaintiff violated IC § 26-1-9.1-616 as to every noncompliant post-sale notice it mailed to Dilley and the Class Members.

WHEREFORE, Dilley prays this Court certify the Class as defined above (or as modified by this Court), appoint Dilley's undersigned counsel as counsel for the Class, and enter a judgment for Dilley and the Class against Plaintiff:

a. awarding damages equal to the statutory damages provided by IC § 26-1-9.1-625(c)(2) of the UCC for Plaintiff's presale notice violations;

b. awarding statutory damages of $500 for each deficient post-sale notice pursuant to IC § 26-1-9.1-625(e)(5);

c. prejudgment and post-judgment interest;

d. attorney's fees;

e. a preliminary and permanent injunction enjoining Plaintiff from engaging in the practices alleged, including without limitation, enjoining Plaintiff from selling Counterclaimant's or Class Members' alleged deficient accounts for collection, and enjoining Plaintiff from collecting deficiency balances, time price differential, delinquency and collection charges from Counterclaimant and the Class;

f. a mandatory injunction compelling Plaintiff submit requests to credit bureaus to which it reports to remove any adverse credit information wrongfully reported on Dilley's and the Class's consumer credit reports;

g. a declaration that the presale notices mailed by Plaintiff to Dilley and the Class fail to comport with the statutory requirements;

h. a declaration that the post-sale notices mailed by Plaintiff to Dilley and the Class fail to comport with the statutory requirements; and

i. for such other and further relief as this Court deems just and proper.

Respectfully submitted,


/s/ Jeffrey Gibson
Jeffrey S. Gibson, #22362-49
**Wagner Reese, LLP**
11939 N. Meridian Street, Suite 100
Carmel, IN 46032
Phone: 317-446-8339

Attorney for Dilley / Counterclaimant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 18, 2023, I electronically filed this Motion using the Indiana E-

Filing System and electronically served the following counsel:

John D. Krisor Jr., #5355-71
Ian Septoski, #25450-64
KRISOR & ASSOCIATES
P.O. BOX 6200
South Bend, IN 46660
Tel: (574) 272-1000

Libby Y. Goodknight, #2088049
Kay Dee Baird, #2882173
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
Tel: (317) 636-4341

Counsel for Plaintiff/Counterclaim-Defendant


<u>/s/ Jeffrey Gibson</u>
 Jeffrey S. Gibson, #22362-49


WAGNER REESE, LLP
11939 North Meridian Street, Suite 100
Carmel, IN 46032
Tel: (317) 569-0000/Fax: (317) 569-8088
Email: jgibson@wagnerreese.com

**Exhibit G**

**Email communication from Credit Union, dated October 10, 2023, and Allied Solutions, dated October 11, 2023**

FROM: Bond Claims<bondclaims@alliedsolutions.net>
TO: 'claims@coactionspecialty.com'
CC: 'bvitale@notredamefcu.com'; Patrick Touhey
SENT: Wednesday, October 11, 2023 4:55:21 PM Eastern Daylight Time
SUBJECT: FW: Bond Claim Submission - Dilley v. Notre Dame FCU
ATTACHMENTS: image811636.png; image337987.png; image813104.png; image056572.png; image839805.png; image001.png; 2021-10-22 - Answer and Counterclaim.pdf;
========================================================

*External Email*

Hello Co/Action Specialty Claims,

Please find information below and attached provided by Notre Dame FCU to file a new claim. Please review for coverage under any/all policies including policy number PL202300003200. The contact for the claim is Brian Vitale, 574-400-4971, bvitale@notredamefcu.com

Thank you,
Becky Schifferl
Claims Account Manager | Bond Division
Allied Solutions, LLC
CA License #0D60761
5770 Nimtz Pkwy., South Bend, IN  46628
Phone: 574-203-6774
alliedsolutions.net

Ask a Risk Specialist email: risk_specialist@alliedsolutions.net
Risk Resources: https://www.alliedsolutions.net/enews/risk-alerts
Sign up for our Risk Alerts: Risk Alerts, sign up for our webinar series: Let's Talk Fraud



NOTICE:
This communication contains information that is privileged, confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this email and all attachments from your system.

---

**From:** Brian Vitale <BVitale@notredamefcu.com>
**Sent:** Tuesday, October 10, 2023 12:05 PM
**To:** Patrick Touhey <Patrick.Touhey@alliedsolutions.net>
**Cc:** Eric Rauch <ERauch@notredamefcu.com>
**Subject:** Bond Claim Submission - Dilley v. Notre Dame FCU

Patrick,

Good afternoon.  As directed, below please find Notre Dame FCU's bond claim submission related to the Dilley v. Notre Dame FCU matter.

**Dilley v. Notre Dame FCU Bond Claim**
Notre Dame Federal Credit Union ("NDFCU") engages external legal counsel for bankruptcy and general collections assistance. As such, based on reliance of counsel, we operate under the assumption our collection activities post repossession of titled collateral meet all state and federal requirements. On September 10, 2021, NDFCU filed a complaint in Kosciusko County Superior Court seeking repayment of approximately $25,000 owed by David Dilley ("Dilley") in connection with various extensions of credit (the "Loans"). In October 2021, Dilley filed a counterclaim against NDFCU (the "Lawsuit") alleging violations of the Indiana Uniform Commercial Code in connection with NDFCU's issuance of certain notices in connection with the sale of collateral associated with the Loans. Dilley seeks to have court certify the Lawsuit as a class action. NDFCU denies all liability in

connection with the claims asserted by Dilley and intends to vigorously defend its rights in the Lawsuit. NDFCU was first notified of the Lawsuit on October 19, 2021.

**Attached:** Stamped Answer and Counterclaim.

Regards,

Brian

**Brian Vitale**
Chief Risk and Compliance Officer
P.O. Box 7878 • Notre Dame • IN • 46556
Phone: 574-400-4971 • Fax: 574-584-2043
BVitale@notredamefcu.com








This message, and any attachments, is for the intended recipient(s) only, and may contain information that is privileged, confidential and/or proprietary.  If you are not an intended recipient, please notify the sender, and delete and destroy all copies and attachments.  Unauthorized use and/or distribution is prohibited.

**Exhibit H**

**Email communication from New York Marine, dated October 13, 2023**

**Nicholas J. Sideras**

| | |
|---|---|
| **From:** | Judy Edwards <JEdwards@coactionspecialty.com> |
| **Sent:** | Friday, October 13, 2023 10:47 AM |
| **To:** | bvitale@notredamefcu.com |
| **Cc:** | BondClaims@alliedsolutions.net |
| **Subject:** | Claim no. EWR00270210 - David Dilley v. Notre Dame Federal Credit Union -Liability Policy no. PL2020003200 |

Brian:

On behalf of New York Marine and General Insurance Company ("New York Marine"), this will serve to acknowledge receipt of a copy of the Answer and Counterclaim filed by David Dilley on or about October 22, 2021.  Your email of October 11, 2023, indicates the Credit Union was on notice of the Counterclaim as early as October 19, 2021.  A review of our records finds no prior notice of the Counterclaim prior to October 11, 2023.

We are currently reviewing the late notice issue and will advise further.  The policy requires as a condition precedent that notice must be received as soon as practicable , but no later than 60 days after expiration of the policy period.  The Counterclaim was filed during the 4-17-2020 to 4-17-2023 policy period.  If you have information indicating prior notice was sent to Coaction, formerly known as Prosight Specialty, prior to October 11, 2023, please provide such information for immediate review.   New York Marine expressly reserves all rights and defenses as provided by the Liability Policy, as well as by law and in equity.

If you have any questions or would like to discuss further, please contact me directly.

Judy Edwards, J.D.
Senior  Claims Examiner

**CO/ACTION**℠
SPECIALTY INSURANCE GROUP
412 Mount Kemble Ave., Suite 300C
Morristown, NJ  07960
973-532-1977
Jedwards@coactionspecialty.com

**Exhibit I**

**New York Marine's Coverage Position Letter, dated November 13, 2023**



November 13, 2023              via Email and Certified Mail; Return Receipt Requested

Brian Vitale
Chief Risk and Compliance Officer
Notre Dame Federal Credit Union
1828 Moreau Drive
Notre Dame, IN  46556

Re:    Insured:            Notre Dame Federal Credit Union ("Credit Union")
       Policy No.:         PL202000003200 ("Liability Policy")
       Insurer:            New York Marine and General Insurance Company
                           ("New York Marine")
       Claim No.:          EWR00270210
       Matter:             David Dilley v. Notre Dame Federal Credit Union,
                           ("Counterclaim"), Cause No. 43D04-2109- CC-000568

Dear Mr. Vitale:

New York Marine has completed its review of the Credit Union's  request for coverage of the above-referenced matter under the Liability Policy.  New York Marine's  review has included the Answer and Counterclaim filed in this matter and all the terms and conditions of the Liability Policy.

For the reason set forth in this letter, New York Marine has determined  that there is no coverage for the Counterclaim under the Liability Policy.

**Factual Record**:

The facts recited in this letter  are based in large part on the allegations made in the Counterclaim filed against the Credit Union.   By reciting these allegations, New York Marine does not mean to give any credence to their accuracy.  New York Marine acknowledges that they remain mere allegations.

On or about October 22, 2021, Counter Plaintiff, David Dilley ("Dilley") filed an Answer and Counterclaim in Kosciuszko Superior Court in response to Credit Union's Complaint filed on or about September 10, 2021, seeking a deficiency judgment relative loans extended by Credit Union to Dilley. Dilley alleges the Credit Union failed to send proper notices of the disposition of the repossessed collateral. Dilley now seeks to have the Court certify the Counterclaim as a

1

class action.  Credit Union was on notice of the Counterclaim on October 19, 2021.  Norice of the Counterclaim was provided to New York Marine on October 12, 2023.

**Applicable Liability Policy Provisions**:

The Liability Policy was issued for the policy period April 17, 2020 to April 17, 2023.  The Liability Policy is subject to a $22,000,000 policy annual aggregate limit of liability.  The Liability Policy includes Insuring Agreement K. Lender Liability, subject to a $2,000,000 annual aggregate limit of liability and a $10,000 per claim deductible.

**Liability Policy Coverage Determinations**:

The Conditions section of the Policy, specifically paragraph 3. Claims Reporting provides:

3.  For the purposes of this Policy, all **claims**, including any **claims** made during an Extended Reporting Period, arising out of the same **wrongful act** and all **interrelated wrongful acts** of the **insureds** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them, regardless of whether such date is before or during the **policy period**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must give written notice to the **insurance organization** of any **claim** as soon as practicable, but in no event later than 60 days from the expiration of the **policy period** or, if elected, no later than the expiration of the Extended Reporting Period.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of **claim**:

a.  The name of the claimant;

b.  The names of the **insureds** whose **wrongful acts** are involved in the **claim**;

c.  The date of the alleged **wrongful acts**; and

d.  A copy of any written demand, summons, complaint, lawsuit or legal notice comprising or giving notice of the **claim**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide to the **insurance organization** such other information and cooperation as the **insurance organization** may reasonably request.

If during the **policy period** or, if elected, the Extended Reporting Period, the **insureds** become aware of circumstances that could give rise to a **claim** for a **wrongful act** taking place before or during the **policy period** and give written notice of such circumstances and other information as reasonably requested by the **insurance organization**, then any **claims** subsequently arising from such circumstances shall be considered to have been made during

2

the **policy period** or, if elected, the Extended Reporting Period in which such notice of such circumstances and such other information was first provided to the **insurance organization**.

As a condition precedent to the right to receive the benefit of any coverage provided by this Policy, the **insureds** must provide the following information as part of the notice of circumstance:

a.  A description, including the date, of the alleged **wrongful act**;

b.  The nature of the potential **loss**; and

c.  The names of the potential claimants and **insureds** involved.

All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.  Notice to the **insurance organization** of any **claim** or circumstance shall be submitted to:

ProSight Specialty Insurance Company
Attention: Claims Department
412 Mt. Kemble Avenue
Morristown, NJ  07960
-Or-
By email:  claims@prosightspecialty.com

As provided in the Policy, a condition precedent to receive the benefit of any coverage, including defense costs, notice of a **claim** must be provided as soon as practicable.  Notice of the litigation was not provided to New York Marine for almost two years from the date of the filing of the Counterclaim and more than 60 days after expiration of the **policy period**.  Notice of the **claim** is untimely. Consequently we must respectfully decline coverage for this matter.

Please let us know if you believe that any facts or conclusions reached in this coverage position letter are inaccurate, or if there are additional facts and circumstances you wish to bring to our attention for purposes of evaluating coverage of this matter.

New York Marine reserves the right to reconsider and amend any coverage position described in this letter if it becomes aware of new or different facts, or if warranted by ongoing developments in this matter.

New York Marine reserves all rights and defenses pursuant to the Bond, any another policy of insurance issued by New York Marine, its affiliates, and at law, and does not waive any of them. New York Marine has not made all coverage position arguments available to it within this correspondence. New York Marine expressly reserves all rights to make additional arguments and take additional coverage positions as it deems appropriate. No statements made herein constitute

3

an admission by New York Marine of liability or other admission against interest regarding the underlying matters or relating to coverage.

Very truly yours,

Judy Edwards
Senior Claims Examiner
Coaction Specialty Insurance Company
412 Mount Kemble Ave., Suite 300 C
Morristown, NJ  07960
973-532-1977
jedwards@coactionspecialty.com

cc:    Allied Solutions
       Rob Bednarik

4